IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| STRATASYS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>SHENZHEN TUOZHU TECHNOLOGY CO., LTD., SHANGHAI LUNKUO TECHNOLOGY CO., LTD., BAMBU LAB LIMITED, AND TUOZHU TECHNOLOGY LIMITED,<br><br>    Defendants. | Civil Action No. 2:24-cv-00644-JRG<br>LEAD CASE<br><br>Civil Action No. 2:24-cv-00645-JRG<br>MEMBER CASE<br><br>JURY TRIAL DEMANDED |
| BAMBULAB USA, INC., SHENZHEN TUOZHU TECHNOLOGY CO., LTD., SHANGHAI LUNKUO TECHNOLOGY CO., LTD., BAMBULAB LIMITED, AND TUOZHU TECHNOLOGY LIMITED,<br><br>    Plaintiffs,<br><br>v.<br><br>STRATASYS, INC.,<br><br>    Defendant. | Civil Action No. 2:25-cv-00465-JRG<br>MEMBER CASE<br><br>JURY TRIAL DEMANDED |

**BAMBU'S MOTION TO AMEND THE PROTECTIVE ORDER
TO REASONABLY INCREASE THE SOURCE CODE PRINTOUT LIMIT**

The Bambu parties respectfully move this Court to deny Stratasys's demand to increase the source code printout limit by tenfold—from 300 pages to 3,000 pages—and instead approve Bambu's proposed compromise of 500 pages for code produced to-date.

Stratasys agreed to a 300-page limit when the parties stipulated to the Protective Order just eight months ago, fully aware that it was asserting 124 claims against 10 Bambu products. Now Stratasys seeks an extraordinary expansion that would undermine the very purpose of protecting Bambu's highly confidential source code. Stratasys's demand lacks good cause because courts in this district routinely limit source code printouts to 500 pages or less (even in cases involving numerous accused products), and Stratasys has had unfettered access to Bambu's open-source software that supports many functionalities of the accused products. Stratasys's position is also internally inconsistent—despite providing only a single claim chart per patent to cover multiple accused products, it now claims that the accused products are so diverse as to require 3,000 pages of source code.

Bambu has offered a reasonable compromise that balances Stratasys's litigation needs with appropriate protections for Bambu's source code: a final limit of 500 pages for current productions, with proportional increases for any future code productions. This proposal aligns with both the original Protective Order's scale and this district's established practices. The Court should grant Bambu's 500-page proposal and deny Stratasys's unreasonable 3,000-page demand.

I.   **FACTUAL BACKGROUND**

Stratasys served its initial infringement contentions on November 14, 2024, asserting 124 claims against 10 different Bambu products. Ex. 1 (Stratasys's initial infringement contentions). On December 3, the Court granted the parties' stipulated protective order, which designated any source code production to be "RESTRICTED CONFIDENTIAL SOURCE

CODE" and limited any printouts to 300 pages. Dkt. 36, § 11(h). On May 16, 2025, Stratasys requested 281 pages of printouts. Ex. 2 at 7-8 (May 16 email to Bambu); Ex. 2 at 4-5 (July 3 email to Stratasys). On June 2, 2025, Stratasys notified Bambu that its second round of printouts amounted to 93 pages, thus exceeding the limit set by the Protective Order. Ex. 2 at 6 (June 2 email to Bambu). According to Stratasys, "[t]he cumulative printout count is higher than anticipated due to Bambu's printers utilizing unique firmware code." *Id.* Notably, Bambu Studio—the accused software that handles various functionalities such as configuring print settings, controlling printers, and preparing 3D models for printing—has been open-sourced and publicly available since before this lawsuit was filed, providing Stratasys with unrestricted access to substantial portions of Bambu's code. Ex. 3 (Bambu Studio's Website).

