# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| Stratasys, Inc., | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 2:24-cv-00644-JRG |
| Shenzhen Tuozhu Technology Co., Ltd., *et al.*, | § § § § | (Lead Case) |
| *Defendants.* | § § | |

| | | |
|---|---|---|
| Stratasys, Inc., | § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 2:24-cv-00645-JRG |
| Shenzhen Tuozhu Technology Co., Ltd., *et al.*, | § § § | (Member Case) |
| *Defendants.* | § § | |

| | | |
|---|---|---|
| BambuLab USA, Inc., *et al.*, | § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Case No. 2:25-cv-00465-JRG |
| | § § | (Member Case) |
| Stratasys, Inc. | § § | |
| *Defendant.* | § § § | |

**PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER PROHIBITING DEFENDANTS FROM DEPOSING STRATASYS LIMITED'S CEO, DR. YOAV ZEIF**

████████████████

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................1

II.     LEGAL STANDARD .........................................................................................2

III.    ARGUMENT......................................................................................................2

   A.   Dr. Zeif Does Not Possess Any Unique Information Relevant to Any Triable Issues in This Case ..........................................................................................2

   B.   BambuLab Has Not Identified Any Relevant Information Related to Any Triable Issues That It Has Not Already Received from Other Company Executives, Including Mr. Rich Garrity ...............................................................................5

   C.   BambuLab's Position Is Irreconcilable with Its Own Apex Motion.....................7

IV.     CONCLUSION ..................................................................................................7

████████

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Comput. Accel. Corp. v. Microsoft Corp.*,
 No. 9:06-CV-140, 2007 WL 7684605 (E.D. Tex. June 15, 2007).........................................2, 3

*Motion Games, LLC v. Nintendo Co., Ltd.*,
 No. 6:12-cv-878-JDL, 2015 WL 11143486 (E.D. Tex. Mar. 18, 2015)................................2, 4

*PA Advisors, LLC v. Google, Inc.*,
 No. 2:07-CV-480, 2009 WL 10741630 (E.D. Tex. Aug. 28, 2009).........................................2

*Retractable Tech., Inc. v. Becton, Dickinson & Co.*,
 No. 2:08-cv-16, 2011 WL 13136271 (E.D. Tex. Dec. 12, 2011) ............................................4

*Salter v. Upjohn Co.*,
 593 F.2d 649 (5th Cir. 1979) ................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)................................................................................................................2

## I.    INTRODUCTION

This is a straightforward patent infringement and false advertising case between Plaintiff Stratasys, Inc. and Defendant BambuLab entities. The asserted patents are owned exclusively by Stratasys, Inc. However, BambuLab seeks to depose the Director and CEO of Plaintiff's parent entity, Stratasys Limited—Dr. Yoav Zeif. Dr. Zeif is not an employee or officer of Plaintiff Stratasys, Inc., and he does not sit on its payroll. His role is at the parent-company level. Courts routinely protect executives in Dr. Zeif's posture from deposition absent a clear showing of unique, non-duplicative personal knowledge. BambuLab has made no such showing.

Instead, the record shows that BambuLab has already taken extensive discovery from the highest-ranking executive at Plaintiff Stratasys, Inc., Mr. Rich Garrity. Mr. Garrity testified competently and at length about every topic BambuLab now claims requires Dr. Zeif's testimony: industry conditions, competitive posture, financial impact, damages theories, customer behavior, internal investigations, acquisitions, corporate structure, and the business rationale for enforcement. Ex. 1 at H. What BambuLab seeks now is not discovery, but leverage to prevent the deposition of Defendants' own CEO, founder, and critical witness, Dr. Ye Tao.[1] The Apex doctrine exists to stop exactly this maneuver and Plaintiff requests that the Court bar Dr. Zeif's deposition pursuant to that doctrine.

---

[1] BambuLab filed its motion for a protective order related to Dr. Tao on December 19th. *See* (Dkt. No. 151). BambuLab subsequently confirmed that, despite the fact that it is invoking the Apex doctrine to prevent the deposition of Dr. Tao, it still insists on taking the deposition of Dr. Zeif. In a final effort to resolve these disputes without burdening the Court—and even though Stratasys "absolutely do[es] not agree that Dr. Zeif has unique, personal knowledge that warrants his deposition"—Stratasys offered to allow the deposition of Dr. Zeif "if Defendants withdraw their motion for protective order and allow the deposition of Dr. Tao to proceed." Ex. 1 at G. BambuLab rejected this compromise and maintained its demand that Dr. Zeif be deposed and that Dr. Tao be shielded from deposition. Ex. 1 at I. As a result, Stratasys is left with no choice but to file the present motion.

