# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| Stratasys, Inc., | § § § § § § § § § § § | |
| *Plaintiff,* | | |
| v. | | Case No. 2:24-cv-00644-JRG (Lead Case) |
| Shenzhen Tuozhu Technology Co., Ltd., *et al.*, | | |
| *Defendants.* | | |

| | | |
|---|---|---|
| Stratasys, Inc., | § § § § § § § § § § § | |
| *Plaintiff,* | | |
| v. | | Case No. 2:24-cv-00645-JRG (Member Case) |
| Shenzhen Tuozhu Technology Co., Ltd., *et al.*, | | |
| *Defendants.* | | |

| | | |
|---|---|---|
| BambuLab USA, Inc., *et al.*, | § § § § § § § § § § § § | |
| *Plaintiffs,* | | |
| v. | | Case No. 2:25-cv-00465-JRG (Member Case) |
| Stratasys, Inc. | | |
| *Defendant.* | | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PROHIBITING PLAINTIFF FROM DEPOSING DEFENDANT SHENZHEN TUOZHU TECHNOLOGY CO. LTD.'S CEO, YE TAO**

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................1

II.     LEGAL STANDARD .........................................................................................1

III.    ARGUMENT......................................................................................................2

    A.    Dr. Tao has unique personal knowledge relevant to this dispute...........................2

        1.    Dr. Tao Possesses Unique Knowledge Regarding Willful Infringement...........................2

        2.    Dr. Tao Possesses Unique Personal Knowledge About Other Critical Issues ...................4

    B.    Stratasys has exhausted less-intrusive means for obtaining the information. ........................6

    C.    Defendants have failed to show that a protective order is necessary. ...................................7

IV.     CONCLUSION .................................................................................................7

███████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Coding Technologies, LLC v. ByteDance Ltd.*,
  No. 2:22-cv-00129-JRG, Dkt. No. 130 (E.D. Tex. Sept. 1, 2023) ...........................................6

*Fam. One v. Isaacks*,
  No. 9:22-CV-00028-MJT, 2023 WL 4503537 (E.D. Tex. Apr. 25, 2023)...............................7

*Salter v. Upjohn Co.*,
  593 F.2d 649 (5th Cir. 1979) ..............................................................................................1, 7

*Schmidt v. Goodyear Tire & Rubber Co.*,
  No. 2:01-cv-272, 2003 WL 27375845 (E.D. Tex. Jan. 13, 2003) ...........................................1

*Texas v. Google, LLC*,
  347 F.R.D. 490 (E.D. Tex. 2024).............................................................................................1

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)................................................................................................................1

Fed. R. Civ. P. 26(c) ...................................................................................................................7

## I.    INTRODUCTION

The Federal Rules of Civil Procedure allow for broad discovery of non-privileged, relevant material. *See* FED. R. CIV. P. 26(b)(1). Despite this, Defendants ("Bambu" or "BambuLab") seek extraordinary relief in filing a motion for a protective order prohibiting the deposition of defendant Shenzhen Tuozhu Technology Co, Ltd.'s CEO (Dr. Ye Tao). Defendants incorrectly assert that Dr. Tao's deposition is precluded by the Apex doctrine and Fifth Circuit precedent, including its decision in *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979). Inexplicably, Defendants seek this relief while at the same time insisting on deposing Plaintiff Stratasys Inc.'s *parent entity's CEO* (Dr. Yoav Zeif). *See* (Dkt. No. 154).

Dr. Tao's deposition is not precluded by the Apex doctrine because: (1) Dr. Tao possesses unique knowledge relevant to these proceedings; (2) Stratasys has already exhausted less-intrusive means of discovery without obtaining the relevant evidence; and (3) Defendants have not satisfied their burden to show that there is a good cause for a protective order or that such an order is necessary. Therefore, for at least these reasons, Defendants' motion for a protective order should be denied and the deposition of Dr. Tao allowed to proceed.

## II.    LEGAL STANDARD

"The scope of discovery under the Federal Rules of Civil Procedure is broad." *Texas v. Google, LLC*, 347 F.R.D. 490, 492 (E.D. Tex. 2024). "[It] is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Id*. at 494. Federal courts allow the depositions of high-level executives ("Apex" depositions) when "conduct and knowledge at the highest levels of the corporation are relevant to the case." *Texas*, 347 F.R.D. at 494. While "unique personal knowledge" is a factor, *Schmidt v. Goodyear Tire & Rubber Co.*, No. 2:01-cv-272, 2003 WL 27375845, at *1 (E.D. Tex. Jan. 13, 2003), Fifth Circuit precedent only requires that parties first utilize less-intrusive means to obtain the information. *See Salter*, 593

F.2d at 650–51 ("[I]f after taking the other depositions, plaintiff was not satisfied … the judge probably should have allowed the deposition.").

