**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| Stratasys, Inc., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:24-cv-00644-JRG |
| Shenzhen Tuozhu Technology Co., Ltd., *et* | § | (Lead Case) |
| | § | |
| *al.,* | § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| Stratasys, Inc., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:24-cv- |
| | § | 00645-JRG |
| Shenzhen Tuozhu Technology Co., Ltd., *et* | § | (Member Case) |
| | § | |
| *al.,* | § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| BambuLab USA, Inc., *et al.,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 2:25-cv-00465-JRG |
| | § | (Member Case) |
| | § | |
| Stratasys, Inc. | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S MOTION TO EXCLUDE IMPROPER AND UNRELIABLE OPINIONS
OF DEFENDANTS' DAMAGES EXPERT (MS. LAUREN KINDLER)**

**TABLE OF CONTENTS**

I.       ARGUMENT..................................................................................................................1

   A.      Ms. Kindler's Apportionment Relies on Irrelevant MakerBot-Based "Relevance" Scores...........1

   B.      Ms. Kindler's Damages Analysis Is Based On NIAs For Which There Is No Evidence Of

           Acceptability.................................................................................................2

   C.      ████████████████████████████████████████

           ██████..........................................................................................5

   D.      Ms. Kindler's Opinions On False Advertising Fail To Assume Liability ...................................7

II.      CONCLUSION............................................................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015)..................................................................................2

*DataTreasury Corp. v. Wells Fargo & Co.*,
No. 2:06-CV-72 DF, 2011 WL 8810604 (E.D. Tex. Aug. 2, 2011)..........................2

*Headwater Research LLC v. AT&T Inc. et al.*,
Case No. 2:23-CV-397-JRG-RSP, Dkt. 284......................................................2, 3

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012).....................................................................................7

*Mojo Mobility, Inc. v. Samsung Electronics Co., Ltd.*,
No. 2:22-cv-398-JRG-RSP, 2024 WL 3527240 (E.D. Tex. July 24, 2024) .............3

*Rite-Hite Corp. v. Kelley Co., Inc.*,
56 F.3d 1538 (Fed. Cir. 1995) (en banc)....................................................................6

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*,
No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ..................7

*SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*,
926 F.2d 1161 (Fed. Cir. 1991)..................................................................................7

**Other Authorities**

Fed. R. Civ. P. 37 .............................................................................................................3

Fed. R. Evid. 702 ....................................................................................................1, 2, 6, 7

Ms. Kindler's damages opinions are built on a series of analytical shortcuts that depart from established economic and legal principles. She selectively relies on isolated data points while ignoring the complete set of facts, assumes commercially acceptable alternatives without any evidentiary support, and advances liability-based critiques under the guise of damages analysis. Because her methodology is untethered from the governing framework and the factual record, her opinions are unreliable and should be excluded under Rule 702.

## I.    ARGUMENT

### A.    Ms. Kindler's Apportionment Relies on Irrelevant MakerBot-Based "Relevance" Scores

Ms. Kindler's apportionment rests on Dr. Mueller's assignment of "relevance scores"

1



**B.    Ms. Kindler's Damages Analysis Is Based On NIAs For Which There Is No Evidence Of Acceptability**

Ms. Kindler's damages opinion rises and falls on the assertion that Bambu had "available and acceptable non-infringing alternatives," and that those alternatives would have constrained any reasonable royalty. *See* Ex. 02 (Kindler Report), ¶¶ 10, 12, 111(f), 157(c), 161, 162, 187, 189, 190, 274(e). Her report repeatedly emphasizes "commercial acceptability" as the linchpin of her analysis. But there is a fundamental problem. There is no evidence in the record that any of her purported alternatives were ever shown to be acceptable to Bambu's customers. "[A] key part of the reasonable royalty determination under *Georgia Pacific* is whether the accused infringer had acceptable non-infringing alternatives available to it *at the time of the hypothetical negotiation*." *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2011 WL 8810604, at *9 (E.D. Tex. Aug. 2, 2011). An expert may not assume away a required element of the analysis. Availability and acceptability are not rhetorical labels; they are two separate legal requirements that must be supported by evidence *at the time of hypothetical negotiation*. In *Headwater Research LLC v. AT&T Inc.*, the Court held that defendants must provide evidence or analysis showing availability and acceptability, and struck alternative theories where no such showing was made. *Headwater Research LLC v. AT&T Inc. et al.*, Case No. 2:23-CV-397-JRG-

2

RSP, Dkt. 284 at 11-12 ("Plaintiff's Motion to Strike on this basis is GRANTED and all sections of paragraphs 331 and 332 discussing NIAs for which there is no evidence or analysis of … acceptability.").

