IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| STRATASYS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHEN TUOZHU TECHNOLOGY CO., LTD., SHANGHAI LUNKUO TECHNOLOGY CO., LTD., BAMBU LAB LIMITED, AND TUOZHU TECHNOLOGY LIMITED,<br><br>Defendants. | Civil Action No. 2:24-cv-00644-JRG<br>LEAD CASE<br><br>Civil Action No. 2:24-cv-00645-JRG<br>MEMBER CASE<br><br>JURY TRIAL DEMANDED |
| BAMBULAB USA, INC., SHENZHEN TUOZHU TECHNOLOGY CO., LTD., SHANGHAI LUNKUO TECHNOLOGY CO., LTD., BAMBULAB LIMITED, AND TUOZHU TECHNOLOGY LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>STRATASYS, INC.,<br><br>Defendant. | Civil Action No. 2:25-cv-00465-JRG<br>MEMBER CASE<br><br>JURY TRIAL DEMANDED |

**BAMBU'S MOTION TO STRIKE**
**THE EXPERT TESTIMONY OF DAVID KENNEDY**

**TABLE OF CONTENTS**

I.    LEGAL STANDARDS ...................................................................................................1

II.   ARGUMENT ..............................................................................................................1

    A.  Mr. Kennedy's Bambu Survey-Based Apportionment Is Legally Flawed .........................1

        1.  The Bambu Survey Is Unreliable for Patent Damages .................................................2

        2.  Mr. Kennedy's 51% Rule of Thumb "Allocation" Fails ............................................2

        3.  Improper Convoyed Sales Apportionment.................................................................4

    B.  Mr. Kennedy Inflates the Royalty Based by Improperly Adding Convoyed Sales of Unaccused Products.......................................................................................................4

        1.  The Accused Products and Unaccused Products Are Not a "Functional Unit" ............5

        2.  The Patented Features Do Not Drive Demand for the Accused Products ....................6

    C.  Mr. Kennedy Fails to Reasonably Approximate or Otherwise Consider the Extent of Use of the Claimed Methods.............................................................................................8

        1.  The Federal Circuit and This Court Have Required Quantifying the Extent of Use of Method Claims ...................................................................................................8

        2.  Mr. Kennedy Fails to Consider Extent of Use ...........................................................9

    D.  Mr. Kennedy Improperly Invites the Jury to Award Future Damages.............................11

III.  CONCLUSION ..........................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Seating Co. v. USSC Grp., Inc.*,
514 F.3d 1262 (Fed. Cir. 2008)....................................................................................5, 6

*In re Apotex, Inc.*,
49 F. App'x 902 (Fed. Cir. 2002)........................................................................................12

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
576 F.3d 1348 (Fed. Cir. 2009)...........................................................................................8

*Ecolab Inc. v. Dubois Chems., Inc.*,
No. 21-567-RGA, 2023 WL 7019266 (D. Del. Oct. 25, 2023) ..............................................9

*Infernal Tech., LLC v. Sony Interactive Ent., LLC*,
No. 19-cv-00248-JRG, Dkt. No. 281 (E.D. Tex. Feb. 26, 2021)............................................9

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ...........................................................................................5, 6

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)...........................................................................................9

*Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*,
30 F.4th 1339 (Fed. Cir. 2022) ...........................................................................................9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
904 F.3d 965 (Fed. Cir. 2018)..........................................................................................2, 7

*Rite-Hite Corp. v. Kelley Co., Inc.*,
56 F.3d 1538 (Fed. Cir. 1995).............................................................................................5

*Sci. Applications Int'l Corp. v. U.S.*,
169 Fed. Cl. 346 (2024).....................................................................................................12

*Uniloc USA, Inc. v Microsoft Corp.*,
532 F.3d 1292 (Fed. Cir. 2011)...........................................................................................3

*Vocalife LLC v. Amazon.com, Inc.*,
No. 2:19-cv-123-JRG, 2020 WL 5815950 (E.D. Tex. Sept. 30, 2020)...................................9

**Statute**

35 U.S.C. § 284...................................................................................................................12

