IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| STRATASYS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHENZHEN TUOZHU TECHNOLOGY CO., LTD., SHANGHAI LUNKUO TECHNOLOGY CO., LTD., BAMBU LAB LIMITED, AND TUOZHU TECHNOLOGY LIMITED, <br><br> Defendants. | Civil Action No. 2:24-cv-00644-JRG <br> LEAD CASE <br><br> Civil Action No. 2:24-cv-00645-JRG <br> MEMBER CASE <br><br> JURY TRIAL DEMANDED |
| BAMBULAB USA, INC., SHENZHEN TUOZHU TECHNOLOGY CO., LTD., SHANGHAI LUNKUO TECHNOLOGY CO., LTD., BAMBULAB LIMITED, AND TUOZHU TECHNOLOGY LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> STRATASYS, INC., <br><br> Defendant. | Civil Action No. 2:25-cv-00465-JRG <br> MEMBER CASE <br><br> JURY TRIAL DEMANDED |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO
STRIKE THE EXPERT TESTIMONY OF DAVID KENNEDY**

## TABLE OF CONTENTS

I.    Mr. Kennedy's Apportionment Is Legally Improper ................................................................. 1

II.   Mr. Kennedy Cannot Include Convoyed Sales In His Analysis .............................................. 2

III. Mr. Kennedy Fails to Account for Extent of Use .................................................................... 3

IV. Mr. Kennedy Admitted that His Ultimate Conclusion Is a Lump Sum While Still Opining that the Parties Would Have Agreed to a Running Royalty ........................................................ 5

████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agilent Techs., Inc. v. Axion Biosystems, Inc.*,
    No. 23-198-CJB, Dkt. No. 550 (D. Del. Mar. 19, 2026) .............................................................4

*G+ Commc'ns, LLC v. Samsung Elecs. Co. Ltd.*,
    No. 2:22-cv-78-JRG, 2024 WL 896343 (E.D. Tex. Mar. 1, 2024).............................................5

*Masimo Corp. v. Apple Inc.*,
    No. 8:20-cv-48-JVS-JDE, 2025 WL 3190897 (C.D. Cal. Oct. 17, 2025) ..................................4

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
    No. 6:11-cv-492-RWS-KNM, 2017 WL 4020591 (E.D. Tex. Sept. 13, 2017)..........................2

*Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*,
    30 F.4th 1339 (Fed. Cir. 2022) ...........................................................................................4, 5

*PACT XPP Techs., AG v. Xilinx, Inc.*,
    No. 2:07–cv–563–RSP, 2012 WL 1666390 (E.D. Tex. May 11, 2012)....................................1

*Paltalk Holdings, Inc. v. Cisco Sys., Inc.*,
    No. W-21-cv-757-ADA, 2025 WL 2581690 (W.D. Tex. Aug. 27, 2025) .................................4

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)...............................................................................................2

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 14 | Excerpts of the Deposition Transcript of Mr. David Kennedy (Feb. 26, 2026) |
| 15 | *Agilent Techs., Inc. v. Axion Biosystems, Inc.*, No. 23-198-CJB, Dkt. No. 550 (D. Del. Mar. 19, 2026) |
| 16 | Excerpts of the Opening Expert Report of Mr. David Kennedy (Jan. 20, 2026) |

████████████████████████

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Accused Products | Bambu's 3D Printers, Software, and Certain Build Plates |
| AMS | Automatic Material Systems |
| Asserted Patents | The '381, '466, '464, '774, '357, '324, '097, '698, '713, and '660 Patents |
| Bambu | Defendants Shenzhen Tuozhu Technology Co., Ltd.; Shanghai Lunkuo Technology Co., Ltd.; Bambu Lab Limited; Tuozhu Technology Limited; and Plaintiff BambuLab USA, Inc. (Case No. 2:25-cv-00465-JRG) |
| Bambu Survey | Why Choose Bambu Survey (BAMBU-00361423) |
| EMVR | Entire Market Value Rule |
| IPR | *Inter Partes* Review |
| PTAB | Patent Trial and Appeal Board |
| '381 Patent | U.S. Patent No. 10,556,381 |
| '466 Patent | U.S. Patent No. 10,569,466 |
| '464 Patent | U.S. Patent No. 11,167,464 |
| '774 Patent | U.S. Patent No. 11,886,774 |
| '357 Patent | U.S. Patent No. 7,555,357 |
| '324 Patent | U.S. Patent No. 8,562,324 |
| '097 Patent | U.S. Patent No. 8,747,097 |
| '698 Patent | U.S. Patent No. 9,168,698 |
| '713 Patent | U.S. Patent No. 9,421,713 |
| '660 Patent | U.S. Patent No. 9,592,660 |

