**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| Stratasys, Inc., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:24-cv-00644-JRG |
| Shenzhen Tuozhu Technology Co., Ltd., *et al.*, | § | (Lead Case) |
| | § | |
| | § | |
| *Defendants*. | § | |

| | | |
|---|---|---|
| Stratasys, Inc., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:24-cv-00645-JRG |
| | § | (Member Case) |
| Shenzhen Tuozhu Technology Co., Ltd., *et al.*, | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

| | | |
|---|---|---|
| BambuLab USA, Inc., *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 2:25-cv-00465-JRG |
| | § | (Member Case) |
| Stratasys, Inc. | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**PLAINTIFF'S CONSOLIDATED SUR-REPLY TO BAMBU'S MOTIONS TO STRIKE
EXPERT OPINIONS OF DAVID KENNEDY (DKT. NO. 190), DR. TIM OSSWALD
(DKT. NO. 192), AND DR. KEN GALL (DKT. NO. 186)**

**TABLE OF CONTENTS**

I.    BAMBU'S CHALLENGE TO MR. KENNEDY'S ANALYSIS IS MERITLESS..........................1

    A.    ████████████████████████████████████████ .................................................1

    B.    The 51% Allocation Is Not An Impermissible Rule Of Thumb ...............................................2

    C.    Bambu's Convoyed-Sales Attack Fails ...........................................................................3

    D.    Mr. Kennedy Reasonably Addressed Method-Claim Use ....................................................3

    E.    Mr. Kennedy Properly Presents Alternative Royalty Structures................................................5

II.    BAMBU'S CHALLENGES TO DRS. OSSWALD AND GALL ARE MERITLESS...................6

    A.    Drs. Osswald And Gall Do Not Improperly Opine On State Of Mind.......................................6

    B.    ████████████████████████████████████████ .....................................7

    C.    Dr. Osswald Does Not Advance A New "Clog Detection" Theory............................................8

    D.    Dr. Gall Does Not Advance A New Theory As To Bambu Handy .............................................9

    E.    Dr. Gall Appropriately Responded To Bambu's Non-Infringement Position.........................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co., LTD.*,
    684 F. Supp. 3d 570 (E.D. Tex. 2023) ...................................................................................6

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
    1 F. App'x 879 (Fed. Cir. 2001) ...........................................................................................4

*GREE, Inc. v. Supercell Oy*,
    No. 2:19-CV-00070-JRG-RSP, 2020 WL 4288350 (E.D. Tex. July 27, 2020) ...........................6

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) .........................................................................................4, 5

*ROYG-BIV Corp. v. ABB, Ltd.*,
    63 F. Supp. 3d 690 (E.D. Tex. 2014) ...................................................................................9

*Sol IP, LLC v. AT&T Mobility LLC*,
    No. 2:18-CV-00526-RWS-RSP, 2020 WL 10045985 (E.D. Tex. Apr. 23, 2020) ......................9

*Spreadsheet Automation Corp. v. Microsoft Corp.*,
    587 F. Supp. 2d 794 (E.D. Tex. 2007) .................................................................................6

**Other Authorities**

Rule 56 ...................................................................................................................................6

Rule 702 .............................................................................................................................1, 8, 9

## I.    BAMBU'S CHALLENGE TO MR. KENNEDY'S ANALYSIS IS MERITLESS

Bambu's reply simply repackages merits disputes as Rule 702 objections. Mr. Kennedy relied ██████████████, *Bambu's own* marketing and product materials, *Bambu's own* projected sales, and unchallenged technical opinions tying the asserted patents to customer-valued features. There is nothing more relevant than *Bambu's own documents* about its *own* systems.

### A.    ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

1

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

**B.      The 51% Allocation Is Not An Impermissible Rule Of Thumb**

Bambu next attacks Mr. Kennedy's 51% allocation as if it were a generic shortcut divorced from the record. It is not. Mr. Kennedy did not apply an off-the-shelf percentage across unrelated cases. He started with case-specific technical opinions from Drs. Osswald and Gall that the asserted patents "materially enable" customer-valued features, meaning they provide substantial, essential functionality rather than an ancillary contribution. ███████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ From that technical premise, Mr. Kennedy adopted a conservative economic allocation that attributes only a bare majority of feature value to the materially enabling asserted patents, while leaving the remainder to branding, manufacturing quality, non-asserted features, expired patents, and everything else. That is a case-specific conservative judgment grounded in technical testimony, not the kind of abstract, untethered shortcut rejected in *Uniloc*.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

2

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

### C.    Bambu's Convoyed-Sales Attack Fails

Bambu's convoyed-sales argument also ignores Mr. Kennedy's actual analysis. He did not merely assume that filament and accessories ride along with printer sales. ████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████ That is a reasoned economic explanation of convoyed sales, not speculation.