Bambu agreed to negotiate an increase to the 300-page limit and asked for Stratasys's proposal. Ex. 2 at 4-5 (July 3 email to Stratasys). Stratasys, however, refused to put any limit, instead claiming that "the number of pages of source code requested to be printed increases with each set of source code produced for inspection." Ex. 2 at 4 (July 9 email to Bambu). To clear the impasse, Bambu agreed to "to negotiate a separate page limit for printouts of any code that may be produced in the future," but that it wanted a "final printout limit on the code produced to-date." Ex. 2 at 3-4 (July 9 email to Stratasys). Stratasys responded that it should "be allowed 300 pages for each code base," which would amount to 3,000 pages total. Ex. 2 at 3 (July 18 email to Bambu) (emphasis added). Bambu considered the 10x increase to be unreasonable and proposed a final limit of 500-pages for its current source code production. Ex. 2 at 2-3 (July 24 email to Bambu). The parties met and conferred on August 22, but still failed to reach any agreement.

3

## II. LEGAL STANDARD

Courts are empowered to issue protective orders to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" for good cause. Fed. R. Civ. P. 26(c)(1). In deciding whether to modify a stipulated protective order, courts generally consider four factors: "(1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-CV-109, 2008 U.S. Dist. LEXIS 70934, at *6-*7 (E.D. Tex. Sept. 17, 2008) (internal citations omitted)).

## III. ARGUMENT

### A. Stratasys's Requested Modification Directly Undermines the Very Purpose of the Protective Order.

The Court should deny Stratasys's demand due to the nature of the protective order. The current discovery dispute relates to Bambu's source code, which both parties and the Court considered to be highly confidential and sensitive. Dkt. 36 at § 11; *see also, e.g.*, *Geotag, Inc. v. Frontier Commc'ns Corp.*, No. 2:10-CV-265, 2013 U.S. Dist. LEXIS 25774, at *261 (E.D. Tex. Jan. 7, 2013) (recognizing the high confidentiality of source code). It is also why the protective order included a page limit for printouts to prevent inadvertent disclosure. Dkt. 36 at § 11(h). Because the original provisions for source code protection were entered with good cause under both parties' consent, maintaining the current printout limit is consistent with the very purpose of the protective order. *Id.* at p. 1; *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2016 U.S. Dist. LEXIS 7475, at *9-*10 (E.D. Tex. Jan. 22, 2016) ("A party's prior consent to the protective order will weigh against its motion for modification.") (internal citations omitted).

### B. Stratasys's Requested Modification is Foreseeable.

The Court should deny Stratasys's demand because the requested modification was entirely foreseeable when the parties negotiated the protective order. "Foreseeability in this context consists of inquiry into whether the need for modification was foreseeable at the time the parties negotiated the original stipulated protected order." *Raytheon Co.*, 2008 U.S. Dist. LEXIS 70934, at *8-*9 (internal quotation omitted).

Here, both parties agreed to limit the number of printouts to 300 pages in the protective order. Dkt. 36 at § 11(h). When negotiating the protective order, Stratasys was well aware that it had asserted 124 claims against 10 different Bambu products and had all opportunities to account for their potentially distinct source code bases. Ex. 1 (Stratasys's infringement contentions). Stratasys cannot "dramatically and unilaterally reposition that balance at this stage in the litigation" when it could have reasonably foreseen how much source code it would need to prosecute the case. *Raytheon Co.*, 2008 U.S. Dist. LEXIS 70934, at *9.

### C. Bambu has Relied Upon the Protective Order.

"The reliance factor focuses on the extent to which the party opposing the modification relied on the protective order in deciding the manner in which documents would be produced in discovery." *Raytheon Co.*, 2008 U.S. Dist. LEXIS 70934, at *9. Bambu has relied on the 300-page limit in the protective order as a reasonable guard against inadvertent disclosure. Bambu made its code available for inspection with the understanding that at most 300 pages would be printed and exposed to the appurtenant risks. Stratasys's attempt to increase this limit by an order of magnitude disturbs the reliance that Bambu had placed in the original limit.