## II.    LEGAL STANDARD

Although discovery under Rule 26(b)(1) is intentionally broad, it is not without limits. Courts in this Circuit have long recognized that, absent a showing that a senior executive possesses unique personal knowledge relevant to the dispute, discovery must be managed to prevent undue burden, inconvenience, and oppression to both the executive and the corporation. *Comput. Accel. Corp. v. Microsoft Corp.*, No. 9:06-CV-140, 2007 WL 7684605, at *1 (E.D. Tex. June 15, 2007). Consistent with that principle, the Fifth Circuit requires parties to pursue less intrusive avenues of discovery before seeking to depose an apex witness, including by first deposing lower-level employees with direct operational knowledge. *Motion Games, LLC v. Nintendo Co., Ltd.*, No. 6:12-cv-878-JDL, 2015 WL 11143486, at *1 (E.D. Tex. Mar. 18, 2015) (citing *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979)).

## III.    ARGUMENT

### A.    Dr. Zeif Does Not Possess Any Unique Information Relevant to Any Triable Issues in This Case

The Apex doctrine exists to prevent precisely the kind of discovery overreach that BambuLab is engaged in here. The doctrine protects high-level executives from deposition unless the requesting party can make a specific, fact-based showing that the executive possesses unique, personal knowledge of relevant facts that cannot be obtained through less intrusive means. *See PA Advisors, LLC v. Google, Inc.*, No. 2:07-CV-480, 2009 WL 10741630, at *2 (E.D. Tex. Aug. 28, 2009) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)) ("A court can require the party seeking the deposition to show that the high-ranking executive has relevant knowledge that cannot reasonably be obtained through less invasive sources …."). That burden rests squarely with BambuLab, and it has not come close to carrying it.

Dr. Yoav Zeif is the Director and CEO of Stratasys Limited, the corporate parent of Plaintiff

- 2 -

Stratasys, Inc. He is not an officer or employee or on the payroll of Plaintiff Stratasys, Inc. Dr. Zeif's employer (Stratasys Limited) does not own any of the asserted patents. The core issues in this case (patent infringement, validity, and damages) concern BambuLab's accused products and patents owned exclusively by Stratasys, Inc. They do not turn on the parent entity's oversight or the parent entity's governance of its subsidiaries. Yet BambuLab's proffer ignores this distinction entirely, seeking instead to elevate generalized executive involvement into purportedly "unique" knowledge. Courts have repeatedly rejected that approach, and for good reason. *See Comput. Accel.*, 2007 WL 7684605, at *1 (granting motion for protective order where "emails merely show that [defendant's CEO] directed and encouraged its employees to concentrate on accelerating the boot time of [accused product]" and finding that "[p]laintiff fail[ed] to show that if [defendant's CEO] has personal knowledge, it is 'unique' or unavailable from lower-level employees").

Unable to identify any triable issue on which Dr. Zeif has non-duplicative personal knowledge, BambuLab relies on a small collection of internal emails and public statements that prove the opposite of what it claims. These materials consistently show Dr. Zeif receiving information from others, asking follow-up questions, or participating in discussions where the substantive knowledge resided with operating executives (most notably Mr. Rich Garrity, who has already been deposed at length). Several of the documents did not even originate from Dr. Zeif's files, but from the files of other executives, including individuals whom BambuLab itself seeks to depose. Others are email chains in which Dr. Zeif is merely one of several recipients, underscoring that the information was shared and institutional, not singular or personal. *See Comput. Accel.*, 2007 WL 7684605, at *1 (granting motion for protective order where plaintiff relied on emails to establish unique knowledge of the executive but "some of the [other] individuals noticed by plaintiff are authors or recipients of some of the emails at issue"). Far from demonstrating unique knowledge, these documents confirm that Dr. Zeif functioned as a recipient and synthesizer of information developed by others within the organization.