## III.    ARGUMENT

### A.    Dr. Tao has unique personal knowledge relevant to this dispute.

Defendants contend that Dr. Tao lacks unique personal knowledge relevant to this case. (Dkt. No. 151 at 4-6). Not so. Dr. Tao possesses unique, first-hand knowledge central to this case that cannot be obtained from any other witness. As Defendants' founder and CEO, Dr. Tao has been directly involved in Defendants' corporate structure, product development, marketing, and strategic decision-making, including matters bearing on Defendants' pre-suit knowledge and their willful infringement.

Defendants have conceded the relevance of Dr. Tao's communications and have never disputed that his emails bear on issues raised by the claims and defenses in this case. (Dkt. No. 82 at 6–7; Dkt. No. 92 at 5). In compelling production of Dr. Tao's emails, the Court expressly noted that "Defendants have not disputed that [Dr. Tao's] emails are relevant," thereby confirming that his communications concern matters properly within the scope of discovery. *See* (Dkt. No. 116 at 5). While relevance alone does not resolve whether Apex protections ultimately apply, Defendants' concession underscores that Dr. Tao's communications address substantive issues in dispute, rather than peripheral or purely administrative matters.

The record since-developed (including extensive depositions of at least ten other witnesses) reinforces that Dr. Tao's knowledge is singular and irreplaceable, and that his deposition is necessary to investigate issues central to this dispute, including Defendants' willful and indirect infringement, Defendants' reckless disregard for Stratasys's patent rights, and Defendants' corporate structure and web of entities involved in importing, marketing, and selling their infringing products in the U.S.

#### 1.    Dr. Tao Possesses Unique Knowledge Regarding Willful Infringement

Dr. Tao possesses unique, non-duplicative knowledge regarding Defendants' willful



infringement, knowledge that could not be obtained from the numerous lower-ranking witnesses Stratasys has already deposed. To date, Stratasys has deposed at least ten BambuLab employees, including Gen Li (Head of Hardware Department), Jie Jiang (Head of North American Sales), Chengxu Zhou (Product Marketing Manager), and Zihan Chen (Chief Engineer and designated corporate representative on willfulness). Despite their senior titles, these witnesses consistently disclaimed meaningful knowledge concerning Stratasys, its patent portfolio, or Defendants' awareness of infringement risk prior to this lawsuit. *See, e.g.*, Ex. 1 at A–E.

In short, the testimony of Bambu's rank-and-file witnesses revealed a consistent lack of knowledge on these issues.

That testimony stands in stark contrast to documentary evidence reflecting Dr. Tao's contemporaneous knowledge at the highest levels of the company. In a June 2022 email exchange concerning a proposed new product, Dr. Tao's response to the proposal stated

***No other BambuLab employee participated in this conversation.*** This admission establishes that, well before this lawsuit, Dr. Tao was uniquely aware of Stratasys's patents and the serious risk of patent litigation. That awareness is further underscored by Defendants' admissions in discovery that they

When questioned on these issues, Defendants' corporate representative          again disclaimed knowledge.

- 3 -

██████████████

████████████████████████████████████████████

These facts leave a critical evidentiary gap that only Dr. Tao can fill. Why did Defendants proceed with the infringing conduct despite knowing Stratasys held relevant patents and would likely sue? Answers to these issues are directly relevant to Defendants' intent to infringe, their general state of mind, their willful conduct as well as their intent to induce their customers to infringe. With the responsible employee gone under opaque circumstances and all other witnesses unable to testify on these issues, Dr. Tao is the sole witness at the heart of the matter with first-hand knowledge of Bambu's awareness, decision-making, and authorization at the executive level. His deposition is therefore neither cumulative nor speculative; it is essential to investigate Defendants' willfulness.

### 2.    Dr. Tao Possesses Unique Personal Knowledge About Other Critical Issues

As the founder of Defendants, Dr. Tao has intimate knowledge of Defendants' intricate corporate structure, development of the accused products, as well as marketing and sale of those products. *See* (Dkt. No. 82 at 6–7). Defendants' production of Dr. Tao's emails confirms this and shows that Dr. Tao remains involved in such matters.