Here, Bambu has offered no competent evidence that any of the purported alternatives were acceptable to customers, much less that they were commercially viable substitutes in the marketplace. To the extent Bambu has some hidden evidence of acceptability that has not been produced in discovery and especially in depositions of Bambu's corporate representatives, Fed. R. Civ. P. 37 requires all such evidence to be excluded. *See Mojo Mobility, Inc. v. Samsung Electronics Co., Ltd.*, No. 2:22-cv-398-JRG-RSP, 2024 WL 3527240, at *3 (E.D. Tex. July 24, 2024) ("…[F]ailure to produce the evidence relied upon by [expert] warrants Rule 37(c)(1) preclusion.").

The record evidence is clear. Stratasys served a notice of deposition asking Bambu to produce its corporate representative(s) to testify as to "Defendants' knowledge of any non-infringing alternatives or design arounds to each of Defendants' Accused Products, including … whether those alternatives would be acceptable …." Ex. 10 (30(b)(6) Notice) at Topic 48. In response, Bambu designated six different witnesses to address acceptability of its alleged non-infringing alternatives. Ex. 11 (12/17/2025 Email from M. Vincent).

For the '713 Patent, Bambu's designated corporate representative (Mr. Tao Wei) testified that he was "not able to answer" whether the proposed alternative would be acceptable to customers and confirmed that neither he nor anyone at Bambu had ever looked into acceptability. *See* Ex. 04 (Wei Dep. Tr.) at 58:24-61:12 (Mr. Wei stating he is "not able to answer this question" regarding acceptability of Bambu's alleged non-infringing alternative and confirming that Bambu has not researched acceptability of the alleged non-infringing alternatives—"I can't say whether such research has been conduct"); *id.* at 63:9-64:22, 72:22-73:7 (Mr. Wei stating that he "do[es]n't have the information" whether the alleged alternatives would be acceptable to Bambu's customers).

For the '660 Patent, the corporate witness (Mr. Hongsheng Huang) admitted he had no

information regarding "the degree of acceptance" and had no way to judge whether customers would accept the alternative. *See* Ex. 05 (Huang Dep. Tr.) at 68:7-72:1 (Mr. Huang testifying that he has no information as to acceptability of NIAs—"I have no way to judge the degree to which – whether the client would accept [the alternative]."); *id.* at 74:12-75:12, 81:10-19, 82:17-83:2 (Mr. Huang testifying "I cannot make judge whether customers will accept this alternative."); *id.* at 86:11-18, 91:2-12.

For the '698 and '381 Patents, the testimony was even more damaging—Bambu's representative (Mr. Zihan Chen) ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████    *See* Ex. 06 (Chen Dep. Tr.) at 166:10-170:10 (Mr. Chen testifying that █████

███████████████████████████████████████████████████

███████████████████████████████████████████    (emphasis added). Bambu then adopted a different approach to minimize redesign and cost, knowingly sacrificing certain functionality. *Id.* A design that Bambu itself rejected as *unacceptable* during engineering cannot be repackaged in litigation as a commercially acceptable alternative.

The pattern repeats across the remaining patents. For the '466 and '464 Patents, the corporate representative (Mr. Tao Wang) testified that he did not know whether users would accept the proposed alternatives and had no evidence to prove they would. *See* Ex. 07 (Wang Dep. Tr.) at 86:19-87:18, 92:2-93:4 (Mr. Wang testifying that he "do[es]n't know whether the user would be against these alternative[s]…. I do not have relevant evidence to prove that the user are not able to accept such a [NIA] feature.").

For the '097 and '324 Patents, Bambu's corporate representative (Mr. Hongbin Ge) expressly disclaimed any knowledge of customer acceptability, stating he could not represent users and had no evidence that customers would find the alternatives acceptable. *See* Ex. 08 (Ge Dep. Tr.) at 118:9-16 and 119:12-20 and 123:17-124:18 ("My question to you is, for each of these alternatives, what evidence do

4

you have that BambuLab's customers would find any of these alternatives to be acceptable? … THE WITNESS:· Well, I cannot represent our users, so ***it's impossible to -- to determine whether they are acceptable or not***."); *see id.* at 127:18-25 ("Do you have any knowledge on acceptability of these alternatives to customers? … THE WITNESS: I know I'm a witness from the company …. ***I truly don't know the answer to the question you just asked, so I'm unable to provide such an answer***.").

For the '774 Patent, the corporate witness confirmed he had no information regarding acceptability of the alleged alternatives. *See* Ex. 04 (Wei Dep. Tr.) at 106:8-22. Across the board, when asked to identify any evidence of customer acceptability or any customer feedback supporting acceptability, Bambu's witnesses could identify none.[1] That is not proof of commercial acceptability. It is an admission that no such evidence exists.