██████████████████████████████

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Excerpts of the Opening Expert Report of Mr. David Kennedy (Jan. 20, 2026) |
| 2 | Excerpts of Why Choose Bambu Survey 数据 (BAMBU-00361423) |
| 3 | Excerpts of the Rebuttal Expert Report of Ms. Dina Mayzlin (Feb. 9, 2026) |
| 4 | Excerpts of the Opening Expert Report of Dr. Tim Osswald Regarding Infringement of U.S. Patent Nos. 9,421,713; 9,592,660; 7,555,357; 9,168,698 and 10,556,381 and Related Topics (Jan. 20, 2026) |
| 5 | Excerpts of the Opening Expert Report of Dr. Ken Gall Regarding Infringement of U.S. Patent Nos. 10,569,466; 11,167,464; 8,747,097; 11,886,774 and 8,562,324 and Related Topics (Jan. 20, 2026) |
| 6 | Excerpts of the Deposition Transcript of Mr. David Kennedy (Feb. 26, 2026) |
| 7 | Excerpts of the Deposition Transcript of Mr. Scott Crump (Jan. 7, 2026) |
| 8 | Exhibit 13B to the Opening Expert Report of Mr. David Kennedy (Jan. 20, 2026) |
| 9 | ████████████████████████████████ |
| 10 | Stratasys Claim Election (Jan. 8, 2026) |
| 11 | All3DP Poll (BAMBU-00382078) |
| 12 | Excerpts of the Rebuttal Expert Report of Dr. Jochen Mueller (Jan. 20, 2026) |
| 13 | Exhibit 1 to the Opening Expert Report of Mr. David Kennedy (Jan. 20, 2026) |

iii

███████████████████████████████████

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Accused Products | Bambu's 3D Printers, Software, and Certain Build Plates |
| AMS | Automatic Material Systems |
| Asserted Patents | The '381, '466, '464, '774, '357, '324, '097, '698, '713, and '660 Patents |
| Bambu | Defendants Shenzhen Tuozhu Technology Co., Ltd.; Shanghai Lunkuo Technology Co., Ltd.; Bambu Lab Limited; Tuozhu Technology Limited; and Plaintiff BambuLab USA, Inc. (Case No. 2:25-cv-00465-JRG) |
| Bambu Survey | Why Choose Bambu Survey (BAMBU-00361423) |
| EMVR | Entire Market Value Rule |
| IPR | *Inter Partes* Review |
| PTAB | Patent Trial and Appeal Board |
| '381 Patent | U.S. Patent No. 10,556,381 |
| '466 Patent | U.S. Patent No. 10,569,466 |
| '464 Patent | U.S. Patent No. 11,167,464 |
| '774 Patent | U.S. Patent No. 11,886,774 |
| '357 Patent | U.S. Patent No. 7,555,357 |
| '324 Patent | U.S. Patent No. 8,562,324 |
| '097 Patent | U.S. Patent No. 8,747,097 |
| '698 Patent | U.S. Patent No. 9,168,698 |
| '713 Patent | U.S. Patent No. 9,421,713 |
| '660 Patent | U.S. Patent No. 9,592,660 |

*All emphasis added unless otherwise noted.

iv

The "reasonable" royalty asserted by Stratasys' damages expert, David Kennedy, invites the jury to enter an unsupportable damages award because it improperly (1) relies on legally impermissible apportionments, (2) inflates the royalty base, (3) fails to follow well-established Federal Circuit law regarding how damages should be calculated for method claims, and (4) opines that a lump sum award is not appropriate on the record here but then asks the jury to award a massive lump sum by simply re-labelling it a running royalty.  Mr. Kennedy's opinion should be struck with respect to each of these legally incorrect damages theories.

## I.    LEGAL STANDARDS

The Court is familiar with Fed. R. Evid. 702's requirement that an expert's testimony be (a) based on specialized knowledge helpful to the trier of fact, (b) based on sufficient facts or data, (c) based on reliable methods, and (d) reliably applied to the facts of the case, as well as the gatekeeping task with which the Court is charged under *Daubert*.