██████████████████████████████

## I.    Mr. Kennedy's Apportionment Is Legally Improper

***The Bambu Survey is not reliable for apportionment.*** The Bambu Survey question used by Mr. Kennedy does not address "the value that the infringing features contribute to the value of an accused product," but rather ████████████████████████████████ ███████████. *Id*. at 2.   Whether features ███████████ these respondents is not the test for apportionment.  In fact, the same survey also asked respondents████████████████████████ ███████ Dkt. 190-2, but Mr. Kennedy ignored the results of that question entirely.

The Opposition fails to rebut this conclusion.  The Court should reject Stratasys's first argument that Bambu "cannot disown its own survey" because that is a strawman.  Dkt. 235 at 1–2.  Bambu has never attempted to "disown" the Bambu Survey—instead, Bambu has consistently argued that whether features ██████████ respondents is an improper metric for apportionment.[1] Dkt. 190 at 2.  Mses. Kindler and Milsark rely upon the Bambu Survey, but they do not rely upon the question concerning which features ██████████ respondents the most—especially not to derive the correct apportionment.  Dkt. 235-2 ¶ 139.f; Dkt. 235-3 ¶ 27.  Rather, Ms. Kindler relied on the survey to identify other 3D printer brands that Bambu Lab's customers were also considering, and Ms. Milsark used the Bambu Survey to explain that there were other purchase drivers that Mr. Kennedy chose not to acknowledge.  Stratasys's argument regarding the limited feature set in the survey is exactly the point (Dkt. 235 at 2): the survey question about what ██████████ respondents does not capture salient features that might influence a customer's purchase decision.

***Mr. Kennedy improperly applies a 51 percent rule of thumb.*** Mr. Kennedy selected a 51 percent allocation solely because he believed that "the combined contributions of any Patents in

---

[1] Stratasys is wrong that *PACT* applies because there, the Court did not substantively address the survey; it merely noted that plaintiff "contends that [its apportionment] figure is derived from [defendant's] customer surveys."  *PACT XPP Techs., AG v. Xilinx, Inc.*, No. 2:07–cv–563–RSP, 2012 WL 1666390, at *1 (E.D. Tex. May 11, 2012).

Suit to a feature constitute at least half of the value of those features."  Dkt. 190-1 ¶ 191. Mr. Kennedy found this appropriate because Stratasys's technical experts characterize the Asserted Patents as "materially enabling" the features in the Bambu Survey and he "assume[d] that the combined contributions of any Patents in Suit to a feature *constitute at least half* of the value of those features."  *Id*.  Notably, Mr. Kennedy never asked the technical experts to consider whether other unasserted Stratasys patents, expired Stratasys patents, or patents of third parties might also contribute to the very same features, an analysis that would dramatically impact the "at least half" conclusion.  Ex. 14 at 52:14–53:6, 56:17–57:19.

The Opposition cannot cite a paragraph from Mr. Kennedy's report or the technical experts' reports that articulate how "materially enabling" translates to a 51 percent allocation. Mr. Kennedy simply decided that "materially enabling" patents are arbitrarily worth 51 percent of a "feature's value," while he crams "non-patented aspects of the products, including manufacturing quality, branding, and non-asserted features" into the remaining 49 percent.  Dkt. 190-1 ¶ 191. Mr. Kennedy's allocation is not tied "to the facts of the case at issue."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).[2]