Bambu's reply also fails to show any basis to exclude Mr. Kennedy's convoyed-sales analysis. Mr. Kennedy did not simply assume that every downstream sale belongs in the royalty base. He explained that Bambu markets its printers, AMS units, filaments, and accessories as an integrated ecosystem, and that improved reliability, automation, and print success increase printer usage and thus increase purchases of filaments and accessories used with those printers. That is an economic theory supported by record evidence. Bambu says this is speculative because Mr. Kennedy did not produce separate data quantifying each step in the chain. *Daubert* requires a reliable methodology tied to the facts of the case. Here, Mr. Kennedy explained in detail that the relevant products are sold as part of the same printer ecosystem, and explained the causal relationship between patented printer functionality and downstream consumable purchases. Bambu's disagreement goes to weight. ████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

### D.    Mr. Kennedy Reasonably Addressed Method-Claim Use

Bambu's method-claim argument overreaches. *Niazi* does not require a damages expert to

produce a user-by-user tally of every activation of every accused method step. It requires a reasonable approximation tied to actual infringing use. That is precisely what Mr. Kennedy provided.

The Federal Circuit has squarely rejected Bambu's argument because it has "never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence," and such a requirement would create a hypothetical negotiation "far-removed from what parties regularly do during real-world licensing negotiations." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009). Indeed, "the amount paid for a particular technology is *not necessarily limited* to the number of times a patented feature is used by a consumer." *Id.* (emphasis added). The law permits reasonable approximations grounded in how products are used, not artificial accounting exercises divorced from reality. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 1 F. App'x 879, 884 (Fed. Cir. 2001) (plaintiffs asserting method claims need not "demonstrate a one-to-one correspondence between units sold and directly infringing customers").

Courts applying *Lucent* have similarly rejected the very argument Bambu advances here. In *IPA Technologies Inc. v. Microsoft Corp.*, defendants raised the exact same challenge to Mr. Kennedy's damages model that Bambu raises here. There, defendants argued that Mr. Kennedy's damages model was improper because it was not tied to precise end-user usage of the accused method. The court disagreed, holding that "Mr. Kennedy was *not* required to base his damages theory on actual customer usage," and that a royalty based on product sales was a "reasonable way of measuring" the impact of the accused functionality. No. CV 18-1-RGA, 2024 WL 1797394, at *18 (D. Del. Apr. 25, 2024) (citing *Lucent v. Gateway*). The court emphasized that *Lucent* does not impose a strict usage requirement and instead recognizes flexibility in how damages may be reasonably approximated. *Id.*

That is exactly what Mr. Kennedy did here. For the '357, '713, and '698 Patents, Mr. Kennedy relied on record evidence showing that the accused functionality is enabled by *default factory settings* and used during the ordinary operation of the accused products. Bambu's reply effectively concedes that

point by repeatedly emphasizing that these features are on by "default." Dkt. 261 at 4. Default-enabled, ordinary-use functionality is strong evidence that the patented methods are used with every device sold by Bambu, particularly where Bambu markets those same features as core capabilities. If Bambu believes that users later switch the printer settings to some non-infringing setting, then Bambu must produce such evidence—but it has none.[1] Bambu's argument asks the Court to ignore how the products actually function in the real world. Mr. Kennedy grounded his analysis in record evidence of default-enabled operation and ordinary product use, which is far more probative of real-world method usage than the speculative, unsupported assumptions Bambu proposes. Bambu's criticisms go, at most, to weight.

### E.    Mr. Kennedy Properly Presents Alternative Royalty Structures

Finally, Bambu's attempt to exclude Mr. Kennedy's lump-sum analysis fails. Bambu's suggestion that Mr. Kennedy inflated downstream revenues is backwards.



Far from inflating damages, he deliberately chose a lower-growth assumption.

There is nothing improper about a damages expert presenting alternative royalty structures supported by the record. Mr. Kennedy did not "conflate" lump-sum and running royalties.

That is proper. Bambu's complaint is really about the risk that the jury may choose one structure over the other based on the totality of the evidence.[2] But that is what juries do.