### D. Stratasys Has Not Shown Good Cause for its Demand.

Lastly and most importantly, Stratasys does not have good cause to ask for 3,000 printout pages. Due to the source code's highly sensitive nature, a party seeking production must only

obtain printouts for source code that are truly ***necessary*** to support its case. *See, e.g.*, *Lemko Corp. v. Microsoft Corp.*, No. 3:22-CV-363-L, 2023 U.S. Dist. LEXIS 242439, at *4-*5 (N.D. Tex. Sept. 28, 2023) ("Any such motion, however, must explain why Plaintiff needs to print more pages to adequately prosecute its causes of action for patent infringement in this case. Conclusory assertions will not do."). The burden is on Stratasys to justify its need for additional pages. *See* Dkt. 36 at § 11(h) ("To the extent the receiving Party believes it needs additional pages for printed code, the parties shall meet and confer in good faith. . . . If the parties are unable to resolve the dispute, then the receiving Party may seek leave from the Court for additional pages."); *R2 Sols. LLC v. Databricks, Inc.*, No. 4:23-CV-1147, 2024 U.S. Dist. LEXIS 205139, at *23-*24 (E.D. Tex. Nov. 12, 2024) ("If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party may seek a Court resolution of whether the printed Source Code Material in question is reasonably necessary to any case preparation activity.")

Stratasys's only justification for its 3,000-page demand is based on the number of source code collections. Ex. 2 at 3 (July 18 email to Bambu); Ex. 2 at 1-2 (July 31 email to Bambu). But again, Stratasys was well aware of such possibility when asserting 124 claims against 10 different Bambu products and could have negotiated a different page limit before signing the protective order. Ex. 1 (Stratasys's infringement contentions). During the course of the parties' negotiations, Stratasys provided no caselaw where the court allowed a party to obtain 3,000 pages of printouts; rather, courts in this jurisdiction regularly limit printouts to less than 500 pages regardless of the number of source code bases for different products. *See, e.g.*, *Lemko Corp.*, 2023 U.S. Dist. LEXIS 242439 (limiting printouts to 300 pages for 7 accused products); *E-Contact Techs., LLC v. Apple, Inc.*, No. 1:11-CV-426, 2012 U.S. Dist. LEXIS 190475 (E.D.

Tex. June 19, 2012) (limiting printouts to 500 pages for 25 accused products); *Nabors Drilling Techs. USA Inc. v. Helmerich*, No. 3:20-CV-03126, 2023 U.S. Dist. LEXIS 241483 (N.D. Tex. Apr. 6, 2023) (limiting printouts to 200 pages for 4 accused products and allowing 39 additional pages); *Packet Intelligence LLC v. Ericsson Inc.*, No. 2:18-cv-00381, 2019 U.S. Dist. LEXIS 228539 (E.D. Tex. Jan. 10, 2019) (limiting printouts to 500 pages for 5 accused products); *Geotag, Inc.*, 2013 U.S. Dist. LEXIS 25774 (limiting printouts to 500 pages for 17 accused products). While the protective order allows the receiving party to obtain a reasonable number of additional pages, it did not contemplate Stratasys's demand for a 10x increase to 3,000 pages. *See, e.g.*, *Nabors Drilling Techs. USA Inc.*, 2023 U.S. Dist. LEXIS 241483, at *2 (setting reasonable number of printouts to be 200 pages); *Packet Intelligence LLC*, 2019 U.S. Dist. LEXIS 228539, at *18 (setting reasonable number of printouts to be 500 pages), *Cuebiq Grp., LLC v. Paedae, Inc.*, No. 24-CV-7542, 2025 U.S. Dist. LEXIS 113436, at *13 (S.D.N.Y. June 10, 2025) (setting reasonable number of printouts to be 500 pages); *Phillips N. Am. LLC v. Summit Imaging Inc.*, No. 2:19-CV-01745, 2020 U.S. Dist. LEXIS 78361, at *21 (W.D. Wash. Apr. 30, 2020) ("requests exceeding 500 total pages of source code are presumed unreasonable.").