The specific documents BambuLab cites further underscore the absence of uniqueness. *See* Ex. 1 at H. SSYSBL000108646, for example, originated from the files of Mr. Jeremy Siegman (not Dr. Zeif) highlighting that the underlying knowledge resided elsewhere in the company. *See* Ex. 1 at A (showing the authorship metadata for SSYSBL000108646). SSYSBL000048221 is an email chain in which Dr. Zeif poses questions and another team member provides detailed responses. *See* Ex. 1 at B. This email reflects an inquiry made by Dr. Zeif, not any unique knowledge or insight possessed solely by Dr. Zeif. Importantly, that same email chain included Mr. Garrity, giving BambuLab a full and fair opportunity to explore its contents during Mr. Garrity's deposition. SSYSBL000050022 and SSYSBL000050024 similarly consist of communications sent to both Dr. Zeif and Mr. Garrity, reinforcing that the relevant information was shared among senior executives and not uniquely held by Dr. Zeif. *See* Ex. 1 at C. Nor do SSYSBL000070655 or SSYSBL000253418 suggest otherwise; each reflects information developed and conveyed by others, without any indication that Dr. Zeif possessed personal, non-derivative knowledge unavailable from other witnesses. *See* Ex. 1 at D–E.

BambuLab's reliance on an earnings call transcript fares no better. The transcript reflects public, high-level commentary delivered to shareholders. Indeed, this commentary synthesizes information provided by finance, legal, and business teams across the organization. If such statements were enough to establish unique personal knowledge, then the Apex doctrine would have no practical meaning, and every CEO of a public company would be subject to deposition whenever the company became involved in litigation. That is not the law. *See Motion Games*, 2015 WL 11143486, at \*2–3 (finding public statements made by the executive insufficient to justify an Apex deposition). Courts have consistently held that institutional awareness, strategic oversight, and public-facing statements do not justify Apex depositions, particularly where the same information is available from lower-level executives and fact witnesses. *See id*; *see also Retractable Tech., Inc. v. Becton, Dickinson & Co.*, No. 2:08-cv-16, 2011 WL 13136271, at \*2 (E.D. Tex. Dec. 12, 2011) (finding executive's general

- 4 -

statements insufficient to establish unique personal knowledge). Here, the record shows exactly that: what BambuLab characterizes as "unique" knowledge is, in reality, derivative, shared, and already obtained through less intrusive discovery. The Apex doctrine squarely forecloses compelling Dr. Zeif's deposition on this record.

> **B.    BambuLab Has Not Identified Any Relevant Information Related to Any Triable Issues That It Has Not Already Received from Other Company Executives, Including Mr. Rich Garrity**

BambuLab seeks to depose Dr. Zeif not due to need, but rather to inflict undue burden on Plaintiff Stratasys, Inc. In fact, BambuLab has already obtained the information it seeks through less intrusive means via the deposition of Mr. Rich Garrity. Mr. Garrity is the highest-ranking executive at Plaintiff Stratasys, Inc., and he has already been deposed for a full day. His testimony was extensive, substantive, and detailed.

Mr. Garrity testified in depth about several issues relevant to this dispute, and indeed every issue for which BambuLab seeks to depose Dr. Zeif. Mr. Garrity explained the additive manufacturing industry and Stratasys's competitive posture within it, including why BambuLab emerged as a disruptive force and how its market entry materially affected Stratasys's FDM business. *See* Ex. 1 at F.1–3 (Garrity Dep. Tr. at 107:2–9, 62:15–24, 162:2–10). He described Stratasys's business strategy and long-term trajectory, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮. *See* Ex. 1 at F.1–3 (Garrity Dep. Tr. at 107:2–9, 62:15–24, 162:2–10). Mr. Garrity also provided detailed testimony on financial matters and damages, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 1 at F.4–6 (Garrity Dep. Tr. at 178:14–19, 75:16–19, 64:15–21). His testimony was not abstract or high-level; rather, it was grounded in data, systems, and firsthand operational experience.

- 5 -

████████████████

Mr. Garrity further testified concretely about customer behavior and market impact, ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████    *See, e.g.*, Ex. 1 at F.7

(Garrity. Dep. Tr. at 71:9–17). He explained when and how Stratasys became aware of BambuLab, how that awareness evolved as enterprise adoption increased, and how those developments triggered internal investigation and escalation. *See* Ex. 1 at F.8–9 (Garrity Dep. Tr. at 169:5–7, 241:19–25). Mr. Garrity also addressed decision-making related to enforcement of Stratasys's patent rights, while appropriately respecting privilege boundaries. *See* Ex. 1 at F.10 (Garrity Dep. Tr. at 240:11–16).[2] In addition, he explained Stratasys's corporate structure and operations, including the relationship between Stratasys Limited and Stratasys, Inc., executive roles, reseller models, and manufacturing footprint, and testified extensively about key acquisitions and divestitures, ████████████ ████ including valuation context, patent handling, and strategic implications. *See, e.g.*, Ex. 1 at F.11–13 (Garrity Dep. Tr. at 148:22–25, 114:11–15, 165:2–6).