None of the BambuLab witnesses deposed to date could explain the roles of the various Defendant entities in making, importing, selling, or offering for sale the accused products. Although Defendants claim that Mr. Zihan Chen has knowledge of the company, ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████    ███████████████████

---

[1] Defendants inexplicably contend that Mr. Chen was a "founding member" of BambuLab, but Mr. Chen explicitly refuted this. *See* Ex. 1 at A.6 (Chen Dep. Tr. at 10:17-19) ("Q. Do you consider yourself to be a founder of Shenzhen Tuozhu Technology Company? A. I don't think so.").

- 4 -

████████████████

████████████████████████████

The same deficiencies appeared across Defendants' other witnesses. Mr. Jie Jiang, Head of North American Sales, could not identify which entities manufacture the accused products, operate Defendants' online store for the U.S., or play roles in the supply chain. Ex. 1 at B.2-B.3 (Jiang Dep. Tr. 21:11-19; 61:6-13).[2] Mr. Chengxu Zhou similarly could not explain the corporate relationships among Defendants or the business of U.S. entities, testifying: ███████████████████ ███████████████████████████████████████████████ Nor could these witnesses fill other critical gaps: Mr. Jiang lacked knowledge about products released before he joined, admitted he had no access to direct-to-consumer sales data due to internal confidentiality restrictions[3], and disclaimed any ability to speak to market positioning or product differentiation. Ex. 1 at B.1, B.4-B.5. Mr. Gen Li likewise could not identify default configurations or explain why certain functions were included in the accused products. Ex. 1 at E.2-E.3. As the company's founder and CEO, Dr. Tao is the only witness who possess a complete understanding of Defendants' corporate structure, product lineage, and strategic decision-making.

Defendants' own documents show that Dr. Tao was directly involved in product development, sales strategy, and technical decision-making. An email thread from September–December 2022 (BAMBU-00312113–20) reflects Dr. Tao's active engagement with resellers, including sales channels, technical considerations, and knowledge of end customers, including industrial and manufacturing entities. ████████████████████████████

---

[2] Mr. Jiang's ignorance about which entity operates Defendants' online store for the U.S. is particularly troubling given that he previously submitted a sworn affidavit to this Court in support of Defendants' motion to dismiss this case due to BambuLab USA's absence, stating that "BambuLab USA, Inc. operates the online store for the United States." *See* (Dkt. No. 38-2, ¶ 11). If that was true then, why is it not true now? That is apparently a question only Dr. Tao can answer.

[3] Defendants' witnesses repeatedly expressed ignorance as to basic aspects of Defendants' organization and operation due to "very strict" internal "information protection" regulations limiting which employees can access information. *See, e.g. id;* Ex. 1 at D.1-2.

██████████████████

██████. In April–May 2022 emails (BAMBU-00313214–22), Dr. Tao discussed the launch of an accused product, including pricing, production timelines, and marketing strategy ██████████

████████████████████████████████████████████████████████

█████████████, and also addressed firmware architecture and open-source obligations. Ex. 1 at G.

More recent communications further confirm Dr. Tao's technical and IP-related involvement. An October 2023 email thread (BAMBU-00332169–72) shows Dr. Tao negotiating a development partnership ██████████████████████, including discussions of licensing and firmware compatibility. *See* Ex. 1 at H. In January 2024, Dr. Tao corresponded with a key opinion leader (i.e., social media influencer) regarding third-party firmware, security vulnerabilities, and IP protection ████████████████████████████████████████████████. *See* Ex. 1 at I. Consistent with these documents, Bambu's Head of Hardware testified that Dr. Tao participated in meetings related to the development of the accused products. *See* Ex. 1 at E.1 (Li Dep. Tr. 33:1–5). This evidence demonstrates Dr. Tao's continuing, hands-on knowledge of technical, commercial, and IP issues central to this dispute.