Ms. Kindler's methodology lacks a reliable foundation. She repeatedly invokes "commercially acceptable non-infringing alternatives," yet the factual record contains no evidence acceptability, no market validation, and in at least one instance direct testimony that Bambu itself rejected the design as unacceptable. An expert cannot bridge that evidentiary gap with assumption or advocacy. Because her reasonable royalty opinion depends on unproven and unsupported assertions of acceptable non-infringing alternatives, it fails to satisfy the reliability requirements of Rule 702 and should be excluded under *Daubert*.

**C.    Ms. Kindler's Failure To Account For The ▮▮▮▮▮▮▮▮▮▮ Renders Her Opinions Unreliable**



---

[1] Bambu's technical experts fare no better—they also do not have any evidence whether the alleged NIAs would be acceptable to Bambu's customers. *See e.g.*, Ex. 12 (Hickner Dep. Tr.) at 199:5-12 (confirming "I did not perform any customer surveys or customer acceptance evidence"); Ex. 13 (Mueller Dep. Tr.) at 240:15-20 ("Q. You yourself didn't conduct any surveys or studies to determine whether any of these alleged noninfringing alternatives would be acceptable to Bambu's customers. Is that fair? A. I did not conduct a survey by myself, that's correct."); Ex. 14 (Wolfe Dep. Tr.) at 297:12-300:17 (Dr. Wolfe testifying he did not confirm acceptability of NIAs with any Bambu customer).

6

**D.     Ms. Kindler's Opinions On False Advertising Fail To Assume Liability**

Ms. Kindler contends that Mr. Kennedy failed to establish an economic nexus between Bambu's false advertising and its profits and therefore has not justified disgorgement under the Lanham Act. Ex. 02 (Kindler Report) ¶¶ 283-288. She faults him for improperly assuming liability. *Id.* That critique rests on a flawed legal premise. A damages expert is entitled to assume liability and calculate the appropriate monetary remedy. *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *4 (E.D. Tex. Apr. 10, 2017). Under the Lanham Act, causation is an element of liability, not damages. *Id.* at *2 n.1. Only after liability is established does the analysis turn to damages. Courts have rejected efforts by economic experts to opine on causation where they lack specialized expertise on that issue. *Id.* at *10. By criticizing Mr. Kennedy for not independently proving deception and diversion, Ms. Kindler conflates liability with damages and offers an improper legal opinion under the guise of economic analysis. Her failure to assume liability renders her opinions unreliable and inadmissible under Rule 702.

**II.     CONCLUSION**

For the foregoing reasons, the Court should exclude any testimony from Ms. Kindler on the afore-mentioned issues.

Dated: March 2, 2026                                        Respectfully submitted,

                                                           */s/ Syed K. Fareed*
                                                           Brian Oaks
                                                           Texas State Bar No. 24007767
                                                           Syed Fareed
                                                           Texas State Bar No. 24065216
                                                           Aashish Kapadia
                                                           Texas State Bar No. 24097917
                                                           **McDermott Will & Schulte LLP**
                                                           300 Colorado Street, Suite 2200
                                                           Austin, Texas 78701-4078
                                                           Telephone: (512) 726-2579
                                                           Facsimile:  (512) 532-0002

boaks@mwe.com
sfareed@mwe.com
akapadia@mwe.com

Ian Brooks (*pro hac vice*)
Christian T. Tatum
Texas State Bar No. 24125429
**McDermott Will & Schulte LLP**
500 North Capitol Street, NW
Washington, DC 20001
Telephone: (202) 756-8000
Facsimile:  (202) 756-8087
ibrooks@mwe.com
ctatum@mwe.com

Kevin J. Meek
Texas State Bar No. 13899600
**LAW OFFICES OF KEVIN MEEK, PLLC**
4501 Westlake Drive, Unit #23
Austin, TX 78746
Tel: (512) 422-1244
kevin@meek.law
Deron R. Dacus
Texas State Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705-1117
ddacus@dacusfirm.com

Andrea L. Fair
Texas State Bar No. 24078488 Claire A. Henry
Texas State Bar No. 24053063
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway Longview, TX 75604
Tel: (903) 757-6400
andrea@millerfairhenry.com
claire@millerfairhenry.com

Jason Kraus
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1600 Utica Ave. South Ste. 600
Minneapolis, MN 55416

8

Tel: 612-464-4500
jason.kraus@nelsonmullins.com

***ATTORNEYS FOR
PLAINTIFF STRATASYS,
INC.***

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and CV-7(i), the undersigned hereby certifies that the parties have conferred about the merits of the motion by email and telephonic conference on March 2, 2026. The parties were unable to reach resolution.

       /s/  Syed K. Fareed
        Syed K. Fareed



9

## CERTIFICATE OF SERVICE

I hereby certify that, on March 2, 2026, a true and correct copy of the foregoing document has been served on all counsel of record.

 /s/  *Syed K. Fareed*           
                    Syed K. Fareed