## II.    ARGUMENT

### A.    Mr. Kennedy's Bambu Survey-Based Apportionment Is Legally Flawed

Under Mr. Kennedy's "Income Approach," he applies two fatally flawed allocations based upon a survey conducted by Bambu that does not provide data relevant to apportionment.  *First*, the Bambu Survey asked only what *impresses* customers, not any questions directed to the *value* of the features that allegedly practice the Asserted Patents.  Mr. Kennedy compounds this error by assuming that the relative proportion of respondents who identified a given feature correlates with the relative value of the features to each other and to the entire Accused Product as a whole.  *Second*, Mr. Kennedy allocates 51% of the revenue he associates with each feature to the Asserted Patents that purportedly "materially enable" the given feature.  Mr. Kennedy offers no justification for selecting 51% other than it is "more than half."  *Third*, Mr. Kennedy allocates convoyed sales based upon the Bambu Survey, even though the survey did not collect any data on convoyed sales products, did not address whether any feature impacted customer purchasing decisions, and did not suggest what drives demand for convoyed sales products.

1



### 1.    The Bambu Survey Is Unreliable for Patent Damages

Mr. Kennedy's opinions heavily rely upon the Bambu Survey.  *See, e.g.*, Ex. 1 ¶¶ 130–131, 189.  Specifically, Mr. Kennedy relies upon responses to the question ███████████

███████████████████  Respondents had to select one or more of the following seven responses:

█████████████████████████████████████████████

███████████████████████████████████.  *Id.*; Ex. 2 (rows 34–41).

The Bambu Survey does not (a) define these features, (b) measure their relative value, and (c) indicate whether any features drive customer demand for the Accused Products or any accessory products.  Additionally, Bambu Survey respondents ████████████████

█████████████████████████████████████████████

██████████████████ Ex. 3 ¶ 33 (citing discussions with Bambu team members).

The Bambu Survey is not a reliable source for Mr. Kennedy's allocation.  The Federal Circuit has repeatedly held that "it is only the patented technology that is taken from the owner, so the value to be determined is only the value that the infringing features contribute to the value of an accused product."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018).  But the Bambu Survey does not measure the purported "value that the infringing features contribute to the value of" the Accused Products—██████████████████

█████████████████████████████████████.  Whether features are ███████████ is not the test, and the Bambu Survey is therefore unreliable for patent damages allocation.

### 2.    Mr. Kennedy's 51% Rule of Thumb "Allocation" Fails

The Bambu Survey is the cornerstone of Mr. Kennedy's Income Approach—but he errs in relying upon it to form his opinion.  Stratasys's technical experts Drs. Osswald and Gall have characterized the Asserted Patents as "materially enabling" certain features in the Bambu Survey.  Both opine that "from a technical standpoint," the term "materially enables" indicates that "such a patent accounts for ***a substantial portion of the feature's functionality***, as opposed to a minor or ancillary contribution . . . Where multiple patents materially contribute to a feature, those

2

contributions are roughly equivalent." Ex. 4 ¶ 1826; Ex. 5 ¶ 611.

Based upon these assumption, Mr. Kennedy therefore opines that the combined contributions of the Asserted Patents for each feature are equal to 51% of that feature's value. Ex. 1 ¶ 191. To the extent that multiple Asserted Patents "materially enable" a feature, Mr. Kennedy opines that those contributions are "roughly equivalent and non-overlapping," except in instances involving "related patents." *Id.* ¶ 192. Furthermore, Mr. Kennedy opines that his 51% allocation is conservative because (1) "the patented technologies provide functionality without which the identified features would not operate in their commercially acceptable form," and (2) by "assigning only a bare majority share ensures that substantial value is still attributed to non-patented aspects of the products, including manufacturing quality, branding, and non-asserted features." *Id.* ¶ 191.