## II.    Mr. Kennedy Cannot Include Convoyed Sales In His Analysis

***The EMVR applies.***  As Bambu explains in the Motion, the EMVR applies to the alleged convoyed sales because Stratasys has failed to show a connection between the accused features and the filaments and accessories that make up the convoyed sales.  Dkt. 190 at 6–8.  The Opposition attempts to avoid this critical flaw by identifying portions of Mr. Kennedy's report where he purportedly discusses how "increase [in] usage intensity and frequency" of the Accused

---

[2] Stratasys's reliance upon *Network-1* should be rejected because there, the Court ruled on a *Daubert* motion to exclude a ***technical*** expert's testimony regarding an allocation; not a damages expert.  *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492-RWS-KNM, 2017 WL 4020591, at *6 n.5 (E.D. Tex. Sept. 13, 2017).

Products leads to "increase[d] filament and accessory purchases." Dkt. 235 at 6. But Mr. Kennedy has supplied *no* data to back up these assumptions. Dkt. 235-4 ¶ 467. Far from being based on any facts in this case, Mr. Kennedy speculates that the Bambu Survey features *may* drive more printer sales which *may* drive more sales of filaments or accessories. Mr. Kennedy cites no evidence to support his speculation, which distinguishes this case from *Genuine Enabling Technology v. Sony Corporation*, where the expert considered additional facts to reach his conclusion. No. 17-cv-135, 2022 WL 17325656, at *17 (D. Del. Nov. 28, 2022).

*The Bambu Survey and 3D Bidco License Agreement do not apply to convoyed sales.* Far from "coherent," Stratasys struggles to make sense of Mr. Kennedy's opinion that respondents ▆▆▆▆▆ with, for example, ▆▆▆▆▆▆▆▆▆ (Dkt. 190-2), creates more sales of printer filament or printer accessories. Mr. Kennedy fails to cite any evidence supporting his opinion that such features have *any* bearing on filament or accessory sales.

Stratasys's attempt to rely upon the 3D Bidco License Agreement does not fare any better. While Stratasys argues that "Bambu offers no evidence that the parties to the 3D Bidco agreement quantified or embedded the value of downstream sales into the rate," this argument ignores the 3D Bidco License Agreement's express language: the rate applies to licensed "products and/or services that utilize or otherwise practice the Licensed IP." Dkt. 190-9 at -770.

## III.    Mr. Kennedy Fails to Account for Extent of Use

The Motion explains at length how Mr. Kennedy fails to consider the extent of use of the '357, '713, and '698 Patents' asserted method claims. Dkt. 190 at 8–11. For each of these patents, users are not required to use the allegedly infringing features. Mr. Kennedy admitted that he did not even consider that the '357, '713, and '698 Patents' only asserted claims are method claims (Dkt. 190-6 at 221:24–222:9), much less address the extent of their use in his report.

3

Stratasys seems to agree: In its Opposition, Stratasys implicitly admits that the accused features are optional by arguing that the accused features are enabled by "default." Dkt. 235 at 8–11; *id.* at 9 (admitting that the allegedly infringing feature for the '357 Patent is only "sometimes used"); *id.* at 10 (admitting that there is a "reasonable inference for damages that a substantial portion of the accused systems are used in that default" for the '713 Patent, but not **all** uses); *id.* at 10–11 (admitting that the allegedly infringing mode is only used for printing at "high temperatures" for the '698 Patent). It is undisputed that "not all of [the accused products] had been used to practice the claimed method," as the default configurations may be turned off and not used at all. *Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022). Stratasys also does not dispute that the alternative configurations discussed in the Motion are non-infringing. Therefore, there are non-infringing uses of the Accused Products that Mr. Kennedy fails to consider. Courts regularly strike damages expert opinions that do "not address or rely on any evidence that estimated use of the" accused features. *Paltalk Holdings, Inc. v. Cisco Sys., Inc.*, No. W-21-cv-757-ADA, 2025 WL 2581690, at *10 (W.D. Tex. Aug. 27, 2025) ("[A] reasonable royalty for a method claim must be tied to the alleged infringer's *use* of the method, not merely to its sale of products capable of practicing the claimed method."); *see also Masimo Corp. v. Apple Inc.*, No. 8:20-cv-48-JVS-JDE, 2025 WL 3190897, at *12–13 (C.D. Cal. Oct. 17, 2025) (striking expert report "for failure to apportion out non-infringing uses"); *Agilent Techs., Inc. v. Axion Biosystems, Inc.*, No. 23-198-CJB, Dkt. No. 550, at *3 (D. Del. Mar. 19, 2026) (striking expert report where "Plaintiff points to nothing in the record that speaks to the amount of accused products that were actually used to perform the method claimed") (attached as Ex. 15).