---

[1] Mr. Kennedy based his analysis on the best information available, and Bambu's failure to produce usage data cannot be used to foreclose recovery. Consistent with *Lucent*, which states that damages need not be exact, the law does not require a level of precision that would effectively deny recovery where the defendant controls or withholds the very data needed to achieve it.

[2] Bambu improperly treats Mr. Kennedy's testimony as though it will be the jury's sole source of damages evidence, In reality, the jury will hear competing testimony, including from Ms. Kindler, as well as explanations regarding different damages frameworks such as running royalties and lump-sum awards. Mr. Kennedy's report does not present damages in a vacuum but instead provides a foundation for testimony addressing multiple reasonable scenarios that may be relevant to the jury's determination.

If Bambu wants clarity on the verdict form, that is a matter for jury instructions and verdict-form drafting, not exclusion of expert testimony. And Bambu cannot credibly object to lump-sum analysis while its own expert opines that a lump sum is appropriate for at least a subset of the asserted patents.

## II.    BAMBU'S CHALLENGES TO DRS. OSSWALD AND GALL ARE MERITLESS

### A.    Drs. Osswald And Gall Do Not Improperly Opine On State Of Mind

Bambu now shifts its argument and says Dr. Osswald's and Dr. Gall's testimony is improper because it is not within the realm of their expertise. But that is a red herring, because the relevant paragraphs in their respective reports simply identify statements from Bambu documents and interrogatory response related to when Bambu had knowledge of the asserted patents (*see, e.g.,* Dk. No. 192-01 (Osswald) ¶ 1884), serving merely as a factual predicate to the experts' opinions that Bambu induced infringement of the asserted claims. Bambu's motion is nothing more than a veiled summary judgment motion of no indirect infringement—without satisfying Rule 56. Regardless, Bambu's argument is improper. Experts (such as Osswald and Gall) may testify regarding "the underlying facts that in [their] opinion may show Defendants' state of mind." *Atlas Glob. Techs. LLC v. TP-Link Techs. Co., LTD.*, 684 F. Supp. 3d 570, 578 (E.D. Tex. 2023); *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 803–04 (E.D. Tex. 2007); *GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00070-JRG-RSP, 2020 WL 4288350, at *3 (E.D. Tex. July 27, 2020). That is all that Dr. Osswald and Dr. Gall do. Unlike the expert in *Headwater Research*, Stratasys's technical experts do not opine that Bambu acted willfully or tell the jury what legal conclusion to reach. No. 2:23-cv-00352, 2025 WL 1688913, at *8-9 (E.D. Tex. June 16, 2025).  They identify what Bambu's own documents show as a predicate that Bambu induced infringement of the asserted claims. "Experts can opine, however, on the underlying facts that may show a party's state of mind." *GREE*, 2025 WL 1688913, at *3. If Bambu believes the jury should

draw a different inference, it can cross-examine the experts to argue that point at trial.

The cases Stratasys cited in its opposition draw the relevant line. An expert may not tell the jury the ultimate conclusion that a party had the legally required intent, but an expert may identify and discuss the underlying facts that bear on that issue. That is exactly what Dr. Osswald and Dr. Gall do. Bambu's reply never confronts that distinction in any meaningful way. Instead, it argues that jurors can read the documents themselves. But that is true of a vast amount of expert testimony that jurors can read themselves. Experts routinely rely on and discuss technical documents, business records, and discovery responses that a jury could also read. The question is whether the testimony is helpful in organizing and presenting the evidentiary record in connection with the issues the jury must decide. Here, it plainly is.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

## C.    Dr. Osswald Does Not Advance A New "Clog Detection" Theory

Bambu's "new theory" argument is misplaced because Dr. Osswald's opinions are based on the same disclosed theory, ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████    That is the substance of the infringement theory. Dr. Osswald's report does not change it. ██

███████████████████████████████████████████████████

8

███████████████ Under *ROYG-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699–700 (E.D. Tex. 2014), infringement contentions and expert reports are not coextensive, and the fact that an expert "may not use the exact words" from the contentions does not create a new theory. Likewise, *Sol IP, LLC v. AT&T Mobility LLC*, No. 2:18-CV-00526-RWS-RSP, 2020 WL 10045985, at *2 (E.D. Tex. Apr. 23, 2020), rejects the notion that every citation must appear in infringement contentions.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ And its complaint that Stratasys did not earlier use the exact words "clog detection" only proves the point: the dispute is over nomenclature, not notice. Rule 702 and the disclosure rules do not require Stratasys to anticipate every synonym Bambu uses internally for the same accused functionality.