Furthermore, Stratasys's argument for the alleged diversity of accused products is undercut by its apparent comfort with providing only a single claim chart per patent that accuses multiple products. *See* P.R. 3-1(c) ("A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality . . . ;"); Ex. 1 (Stratasys's Infringement Contentions). Stratasys cannot claim that the accused products are so diverse that it needs to multiply the printout limit proportionally, while simultaneously relying on representativeness arguments to justify its claim charts that stand in for multiple products. Either

7

the accused products are diverse and require separate claim charts, or they are not and Stratasys does not require an increase in the source code printout limit.

Stratasys's demand is further undermined by its unrestricted access to Bambu Studio's open source code. Bambu Studio performs printing functionalities such as configuring print settings, controlling printers, and preparing 3D models for printing, and has been publicly available since before this lawsuit commenced. Ex. 3 (Bambu Studio Website). Because Stratasys can freely access, analyze, and print this code without any page limitations or confidentiality restrictions, Stratasys's legitimate need for confidential source code printouts is correspondingly diminished.

Finally, even if Stratasys truly requires 3,000 pages of source code to make its case, that is all the more reason for Stratasys to narrow its asserted claims. Stratasys's representatives have been reviewing Bambu's source code for *months* and have made more than 30 inspection visits. Stratasys therefore has more than sufficient information to make a determination on claim narrowing, particularly given its unrestricted access to Bambu Studio's open-source code. This narrowing is necessary because it is impossible for Stratasys to bring 124 claims to trial. Accordingly, the Court should deny Stratasys's request for 3,000 pages because it cannot show good cause.

## IV.    CONCLUSION

Stratasys has had months to inspect Bambu's source code production and determine how many pages are truly needed for its case. Although Stratasys may obtain reasonable number of additional pages for good cause, it has not and cannot show good cause to increase the limit to 3,000 pages. Although an increase is unwarranted, Bambu will agree to increase the printout limit from 300 to 500 pages for source code produced to-date. Bambu will also agree to negotiate

in good faith a proportional increase in the printout page limit for any source code that may be produced in the future. Bambu's proposed 500-page limit is consistent with the scale the parties stipulated to in the protective order (300 pages) and what courts in this jurisdiction have customarily allowed in the past (200-500 pages). Accordingly, Bambu respectfully requests the Court deny Stratasys's request to increase the printout limit to 3,000 pages, and instead amend the Protective Order to set the final limit for Bambu's current code production at 500 pages.

Dated: August 25, 2025

Respectfully submitted,

*/s/ Michael A. Vincent*
Gregory P. Love (TX 24013060)
greg@stecklerlaw.com
STECKLER WAYNE & LOVE
107 E Main Street
Henderson, TX 75652
Tel: (903) 212-4444

Carl E. Bruce (TX 24036278)
bruce@fr.com
Thomas H. Reger, II (TX 24032992)
reger@fr.com
Aaron P. Pirouznia (TX 24098958)
pirouznia@fr.com
Michael A. Vincent (TX 24105738)
vincent@fr.com
Brandon S. Avers (TX 24135660)
avers@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070 | Fax: (214) 747-2091

David M. Barkan (CA 160825)
barkan@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070 | Fax: (650) 839-5071

Attorneys for<br>
BAMBULAB USA, INC., SHENZHEN<br>
TUOZHU TECHNOLOGY CO., LTD.,<br>
SHANGHAI LUNKUO TECHNOLOGY CO.,<br>
LTD., BAMBULAB LIMITED, AND<br>
TUOZHU TECHNOLOGY LIMITED

### **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rules CV-7(h) and CV-7(i), the undersigned hereby certifies that counsel for the parties met and conferred regarding this Motion prior to filing. On August 22, 2025, counsel for Bambu participated in a telephonic conference with counsel for Stratasys. The meet and confer ended in an impasse for the issues raised herein. Stratasys opposes the relief requested in this motion.

<i>/s/ Michael A. Vincent</i><br>
Michael A. Vincent

### **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 25, 2025, the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and was served via electronic mail pursuant to Local Rule CV-5.2(e) on all counsel of record.

<i>/s/ Michael A. Vincent</i><br>
Michael A. Vincent