Crucially, Mr. Garrity did not suggest that Dr. Zeif possessed exclusive or superior knowledge on any of these topics. To the extent any areas of inquiry touch privileged legal advice or board deliberations, those limits would apply equally to Dr. Zeif and cannot justify his deposition. Mr. Garrity's deposition transcript tells a clear story: the knowledge BambuLab seeks is institutional, shared by multiple individuals within the company, and already obtained. BambuLab is not entitled to an Apex deposition simply because it prefers to hear the same answers from someone with a higher title.

---

[2] To the extent BambuLab seeks additional information regarding Plaintiff's decision to pursue infringement action against BambuLab, such issues relate to legal analyses and advice that Stratasys received from counsel and are appropriately protected as attorney work-product and under the attorney-client privilege.

### C.  BambuLab's Position Is Irreconcilable with Its Own Apex Motion

BambuLab's position lays bare a striking and untenable hypocrisy. In its own motion for a protective order (Dkt. No. 151), BambuLab insists that the Apex doctrine categorically shields its CEO, Dr. Ye Tao, from deposition because he purportedly lacks unique personal knowledge and because any relevant information can be obtained from lower-level employees. *See* (Dkt. No. 151). Yet BambuLab simultaneously seeks to depose Dr. Zeif (the CEO of a non-party parent entity) who sits even further removed from the operative facts than Dr. Tao himself. Bambu cannot credibly argue, on the one hand, that Apex principles forbid inquiry into its own CEO based on burden, proportionality, and the availability of alternative witnesses, while on the other hand demanding precisely the same intrusion into Stratasys's corporate parent without identifying any unique, non-duplicative knowledge. This asymmetric application of the Apex doctrine reveals the true nature of BambuLab's request: not a principled pursuit of relevant evidence, but a tactical attempt to impose pressure and gain leverage. BambuLab's refusal to make its own CEO available fatally undercuts any claim that deposing Dr. Zeif is necessary, proportional, or justified.

## IV.  CONCLUSION

This case does not warrant piercing the Apex shield. Dr. Yoav Zeif is a non-party parent-company CEO with no unique, personal knowledge of the issues to be tried. BambuLab has already deposed the highest-ranking executive at Plaintiff Stratasys, Inc. and received comprehensive testimony on every subject it now claims requires Dr. Zeif's involvement. The documents Bambu cites confirm shared, derivative knowledge, and not any unique insight. Allowing this deposition would convert discovery into a pressure tactic and render the Apex doctrine meaningless. The Court should enforce proportionality, respect corporate structure, and grant a protective order barring the deposition of Dr. Zeif.

████████████

Dated: January 2, 2026

Respectfully submitted,

/s/ Syed K. Fareed
Brian Oaks
Texas State Bar No. 24007767
Syed K. Fareed
Texas State Bar No. 24065216
Aashish Kapadia
Texas State Bar No. 24097917
Christian Tatum
Texas State Bar No. 24125429
**MCDERMOTT WILL & SCHULTE LLP**
300 Colorado Street, Suite 2200
Austin, Texas 78701-4078
Tel: (512) 726-2579
boaks@mwe.com
sfareed@mwe.com
akapadia@mwe.com
ctatum@mwe.com

Kevin J. Meek
Texas State Bar No. 13899600
**LAW OFFICES OF KEVIN MEEK, PLLC**
4501 Westlake Drive, Unit #23
Austin, TX 78746
Tel: (512) 422-1244
kevin@meek.law

Deron R. Dacus
Texas State Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705-1117
ddacus@dacusfirm.com

Andrea L. Fair
Texas State Bar No. 24078488
Claire A. Henry
Texas State Bar No. 24053063
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604

Tel: (903) 757-6400
andrea@millerfairhenry.com
claire@millerfairhenry.com

***ATTORNEYS FOR PLAINTIFF
STRATASYS, INC.***

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and CV-7(i), the undersigned hereby certifies that counsel for the parties met and conferred regarding this Motion prior to filing. On December 4, 2025, lead and local counsel for Bambu participated in a telephonic conference with counsel for Stratasys. The meet and confer ended in an impasse for the issues raised herein. Stratasys received final confirmation of Bambu's opposition to this motion on December 31, 2025.

/s/ Syed K. Fareed
Syed K. Fareed

## CERTIFICATE OF SERVICE

I hereby certify that, on January 2, 2026, a true and correct copy of the foregoing  document has been served on all counsel of record.

_/s/  Syed K. Fareed_____
Syed K. Fareed