**B.      Stratasys has exhausted less-intrusive means for obtaining the information.**

The Court should permit the deposition of Dr. Tao because Stratasys has already exhausted less-intrusive discovery. Stratasys deposed ten lower-ranking employees, none of whom could provide the information Dr. Tao possesses regarding Defendants' corporate structure, the rationale behind the accused features in Defendants' products, or Dr. Tao's knowledge of Stratasys's patent portfolio and the risks associated with implementing patented ideas. *See* Section III.A. Defendants do not dispute that Stratasys pursued these avenues. *See* (Dkt. No. 151 at 2, 5-6). Instead, Defendants argue that the mere fact Stratasys deposed lower-level employees bars any Apex deposition. However, as this Court has recognized, the fact that Stratasys has attempted and failed to obtain the relevant information through other means favors Stratasys, not the other way around. *See Advanced Coding Technologies,*

*LLC v. ByteDance Ltd.*, No. 2:22-cv-00129-JRG, Dkt. No. 130 at 10 (E.D. Tex. Sept. 1, 2023) (acknowledging that plaintiff's deposition of other employees weighed in favor of the Apex deposition). Defendants' reliance on *Salter* is misplaced, as *Salter* requires only that a party first attempt less-intrusive discovery. *Salter*, 593 F.2d at 650-51. Stratasys has done so.

C.    **Defendants have failed to show that a protective order is necessary.**

Defendants contend that the Court should prohibit the deposition of Dr. Tao or, in the alternative, limit the deposition in both time and scope. (Dkt. No. 151 at 6-7). Defendants' only argument is that Dr. Tao "leads an international company with hundreds of employees" and that a deposition would "impose a significant burden." (*Id.* at 7). However, a generic claim of a busy CEO falls well short of establishing undue burden. *See Fam. One v. Isaacks*, No. 9:22-CV-00028-MJT, 2023 WL 4503537, at *5 (E.D. Tex. Apr. 25, 2023) ("[S]cheduling conflicts do not satisfy the 'good cause' standard for a protective order under Rule 26(c)."). The argument is particularly unconvincing given that Dr. Tao routinely makes himself available for lengthy hours-long interviews with social media influencers on YouTube.[4] Where a witness can devote substantial time to public appearances on YouTube, claims of undue burden to sit for a deposition in litigation central to his company's future ring hollow. Indeed, such claims of undue burden reflect misplaced priorities, not unavailability.

Moreover, Stratasys has offered to depose Dr. Tao virtually and at a time convenient to reduce any perceived burden on Defendants. Defendants provide no basis for why Dr. Tao's deposition should be limited in time or scope—especially given the broad range of issues that he has knowledge about—let alone any extraordinary circumstances that justify prohibiting his deposition outright.

IV.    **CONCLUSION**

Accordingly, the Court should reject Defendants' attempts to shield Dr. Tao from deposition.

---

[4] *See, e.g.*, https://www.youtube.com/watch?v=FaOrQD9PqNc; https://www.youtube.com/watch?v=7pFtbybLlk0; https://www.youtube.com/watch?v=ciXH8Kl_inA; https://www.youtube.com/watch?v=NZEzzNHrP-Q&pp=ygUPYmFtYnVsYWIgeWUgdGFv; https://www.youtube.com/watch?v=dGP-pr3tEts.

- 7 -

Dated: January 2, 2026

Respectfully submitted,

*/s/ Syed K. Fareed*
Brian Oaks
Texas State Bar No. 24007767
Syed K. Fareed
Texas State Bar No. 24065216
Aashish Kapadia
Texas State Bar No. 24097917
Christian Tatum
Texas State Bar No. 24125429
**MCDERMOTT WILL & SCHULTE LLP**
300 Colorado Street, Suite 2200
Austin, Texas 78701-4078
Tel: (512) 726-2579
boaks@mwe.com
sfareed@mwe.com
akapadia@mwe.com
ctatum@mwe.com

Kevin J. Meek
Texas State Bar No. 13899600
**LAW OFFICES OF KEVIN MEEK, PLLC**
4501 Westlake Drive, Unit #23
Austin, TX 78746
Tel: (512) 422-1244
kevin@meek.law

Deron R. Dacus
Texas State Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705-1117
ddacus@dacusfirm.com

Andrea L. Fair
Texas State Bar No. 24078488
Claire A. Henry
Texas State Bar No. 24053063
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Tel: (903) 757-6400

- 8 -

**FILED UNDER SEAL**

andrea@millerfairhenry.com
claire@millerfairhenry.com

***ATTORNEYS FOR PLAINTIFF
STRATASYS, INC.***



**CERTIFICATE OF SERVICE**

I hereby certify that, on January 2, 2025, a true and correct copy of the foregoing  document has been served on all counsel of record.

_/S/ Syed k. Fareed_
Syed k. Fareed