This is insufficient. Mr. Kennedy has arbitrarily assigned an allocation percentage based on vague qualitative statements made by Drs. Osswald and Gall to conclude that a 51% allocation is appropriate with Mr. Kennedy picking 51% solely because it's slightly more than half. *Id.* ("I consider it reasonable to assume that the combined contributions of any Patents in Suit to a feature constitute at least half of the value of those features as determined by the aforementioned survey."). The Federal Circuit explicitly rejects this "rule of thumb" approach to damages, untethered to any specific facts of this case. *Uniloc USA, Inc. v Microsoft Corp.*, 532 F.3d 1292 (Fed. Cir. 2011). Notably, Mr. Kennedy's 51% does not come from the Bambu Survey or anything that Drs. Osswald or Gall say. Indeed, Drs. Osswald and Gall do not provide any quantitative assessment or evaluation of the contributions of the Asserted Patents to the Bambu Survey. And during his deposition, Mr. Kennedy admitted (1) that companies other than Stratasys may materially enable 3D printer functionalities, and (2) any other Stratasys patents that "materially enable" one of the features is ***excluded*** from the 51% allocation, including expired foundational patents in 3D printing. Ex. 6 at 52:8–13, 74:6–75:6 (Mr. Kennedy testifying that he "reli[ies] on the other 49 percent to account for expired patents, foundational patents, other Stratasys patents, [and] anything other than the" Asserted Patents). In view of all this, Mr. Kennedy asserts that his allocation is "conservative," but this is misleading, unsupported, and speculative. Accordingly, the Court

3

should strike Mr. Kennedy's opinions related to his 51% allocation, including at least paragraphs 191–196 and Exhibits 8, 10, 12, and 13.

### 3.    Improper Convoyed Sales Apportionment

Mr. Kennedy applies his feature-based apportionment based on the Bambu Survey to revenues of all Accused Products and alleged convoyed sales. Ex. 6 at 137:4–20. But Mr. Kennedy has done no analysis to show (i) the Bambu Survey features apply to non-printer products, or (ii) the results of the Bambu Survey would apply to non-printer products. Indeed, Mr. Kennedy admitted that the Bambu Survey did not address filaments and accessories. *Id.* at 136:23–137:3. As such, Mr. Kennedy's analysis of "apportioned" revenues and gross profits of unaccused products is unsupported, speculative, and the Court should strike all opinions related thereto, including at least paragraph 471 and Exhibits 1A and 2A.

### B.    Mr. Kennedy Inflates the Royalty Based by Improperly Adding Convoyed Sales of Unaccused Products

Mr. Kennedy includes the sales of unaccused products in his royalty base and opines that such sales warrant an "upward adjustment" to the royalty in this case based upon *Georgia-Pacific* Factor 6. However, there are two flaws with Mr. Kennedy's consideration of unaccused products in his damages analysis. First, he fails to adequately explain how these products are "functionally associated" with the Accused Products. Second, he fails to connect such products to customer demand for the patented products. Both flaws independently warrant striking Mr. Kennedy's convoyed sales opinion.

Stratasys has accused 3D printers and certain build plates used with the 3D printers of infringing the Asserted Patents in this case. However, Mr. Kennedy's damages opinion considers not only sales of these Accused Products, but also unaccused products including certain "filaments" and "accessories." Ex. 1 ¶¶ 175–176, 463–471. According to Mr. Kennedy, "[f]ilaments and accessories *represent complementary revenue streams* that are closely tied to the sale of Accused Products." *Id*. ¶ 465. Mr. Kennedy opines that such "items are considered convoyed sales because they work directly with, and are typically purchased in conjunction with,

4

the Accused Products rather than independently." *Id.* Mr. Kennedy further opines that the purported convoyed sales "are not merely associated with the Accused Products but are functionally integrated with them . . . [and] work in concert with the Accused Products to deliver the overall printing capability experienced by the user, forming a cohesive functional unit rather than a collection of unrelated items." *Id.* ¶ 466. Based on these opinions and assumptions, Mr. Kennedy considers (i) "accessory and filament products which include in their name references to accused printer or AMS product series" which he refers to as "Related Accessories" and "Related Filaments" and (ii) "other Accessories and Filaments which do not reference specific products," which he refers to as "General Accessories" and "General Filaments," in his damages analysis as "potential convoyed sales." *Id.* ¶¶ 175, 181.

However, a "convoyed" sale of a non-patented product can be properly considered in a damages opinion only upon satisfying two requirements. *First*, the unaccused product must be "functionally associated" with the accused product—*i.e.*, the unaccused product and accused product must comprise a functional unit. *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008). *Second*, the patented components must be the basis for customer demand for the accused products under the EMVR. *See Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (explaining EMVR "has typically been applied to include in the compensation base unpatented components of a device when the unpatented and patented components are physically part of the same machine."); *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 68–69 (Fed. Cir. 2012) (holding that the plaintiff failed to demonstrate that the patented feature "drove demand" for the accused products because the patented feature "alone" did not motivate consumers to purchase the accused products). Mr. Kennedy fails at both steps.