Contrary to Stratasys's argument, this is not Bambu quibbling about "a rigid tally of end-user activations for default-enabled features." Dkt. 235 at 8. The issue is that Mr. Kennedy did

4

*nothing* to address the extent of use in his report—he simply assumed that "default" settings are used *all the time*.[3] But as the Motion explains, that is not true. Perhaps most notably, Stratasys does even discuss *Niazi*, where the Federal Circuit was clear: an expert's "failure to account for noninfringing uses of the sold devices [is] legally improper." 30 F.4th at 1357. The Court should strike Mr. Kennedy's opinion regarding the '357, '713, and '698 Patents.

### IV.     Mr. Kennedy Admitted that His Ultimate Conclusion Is a Lump Sum While Still Opining that the Parties Would Have Agreed to a Running Royalty

Mr. Kennedy opines that Bambu and Stratasys "would be open to" a running royalty structure. Dkt. 190-1 ¶ 448. He further opines that "a running royalty structure can be economically preferable to a lump-sum payment" for Bambu. *Id*. But Mr. Kennedy confuses the theories, as he actually calculates both a running royalty and a lump sum, which indicates he may encourage the jury to check the "reasonable royalty" box on the verdict form while awarding an amount that Mr. Kennedy testified was actually a lump sum.

This is not the common situation of a damages expert offering alternative measures of damages. Mr. Kennedy's report confines him to opining that the hypothetical negotiation would have resulted in a reasonable royalty. Ex. 16 ¶ 35 ("The appropriate form of damages in this matter is a reasonable royalty."). It would be improper for Mr. Kennedy to offer this opinion to the jury and then to present two complicated sets of spreadsheets—one of which is based on a reasonable royalty and the other which is indisputably (by his own admission) a lump sum. *See G+ Commc'ns, LLC v. Samsung Elecs. Co. Ltd.*, No. 2:22-cv-78-JRG, 2024 WL 896343, at *1 (E.D. Tex. Mar. 1, 2024) (ordering new trial where "the jury may have awarded damages in the form of a running royalty when it intended to award them as a lump sum").

---

[3] Bambu does not dispute that its customers may use default settings—Bambu's argument does not "rest[] on an unsupported leap from 'sometimes used' to 'never used.'" Dkt. 316 at 9. The point is Mr. Kennedy was required to do *something* to address the extent of use, but he did *nothing*.

5

███████████████████████████████

Dated:  March 24, 2026

Respectfully submitted,

*/s/ Michael A. Vincent*
Gregory P. Love (TX 24013060)
greg@stecklerlaw.com
STECKLER WAYNE & LOVE
107 E Main Street
Henderson, TX 75652
Tel: (903) 212-4444

Carl E. Bruce (TX 24036278)
bruce@fr.com
Thomas H. Reger, II (TX 24032992)
reger@fr.com
Aaron P. Pirouznia (TX 24098958)
pirouznia@fr.com
Michael A. Vincent (TX 24105738)
vincent@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070

David M. Barkan (CA 160825)
barkan@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070

Brendan F. McLaughlin (DC 1671658)
bmclaughlin@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W.
Washington, DC 20024
Tel: (202) 783-5070

Attorneys for Defendants
SHENZHEN TUOZHU TECHNOLOGY CO.,
LTD., SHANGHAI LUNKUO
TECHNOLOGY CO., LTD., BAMBULAB
LIMITED, TUOZHU TECHNOLOGY
LIMITED, AND BAMBULAB USA, INC.

6

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on March 24, 2026, to all counsel of record via electronic mail.

/s/ *Michael A. Vincent*
Michael A. Vincent