At bottom, Bambu had notice of the infringement theory, the relevant accused functionality, ██ ███████████████ What it seeks now is exclusion based on terminology. That is not what *Biscotti* addressed, and it is not a basis to strike Dr. Osswald's opinions here.

## D. Dr. Gall Does Not Advance A New Theory As To Bambu Handy

Bambu's reply also repackages its notice argument regarding Bambu Handy, but still fails to show unfair surprise or a genuinely new theory. The infringement contentions identified Bambu Lab software as part of the accused instrumentalities. Bambu does not dispute that Bambu Studio and Bambu Handy are both Bambu software used to interact with Bambu printers. Its response instead depends on the notion that Stratasys was required to list every software implementation by name in order to preserve expert analysis addressing the accused functionality. That is not the law in this Court. As Stratasys explained in its opposition, infringement contentions and expert reports are not coextensive. Contentions

are designed to provide notice of the infringement theory, not to catalog every piece of evidence or every way the accused functionality manifests across platforms. Bambu's attempt to frame Bambu Handy as an entirely new product misses the mark. Dr. Gall did not unveil some different accused technology after discovery closed. He addressed Bambu's software ecosystem and functionality already placed at issue.

The authorities Bambu cites do not compel a different result. Those cases involved uncharted products or theories that were truly absent from the disclosed infringement case. Here, by contrast, Bambu was on notice that its software was accused, and it cannot plausibly claim prejudice from expert analysis involving its own mobile application that works in concert with its printer ecosystem.

### E.        Dr. Gall Appropriately Responded To Bambu's Non-Infringement Position

Bambu's final argument fares no better. Paragraph 1629 in Dr. Gall's report is expressly framed as an alternative opinion in the event Bambu's untimely and previously-undisclosed construction of "querying" is accepted. That matters. Dr. Gall did not inject a free-floating doctrine-of-equivalents theory untethered to the case. He responded to Bambu's articulated non-infringement position based on a completely new claim construction nowhere to be found in the *Markman* Order or briefing.

Bambu now says its January 7 interrogatory response merely elaborated on positions it had previously disclosed. But Bambu forgets that even under Bambu's own characterization, that response sharpened and expanded the contours of its theory shortly before expert reports. Dr. Gall was entitled to address that position in his report. Bambu cites no rule requiring Stratasys to seek amendment simply to respond in expert discovery to a more detailed non-infringement articulation from the opposing party.

Nor does the deposition testimony justify exclusion. Bambu's reply characterizes the exchange as simple, but that proves little. The report itself contains the opinion. A single deposition answer, in the context of an extensive report does not erase the written opinion from existence or transform the issue into a *Daubert* problem. That is especially so where the opinion is explicitly set forth in the report and framed as an alternative response to Bambu's own position.

10

Dated: March 31, 2026

Respectfully submitted,

*/s/ Syed Fareed*
Syed Fareed
Texas State Bar No. 24065216
Brian Oaks
Texas State Bar No. 24007767
Aashish Kapadia
Texas State Bar No. 24097917
Christian Tatum
Texas State Bar No. 24125429
**MCDERMOTT WILL & SCHULTE LLP**
300 Colorado Street, Suite 2200
Austin, Texas 78701-4078
Tel: (512) 726-2579
sfareed@mcdermottlaw.com
boaks@mcdermottlaw.com
akapadia@mcdermottlaw.com
ctatum@mcdermottlaw.com

Kevin J. Meek
Texas State Bar No. 13899600
**LAW OFFICES OF KEVIN MEEK, PLLC**
4501 Westlake Drive, Unit #23
Austin, TX 78746
Tel: (512) 422-1244
kevin@meek.law

Deron R. Dacus
Texas State Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705-1117
ddacus@dacusfirm.com

Andrea L. Fair
Texas State Bar No. 24078488
Claire A. Henry
Texas State Bar No. 24053063
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Tel: (903) 757-6400
andrea@millerfairhenry.com
claire@millerfairhenry.com

11

*ATTORNEYS FOR*
*PLAINTIFF STRATASYS,*
*INC.*



**CERTIFICATE OF SERVICE**

I hereby certify that, on March 31, 2026, a true and correct copy of the foregoing document has been served on all counsel of record.

/s/ Syed K. Fareed
Syed K. Fareed

12