### 1.    The Accused Products and Unaccused Products Are Not a "Functional Unit"

Mr. Kennedy cannot adequately explain how the accused products and unaccused products are a functional unit. He is not a technical expert and has never used any of the Accused Products nor the unaccused "filaments" and "accessories." Ex. 1 ¶ 84 ("I am not a technical expert."); Ex.

5

6 at 27:20–24 (Mr. Kennedy admitting that he has never used a 3D printer). Mr. Kennedy does not rely upon Stratasys's technical experts to support his opinion. Ex. 1 ¶¶ 463–471. Mr. Kennedy even fails to cite any documents demonstrating that the Accused Products and unaccused products included in his convoyed sales opinion operate as a functional unit. *Id.* At most, Mr. Kennedy identifies three Bambu webpages that do the following: (1) suggest adding unidentified filaments to a purchase (*id.* n.528), (2) indicate that Bambu sells 3D printer filament (*id.* n.531), and (3) indicate that Bambu sells various "accessories" (*id.* n.531). This is insufficient.

Mr. Kennedy's opinion that the Accused Products and the unaccused products are a "functional unit" is not reliable and should be excluded. Mr. Kennedy lacks the expertise to explain the technical functionality of the Accused Products and the unaccused products included in his convoyed sales analysis, and he fails to cite sufficient evidentiary support for this position. While Stratasys will likely argue that the unaccused filaments and accessories are designed to function with Bambu products, Mr. Kennedy admitted that he did not investigate whether third-party replacement components are compatible with the Accused Products. Ex. 6 at 142:7–143:5. Moreover, while Stratasys may argue that these convoyed sales should be included because Bambu may advertise the Accused Products and unaccused products together, the Federal Circuit has expressly rejected such an argument. *Am. Seating Co.*, 514 F.3d at 1268 ("A functional relationship does not exist when independently operating patented and unpatented products are purchased as a package solely because of customer demand."). Accordingly, Mr. Kennedy lacks an adequate foundation to offer an opinion on convoyed sales.

### 2. The Patented Features Do Not Drive Demand for the Accused Products

Mr. Kennedy has not claimed (or provided evidence to support) that one or more of the Asserted Patents' claimed inventions forms the basis of customer demand for the Accused Products. Instead, Mr. Kennedy claims that the Asserted Patents "materially enable" certain features. Ex. 1 ¶¶ 132–146; *see supra* § II.A.2. But even if the Asserted Patents "materially enable" certain features, Mr. Kennedy fails to show that those features drive customer demand.

██████████████████████████████████████

Furthermore, it is unclear how the Asserted Patents (individually or collectively) could form the basis for customer demand because none of the Asserted Patents are "foundational" to the 3D printing technology at issue in this case. ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

Accordingly, Mr. Kennedy has failed to demonstrate that the EMVR applies in this case. His consideration of convoyed sales is flawed and inappropriate from an economic perspective. Indeed, Mr. Kennedy's evaluation of royalty damages associated with Bambu's sales of non-patented products is in direct contradiction with "the general rule that a patentee seeking damages based on an infringing product with both patented and unpatented features must 'apportion damages only to the patented features.'" *Power Integrations*, 904 F.3d at 970 (quoting *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014)).

Stratasys may argue that Mr. Kennedy addresses this by applying "Share of Feature Allocated to Patent" percentages based upon the Bambu Survey to Bambu's filament and accessories profits, thereby providing an apportionment to the convoyed sales under his Income Approach—but this argument is flawed for three critical reasons. ***First***, the Bambu Survey ████ ████████████████████████████████████████—it does not ask anything about filament and accessories-related features and attributes. Ex. 2 (rows 34–41). Consequently, in addition to other flaws associated with Mr. Kennedy's reliance on the Bambu Survey (discussed *infra*, § II.B.2), Mr. Kennedy has failed to demonstrate that his "share[s] of Bambu Purchasers Who Most Valued Feature" applies to Bambu's sales of filaments and accessories. *See* Ex. 8. ***Second***, Mr. Kennedy fails to explain how his "Share of Feature Allocated to Patent" percentages are relevant to products that are not accused of infringing the Asserted Patents (*i.e.*, filaments and accessories). ***Third***, it is not plausible that an Asserted Patent drives demand for a product when Mr. Kennedy himself opines that no single patent accounts for even 10% of the product's value. *See* Ex. 8 ("Share of Feature Allocated to Patent" "Total" column). As a result, his calculation of

Bambu's convoyed sales associated with filaments and accessories is significantly flawed, does not result in a reliable apportionment to the Asserted Patents, and improperly attributes value to the Asserted Patents for non-patented product sales included in his royalty base.

Furthermore, Mr. Kennedy relies on the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ under his "Market Approach." Ex. 1 ¶¶ 152–155, 292. The royalty rate under that agreement would only be applicable to licensed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮—not to convoyed sales of accessories and filaments not utilizing or practicing the Licensed IP. Ex. 9 at -770. To the extent Stratasys anticipated that sales of licensed products would result in convoyed sales by the licensee that would not be subject to the royalty, this additional value would have been included in the royalty rate Stratasys selected. Mr. Kennedy's application of the royalty rate from the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to the Accused Products **and** convoyed sales is effectively double-counting that value.

Both of these errors independently merit striking Mr. Kennedy's report concerning convoyed sales, including at least paragraphs 175–188 (to the extent they refer to "Related Accessories," "Related Filaments," "General Accessories and Filaments," and non-accused AMS), 463–471, and any exhibits to Mr. Kennedy's report relying upon convoyed sales.

### C. Mr. Kennedy Fails to Reasonably Approximate or Otherwise Consider the Extent of Use of the Claimed Methods

For the '357, '713, and '698 Patents, Stratasys only asserts method claims. However, Mr. Kennedy fails to account for the extent to which Bambu allegedly *uses* those asserted method claims. In fact, Mr. Kennedy testified that he did not even consider that the '357, '713, and '698 Patents only have method claims at issue. Ex. 6 at 221:24–222:9. Therefore, Mr. Kennedy's opinions with respect to the '357, '713, and '698 Patents should be struck.

#### 1. The Federal Circuit and This Court Have Required Quantifying the Extent of Use of Method Claims

"A method claim is directly infringed only by one practicing the patented method." *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1359 (Fed. Cir. 2009) (quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993)). This Court has recognized this

8

fundamental tenet of patent law.  *Infernal Tech., LLC v. Sony Interactive Ent., LLC*, 19-cv-00248-JRG, Dkt. No. 281 at 4 (E.D. Tex. Feb. 26, 2021) ("Sale of an apparatus is not an infringement of a method claim merely because the apparatus is capable of performing the claimed method steps.").

The Federal Circuit has thus repeatedly held that, where the asserted claim is a method claim, a patentee's "damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009) (vacating damages award because plaintiff failed to "prove that the extent to which the infringing method has been used supports" it).  Indeed, the Federal Circuit recently reinforced that damages must be limited to "a reasonable approximation of actual infringing uses of the claimed method." *Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022); *see also Ecolab Inc. v. Dubois Chems., Inc*., No. 21-567-RGA, 2023 WL 7019266, at *13 (D. Del. Oct. 25, 2023) (noting *Lucent* and *Niazi* are "consistent" on this issue).  It also made clear that "patentees cannot recover damages based on sales of products with the mere capability to practice the claimed method." *Niazi*, 30 F.4th at 1357.

Considering these principles, this Court has excluded expert opinions that fail to consider the extent of use of the allegedly infringing methods.  *See, e.g.*, *Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-cv-123-JRG, 2020 WL 5815950, at *2-3 (E.D. Tex. Sept. 30, 2020) ("Since testing was the only pre-suit direct infringement theory proffered by Plaintiff, any pre-suit damages from direct infringement [of the asserted methods] must consequently . . . be tied to such testing.").

### 2. Mr. Kennedy Fails to Consider Extent of Use

Here, Stratasys asserts method claims from the '357, '713, and '698 Patents.[1]  Ex.  10 (electing method claims for the '357, '713, and '698 Patents). However, Mr. Kennedy fails to evaluate the alleged use of these asserted claims, evaluate the impact of this consideration on his royalty damages conclusions, or even ***consider*** the nature of such claims.  Ex. 6 at 221:24–222:9.

---

[1] Stratasys also asserts certain method claims from the '324, '464, and '466 Patents.  However, Stratasys also asserts non-method claims from these patents.  If Stratasys drops the non-method claims, Bambu requests that the Court preclude Mr. Kennedy from offering a damages opinion with respect to asserted method claims from the '324, '464, and '466 Patents.

**'357 Patent**.  The asserted claims of the '357 Patent are method claims requiring the use of Bambu Studio software in order to allegedly infringe.  Specifically, the Accused Products could be operated using a third-party slicer software (other than Bambu Studio) and such use would be non-infringing.  Based on a January 2025 All3DP poll of 1,366 Bambu customers, 70.1% of respondents indicated the use of third-party slicers regularly or sometimes with their Bambu printer. Ex. 11 (adding "Yes" and "Sometimes").  While All3DP states that this "wasn't the most scientific polling" (*id.*), this poll demonstrates that a significant portion of Bambu customers use third-party slicers at least part of the time.  By failing to limit the royalty base to the share of Bambu customers who used Bambu slicer software, Mr. Kennedy has significantly overstated the royalty base of Accused Product revenues associated with the '357 Patent.  To the extent Mr. Kennedy contends that the share of customers is indeterminable, Stratasys' damages case is fatally flawed given that they bear the burden to prove damages.  At minimum, Mr. Kennedy fails to acknowledge that this consideration would have downward influence on the to-be-agreed upon royalty rate.

**'713 Patent**.  The asserted claims of the '713 Patent recite methods to print purge towers with an additive manufacturing system.  For there to be infringement, five conditions must be met: (1) the user uses Bambu Studio, Bambu's printer, and the AMS together; (2) the user decides to print a 3D model that requires a support structure; (3) the user selects a dedicated support material to print the support structure; (4) the user modifies the filament for support to be the dedicated support structure; and (5) the user enables the prime tower feature.  Ex. 4 ¶ 102 (acknowledging that accused systems must include both Bambu Studio and AMS); *id.* ¶ 410 (acknowledging that the claimed method requires use of dedicated support material to print the support structure, and that not all prints require support structures); Ex. 12 ¶¶ 249, 261 (stating that the Accused Products "rarely" infringe the asserted method claims).  While Mr. Kennedy purports to only include Accused Products that would have been used with an AMS system, he has not considered the possibility that customers might use third-party slicer software, print 3D models that do not require support structures, print 3D model support structures without using dedicated support material, or

10

disable the prime tower feature in his analysis or apportioned his royalty base to account for this issue. To the extent Mr. Kennedy contends that the share of customers who made any of the choices above is indeterminable, he further fails to acknowledge that this consideration would have downward influence on the to-be-agreed upon royalty rate.

*'698 Patent*. The asserted claims of the '698 Patent are method claims and Stratasys alleges that Bambu infringes by using three features: (i) build-plate detection, (ii) bed leveling, and (iii) clump detection. *See, e.g.*, Ex. 4 ¶¶ 1089, 1145, 1151, 1156, 1242. While an Accused Product may perform one or more of these accused features, it does not necessarily need to perform such features for every print. Each of the three features is optional and can be turned off before printing. *See id.* ¶ 1453 ("Bambu Studio, in turn, includes features such as enabling leveling and nozzle clump detection."); *id.* ¶¶ 1148, 1151, 1241, 1351, 1356, 1090–1096, 1361, 1119–1120. Additionally, the Accused H2 series and P2 series Products perform the clump detection feature in two different ways, one of which is not accused of infringing the '698 Patent, and the other of which is only used at high temperatures (and must be turned on). *Id.* ¶¶ 1351, 1356, 1361. Stratasys's technical expert Dr. Osswald does not address how often the allegedly infringing clump detection method occurs. Mr. Kennedy's failure to even attempt to quantify the extent of use of the allegedly infringing features renders his opinion unreliable.

Because Mr. Kennedy fails to account for the alleged extent of use of the asserted method claims of the '357, '713, and '698 Patents, the Court should strike all opinions related thereto.

### D. Mr. Kennedy Improperly Invites the Jury to Award Future Damages

Mr. Kennedy opines that Bambu and Stratasys "would be open" to structuring a running royalty license, and, more importantly, he specifically argues that the parties to the hypothetical negotiation would not have accepted a lump sum. Ex. 1 ¶ 448. However, Mr. Kennedy's damages calculations include royalties for alleged *future* infringement. Ex. 13 (Mr. Kennedy claiming damages from trial through patent expiration that account for 69.5% to 84.6% of his total damages opinions). Indeed, Mr. Kennedy introduces specific calculations that he labels a "running royalty through the date of patent expiration," which is purely future damages. Many of the Asserted

Patents have lives extending far beyond the scheduled trial date.  Mr. Kennedy projects Bambu sales out *nine* years into the future, and then uses a discount rate to calculate the present value of those future damages on the date of the hypothetical negotiation.  This is a "future damages lump sum" calculation, plain and simple, and Mr. Kennedy conceded as much in his deposition.  Ex. 6 at 223:22–224:9 (testifying that he discounted "back to a lump sum").

Mr. Kennedy's approach is not authorized by statute.  Under the Patent Act, "the court shall award the claimant damages adequate to compensate for *the infringement*."  35 U.S.C. § 284.  On its face, this statute does not apply to infringement that has not happened yet and may never happen.  *See In re Apotex, Inc.*, 49 F. App'x 902, 903 (Fed. Cir. 2002) (finding that "there can be no damages" in a case "involving only possible future infringement").  Moreover, Mr. Kennedy "appears to conflate [lump sum and running royalties] by calculating a 'lump sum' that applies a per-unit royalty rate to all accused devices that have been *and may still be* delivered." *Sci. Applications Int'l Corp. v. U.S.*, 169 Fed. Cl. 346, 368 (2024) (emphasis original).  However, "the proper course of action to address future infringement is to address it *after* infringement has actually occurred."  *Id*. (emphasis original).  To allow future damages would be speculative and prejudicial—indeed, the PTAB has instituted IPRs against most of the Asserted Patents and may invalidate most asserted claims; not to mention that Bambu may cease selling one or more of the Accused Products or change designs to remove any functionality found to infringe.  Indeed, for all of the reasons that Mr. Kennedy himself says that lump sums are too speculative given the posture of the parties to the hypothetical negotiation, so too are future royalties based on projected sales of products that do not even exist yet so too are post-trial royalties too speculative to submit to a jury. The Court should exclude Mr. Kennedy's opinion that Stratasys is entitled to a "running royalty" discounted to the hypothetical negotiation.

III.    CONCLUSION

Bambu requests that the Court strike Mr. Kennedy's opinion as provided above.

Dated:  March 2, 2026

Respectfully submitted,

*/s/ Michael A. Vincent*
Gregory P. Love (TX 24013060)
greg@stecklerlaw.com
STECKLER WAYNE & LOVE
107 E Main Street
Henderson, TX 75652
Tel: (903) 212-4444

Carl E. Bruce (TX 24036278)
bruce@fr.com
Thomas H. Reger, II (TX 24032992)
reger@fr.com
Aaron P. Pirouznia (TX 24098958)
pirouznia@fr.com
Michael A. Vincent (TX 24105738)
vincent@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070

David M. Barkan (CA 160825)
barkan@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070

Brendan F. McLaughlin (DC 1671658)
bmclaughlin@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W.
Washington, DC 20024
Tel: (202) 783-5070

Attorneys for Defendants
SHENZHEN TUOZHU TECHNOLOGY CO.,
LTD., SHANGHAI LUNKUO
TECHNOLOGY CO., LTD., BAMBULAB
LIMITED, TUOZHU TECHNOLOGY
LIMITED, AND BAMBULAB USA, INC.

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on March 2, 2026, to all counsel of record via electronic mail.

*/s/ Michael A. Vincent*
Michael A. Vincent

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred telephonically on March 2, 2026. Kevin Meek and Christian Tatum attended for Plaintiff. Carl Bruce, Michael Vincent, Brendan McLaughlin, and Brandon Avers attended for Defendants. The parties discussed their positions on this motion. The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve. Counsel for Plaintiff indicated that they oppose this motion.

*/s/ Michael A. Vincent*
Michael A. Vincent

14