# EXHIBIT 10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| Stratasys, Inc., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:24-cv-00644-JRG |
| Shenzhen Tuozhu Technology Co., Ltd., *et* | § | |
| | § | |
| *al.*, | § | |
| | § | |
| *Defendants*. | § | |

## JOINT PROPOSED PRELIMINARY JURY INSTRUCTIONS

I.    PRELIMINARY INSTRUCTIONS ...............................................................................2

       A.    General Preliminary Instructions ........................................................................2

       B.    Introduction to Patents .......................................................................................3

       C.    The Positions of the Parties................................................................................5

       D.    Role of the Court and Overview of Law.............................................................7

       E.    Credibility of Witnesses...................................................................................10

       F.    Expert Witnesses..............................................................................................11

       G.    Deposition Testimony.......................................................................................12

       H.    Redactions........................................................................................................13

       I.    Ruling on Objections ........................................................................................14

       J.    Juror Notebooks...............................................................................................16

       K.    Outline of Trial ................................................................................................18

       L.    Conclusion .......................................................................................................19

## I.    PRELIMINARY INSTRUCTIONS

### A.    General Preliminary Instructions[1]

Members of the jury, I now have some preliminary instructions to give you which I need to give you on the record before we start with opening statements and then get to on to the evidence. You've now been sworn as the jurors in this case, and as the jury, you are the sole judges of the facts. As such, you will decide and determine what all the facts are in this case. As the judge, I will give you instructions on the law, decide any questions of law that arise during the trial, handle matters related to evidence and procedure. I'm also responsible for maintaining an efficient flow of the evidence over the course of the trial and maintaining the decorum of the court. At the end of the evidence, I'll give you detailed instructions about the law to apply in deciding this case, and I'll give you a list of questions that you are then to answer. As I've already mentioned to you, this list of questions is called the verdict form. And your answers to those questions will need to be unanimous and your unanimous answers to the questions in the verdict form will constitute your verdict in this case.

---

[1] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 113:2–22 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 152:18–153:15 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 3:16–4:10 (E.D Tex. March 21, 2019).

**B.    Introduction to Patents[2]**

Now, I want to briefly tell you what the case is about. This case involves a dispute regarding five United States patents. I know you've all seen the video prepared by the Federal Judicial Center, but I need to give you some instructions now and on the record about a patent and how one is obtained.

Patents are either granted or denied by the United States Patent and Trademark Office. You'll hear that agency referred to either as the Patent Office or simply as the PTO over the course of the trial. A valid United States patent gives the holder the right for up to 20 years from the date the patent application is filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A patent is a form of property called intellectual property, and like all forms of property, a patent can be bought or sold.

A violation of a patent holder's rights is called infringement. A patent holder may try to enforce a patent against persons it believes to be infringers by filing a lawsuit in federal court and that's what we have in this case.

Now, the process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the United States Patent and Trademark Office, the PTO. The PTO, ladies and gentlemen, is an agency of the United States government. It's a part of the U.S. Department of Commerce, and it employs trained examiners who review applications for patents. Now, an application submitted to the PTO includes within it something called a specification. The specification contains a written description of the claimed invention telling what it is, how to use it, how it works, how to make it. Now, the specification ends or concludes with one or more numbered sentences. These numbered sentences at the end of the patent are called the patent claims. When a patent is granted by the PTO, it is the claims that define the boundaries of its protection and give notice to the public of those boundaries. Now, patent claims may exist in two forms referred to as independent claims or as dependent claims. An independent claim does not refer to any other claim within the patent; it is independent. It's not necessary to look at any other claim within the patent to understand what an independent claim covers. On the other hand, a dependent claim refers to at least one other claim within the patent. A dependent claim includes each of the elements or limitations of that other claim to which it refers, or as we sometimes say, from which it depends, as well as the added elements within the dependent claim itself.

To determine what a dependent claim covers, it's necessary to look at both the dependent claim itself and the independent claim or claims to which it refers or, again, from which it depends. Now, the claims of the five patents in this suit use the word "comprising." "Comprising" means including or continuing. And a claim that includes the word "comprising" is not limited to the specific methods or devices having only the elements recited in the claim, but also covers methods or devices that add or

---

[2] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 113:23–119:3 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 153:16–159:5 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 4:11–9:17 (E.D Tex. March 21, 2019).

include additional elements. For example, if you take a claim that covers a table and if that claim recites a table comprising a tabletop, legs, and glue, that claim will cover any table that contains those three structures, even if the table also contains other structures, such as leaves that would expand the size of the tabletop or wheels that would go on the ends of the legs. Now, that's a simple example of what the word "comprising" means; in other words, it can have other features in addition to those that are covered by the patent.

Now, after the applicant files their application with the PTO, the PTO assigns an examiner to review the application to determine whether or not the claims are patentable—that is to say, appropriate for patent protection—and whether or not the specification adequately describes the invention that is claimed. In examining the application, the examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews this type of information that was publicly available or that might have been submitted by the applicant. This type of information is called prior art. The examiner reviews this prior art to determine whether or not the invention claimed in the application is truly an advance over the state of the art at the time.

Now, prior art is defined by law, and I'll give you specific instructions at a later time as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a patent was filed. Now, a patent includes within it a certain list of prior art items that the examiner has considered, and the items on this list are called the cited references, and they're set forth within the body of the patent itself.

Now, after the prior art search and examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable, in which case it would be allowed. This writing from the examiner to the applicant is called an office action.

If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try to persuade the examiner to allow the claims. The applicant also has the opportunity to amend or change the claims or to submit new claims. And the papers generated in these communications in writing back and forth between the examiner and the applicant are called the prosecution history. This back-and-forth process of prosecution history may go on for some time between the applicant and the examiner, until the examiner is ultimately satisfied that the application meets the requirements for a patent. And in that case, the application issues as a United States patent; or, alternatively, if the examiner ultimately concludes that the application should be rejected, then no patent is issued. Sometimes patents are issued after appeals within the Patent Office or to a court.

Now, the fact that the PTO has granted a patent does not necessarily mean that the invention claimed in the patent, in fact, deserves the protection of a patent. While all issued United States patents are presumed to be valid under the law, a person accused of infringement has the right in Federal Court to argue that the claimed invention in the patent is invalid. It's your job as the jury to consider the evidence presented by the parties and determine independently and for yourselves whether or not the Defendants have proven that a patent is, in fact, invalid.

4

## C.    The Positions of the Parties[3]

Now, to help you follow the evidence, I'll give you a brief summary of the positions of the competing parties. As you all know, the party that initiates or brings a lawsuit is called the plaintiff. The Plaintiff in this case is Stratasys, Inc., and you'll hear them referred to throughout the trial as simply the Plaintiff or simply as Stratasys. And as you all know, the party against whom a lawsuit is brought is called the defendant, and there are five Defendants in this case. They are Shenzhen Tuozhu Technology Co., Ltd., Shanghai Lunkuo Technology Co., Ltd., BambuLab Limited, Tuozhu Technology Limited, and BambuLab USA Inc., and you'll hear these five companies referred to during the trial collectively as either the Defendants or simply as Bambu.

Now, as I told you during jury selection, this case involves allegations of patent infringement brought by Stratasys against Bambu, and as I've already mentioned there are five United States patents that have been asserted by Stratasys and are at issue in this case.

The first of these is United States Patent No. 7,555,357. Patent numbers are commonly referred to by their last three digits, so this particular patent will be referred to during the trial as the '357 Patent. The second U.S. patent at issue in this case is United States Patent No. 9,421,713, which you'll hear consistently referred to over the course of the trial as the '713 Patent. The third U.S. patent at issue in this case is United States Patent No. 9,168,698, which you'll hear consistently referred to over the course of the trial as the '698 Patent. The fourth U.S. patent at issue in this case is United States Patent No. 10,556,381, which you'll hear consistently referred to over the course of the trial as the '381 Patent. The fifth U.S. patent at issue in this case is United States Patent No. 9,592,660, which you'll hear consistently referred to over the course of the trial as the '660 Patent.

These patents may be referred to at various times collectively as either the patents-in-suit or you may hear them called the asserted patents. Those two things mean the same thing and refer to the five patents I've just identified for you. And these asserted patents, these patents-in-suit, generally relate to three-dimensional, or 3D, printers. Now, the Plaintiff Stratasys contends that the Bambu Defendants are infringing certain claims of the five patents-in-suit by making, using, importing, selling, or offering for sale in the United States certain products that include its patented technology. Plaintiff also contends that it is entitled to money damages as the result of this alleged infringement. Now, the Defendants deny that they have infringed now or in the past any of the asserted claims from the five patents-in-suit. The Defendants contend also that certain of the asserted claims in these five patents are invalid because they are anticipated by the prior art or they are obvious in view of the prior art. Defendants also contend that certain asserted claims are invalid because the patents do not contain an adequate written description or lack sufficient enablement.  Finally, Defendants further contend that certain asserted claims are invalid for claiming patent ineligible subject matter. Also, the Defendants deny that the Plaintiff is entitled to any money damages.

---

[3] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 119:4–121:22 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 159:6–162:19 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 9:18–12:6 (E.D Tex. March 21, 2019).

The Plaintiff also contends that the Bambu Defendants have engaged in false advertising in violation of the Federal Lanham Act by making false, misleading, and deceptive statements on its websites that materially misrepresent the nature and characteristics of Bambu's 3D printers and related hardware and software. Plaintiff contends that it is entitled to money damages as a result of this false advertising. The Bambu Defendants deny that they have engaged in false advertising. [**Bambu**: You only need to consider false advertising if you find that Bambu has not infringed the Asserted Patents.]

Now, I know, ladies and gentlemen, that there are a lot of new words and new concepts that have been thrown at you since you got to the courthouse this morning. I am going to define a lot of these words and explain these concepts to you as we go through these instructions, the attorneys are going to discuss them with you in their opening statements, and the witnesses are going to help you over the course of the trial as they go through their testimony to understand these words and concepts. So, please, do not feel overwhelmed at this point. I promise you, it will all come together as we go through the trial.

Now, one of your jobs in this case is to decide whether or not the asserted claims of the patents-in-suit have been infringed. You'll also be asked to decide whether or not certain of the asserted patent claims are invalid. Now, if you decide that any particular asserted claim has been infringed by the Defendants and that claim is not invalid, then in that case you'll need to decide what amount of money, if any, should be awarded as damages to the Plaintiff to compensate it for the infringement you found. Similarly, if you decide that Bambu engaged in false advertising, you'll need to decide what amount of money, if any, should be awarded as damages to Plaintiff.

### D.    Role of the Court and Overview of Law[4]

Now, my job in this case is to tell you what the law is, to handle rulings on evidence and procedure, to oversee the process of the trial efficiently, and to maintain the decorum of the courtroom.

In determining the law, it is specifically the Court's job to determine the meaning of any language from the claims that needs to be interpreted. I have already determined the meanings of certain language from the asserted claims from the patents-in-suit, and I'm going to provide those constructions or interpretations to you, sometimes called definitions to you, and you must accept these constructions, meanings that I will give you and you must apply those meanings to that language with regard to whether any of the claims have been infringed and whether or not any claim is invalid. You're going to be given a document in a few moments that lays out these particular constructions or interpretations that I've already reached and will be providing to you.

Now, for any language from within an asserted claim where I have not provided you with a definition or a construction, you should apply the plain and ordinary meaning to that language. But if I've provided you with a definition or a construction, you are to apply my definition to those terms throughout the case.

However, ladies and gentlemen, my interpretation of some of the language from the asserted claims should not be taken by you as an indication that I have a personal opinion or any opinion at all regarding the issues of infringement or invalidity. Those issues are your issues alone to decide in this case.

Now, I'll provide you with more detailed instructions on the meaning of the claims before you retire to deliberate on your verdict. In deciding, however, the issues that are before you, you will be asked to consider specific legal rules, and I'll give you an overview of those rules now, and then at the conclusion of the case I'll give you more detailed instructions.

The first issue that you'll be asked to decide is whether the Bambu Defendants have infringed any of the asserted claims from the five patents-in-suit. Infringement is assessed on a claim-by-claim basis. And Stratasys, the Plaintiff, must show by a preponderance of the evidence that a claim has been infringed. As a result, there may be infringement as to one claim but no infringement as to another claim.

Also, there are a few different ways that a claim can be infringed, and I'll explain the requirements of each of these types of infringement to you in detail at the conclusion of the case. But in general, ladies and gentlemen, a defendant may infringe an asserted claim from one of the patents-in-suit by making, using, selling, or offering for sale in the United States, or importing into the United States, a product meeting all the requirements of that claim from the asserted patents or a product that practices

---

[4] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 121:23–127:3 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 162:20–167:23 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 12:7–17:2 (E.D Tex. March 21, 2019).

all of the required steps of that claim. Now, a defendant may also infringe by actively inducing others to infringe a claim from the asserted patents, or by contributing to another's infringement of the asserted patents, and I'll explain and provide you with more detailed instructions on these requirements for infringement at the conclusion of the case.

Now, you'll be asked to decide whether certain claims from the asserted patents are invalid. Invalidity, ladies and gentlemen, is a defense to infringement. As a result, even though the U.S. Patent and Trademark Office, the PTO, has allowed the asserted claims and even though an issued United States patent is presumed to be valid, you, the jury, must decide whether those claims are or are not invalid, after hearing all the evidence presented during this trial. You may find a patent claim to be invalid for a number of reasons, including because it is anticipated, because it is obvious, or because it is not supported by an adequate written description within the patent specification.

Now, for a claim to be invalid because it is anticipated, the Defendants must show by clear and convincing evidence that all of the elements of that claim are sufficiently described in a single previous printed publication or patent. As I mentioned, we call these items prior art. For a patent claim, however, to be invalid because it is obvious, the Defendants must show, again by clear and convincing evidence, that that claim would have been obvious to a person of ordinary skill in the field of the technology of the patent at the relevant time.

Now, you'll need to consider a number of questions in deciding whether the inventions claimed in the asserted patents are obvious, and I'll provide you with more detailed instructions on those questions at the conclusion of the trial. Now, another way that a claim can be found to be invalid is if there is a lack of an adequate written description. A patent might be invalid if its specification does not adequately describe the claimed invention in sufficient detail so that one of ordinary skill in the art can reasonably conclude that the inventor actually had possession of the invention they are claiming. Invalidity, ladies and gentlemen, is assessed and determined on a claim-by-claim basis. Accordingly, one claim might be invalid while another claim is not invalid. And you'll need to consider a number of questions in deciding whether the claims from the patents-in-suit contain a sufficient written description, are adequately enabled, and sufficiently definite. I'll provide you with more detailed instructions on this issue at the conclusion of the trial.

Now, if you decide that any of the claims from the asserted patents have been infringed, and they are not invalid, then you'll need to decide what amount of money damages should be awarded to the Plaintiff to compensate it for that infringement. Now, a damages award in a patent case must be adequate to compensate the patent holder for the infringement, and in no event may a damages award be less than what the patent holder would have received if it had been paid a reasonable royalty for the use of its patents. However, the damages that you might award, if any, are meant to compensate the patent holder; they are not meant to punish the Defendants. And you may not include in any damages award you might make an additional amount as a fine or a penalty over and above what is necessary to fully compensate the patent holder for the infringement. Also, ladies and gentlemen, damages cannot be speculative. Stratasys, the Plaintiff, must prove the amount of its damages for the alleged infringement by a preponderance of the evidence. However, the fact that I'm instructing you on damages now does not mean that Stratasys is or is not entitled to recover damages. And I'll give you more detailed instructions on the calculation of damages for the alleged infringement of the Defendants at the conclusion of the trial, including by giving you specific instructions at that time with regard to the calculation of a

8

reasonable royalty.

You [**Bambu**: may] [**Stratasys**: will] also need to decide whether Bambu has engaged in false advertising. Stratasys, the Plaintiff, must show by a preponderance of the evidence that Bambu has engaged in false advertising. Now, if you decide that Bambu has engaged in false advertising, then you'll need to decide what amount of money damages should be awarded to the Plaintiff to compensate it for that false advertising. I'll give you more detailed instructions on the calculation of damages for false advertising at the conclusion of the trial.

### E.    Credibility of Witnesses[5]

Now, you're going to be hearing from a number of witnesses over the trial of this case, and I want you to keep an open mind while you're listening to all the evidence and not decide any of the facts until you've heard all of the evidence and all of the witnesses.

Now, this is important, ladies and gentlemen. While the witnesses are testifying, remember you, the jury, will have to decide the degree of credibility and believability to allocate to each of the witnesses and all of the evidence.

So, while the witnesses are testifying, you should be asking yourselves things like this:

Does the witness impress you as being truthful?

Did he or she have a reason not to tell the truth?

Did he or she have any personal interest in the outcome of the case?

Does the witness seem to have a good memory?

Did the witness have the opportunity and ability to observe accurately the things that they've testified about?

Did the witness appear to understand the questions clearly and answer them directly?

And, of course, does the witness' testimony differ from the testimony of other witnesses?

And if it does, how does it differ?

These are some of the kinds of things you should be thinking about while you're listening to each of the witnesses over the course of this trial.

---

[5] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 127:4–128:1 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 167:24–168:24 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 17:3–18:3 (E.D Tex. March 21, 2019).

F.    **Expert Witnesses**[6]

Also, ladies and gentlemen, I want to talk to you briefly about expert witnesses. When knowledge of a technical subject may be helpful to you, the jury, a person who has special training or experience in that particular field—we refer to them as an expert witness—is permitted to testify to you about his or her opinions on those technical matters. However, you're not required to accept any expert witness' opinions. It's up to you to decide whether you believe what any expert witness says or any witness, for that matter, whether you believe it's correct or incorrect, whether or not you want to believe it, and what amount of weight, if any, that you want to give to that testimony. Now, I anticipate that there will be expert witnesses testifying in support of each side in this case, but it will be up to you to listen to their qualifications when they testify and when they give an opinion and explain the basis for that opinion, you will have to evaluate what they say, whether you believe it, and to what degree, if any, that you want to give it weight. Remember, ladies and gentlemen, judging and evaluating the credibility and the believability of each and every witness is an important part of your job as jurors.

---

[6] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 128:2–23 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 168:25–169:22 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 18:3–19:4 (E.D Tex. March 21, 2019).

11

### G.        Deposition Testimony[7]

Now, during the course of the trial, it's possible that there will be testimony from one or more witnesses that are going to be presented to you through what's called a deposition. In trials like this, it's difficult to get every witness to the courthouse in person to testify for you—before you live in open court. So before the trial begins, the lawyers for each side take the witnesses of each—take the depositions of each of the witnesses. In a deposition, a court reporter is present, the witness is sworn and placed under oath just as if he or she were personally in court, and then the parties through their counsel ask them questions, the witnesses answer those questions, and both the questions and the answers are recorded and transcribed. Not only are they written down, they are often recorded by video recordings or other mechanisms.

Now, it's important that over the course of the trial when a deposition witness is presented to you, for you to understand that you're going to be seeing portions of that video deposition that are selected and then put together for presentation to you. As a part of that, there will be certain glitches and skips and imperfections that you need to overlook. Let me explain this to you.

When a witness is deposed by the attorneys before the trial begins, depositions usually last up to seven hours. Now, when it comes time for the trial, the parties presenting that witness who's not here to testify live and is going to be presented to you through a deposition, the parties and their counsel may determine that there's, for example, 20 minutes of that seven hours that is really relevant and important for the jury to hear, and that 20 minutes may come from several different places within that seven-hour deposition.

So, the lawyers will pick and select and edit that deposition to pull out those important parts in their view, and then put them together as a new clip and present it to you by a video presentation during the trial. The fact that you may see a few glitches or imperfections as a part of that editing and recombining process is a small price to pay to otherwise being required to listen to seven hours of testimony to get 20 minutes of information. So when you see those video deposition clips, ignore the skips and irregularities, the different sounding voices. Focus on the material. Focus on the questions asked and the answers given. And understand by doing that, we're all saving a lot of time as opposed to the alternative. However, you need to understand that that deposition testimony is testimony in this case, and it's entitled to the same consideration insofar as possible, as you would give judging the credibility, weight, and other considerations of a live witness who testifies in person from the witness stand in open court.

---

[7] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 128:24–131:1 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 169:23–172:12 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 19:5–20:2 (E.D Tex. March 21, 2019).

## H.      **Redactions**[8]

Now, also, ladies and gentlemen, over the course of the trial it's possible you're going to be shown certain documents that have been admitted into evidence by the Court as exhibits, and some of these exhibits may have portions of them that have been redacted or blacked out. If you're shown an exhibit or document that has portions of it blacked out, there are two things to remember. Those redactions are there because the Court ordered them. The Court found that they were appropriate, and the Court directed the parties to black out or redact that section or sections of the document. The other thing to remember is not to focus on the redactions. Don't try to read what's before it and after it and guess what was blacked out. Focus on what is not redacted, focus upon what you can read and what it means, and ignore what has been redacted.

---

[8] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 131:2–17 (E.D. Tex. September 26, 2025).

13

## I.    Ruling on Objections[9]

Now, during the course of the trial, it's possible that the lawyers will raise objections from time to time, and when they do, the Court will issue rulings on those objections. Remember, it's the duty of an attorney to object when the other side purports to offer testimony or evidence that the objecting attorney believes is not proper under the rules of the Court, and you should understand that by allowing the testimony or other evidence to be introduced over the objection of an attorney, in so doing the Court does not, unless expressly stated, indicate to you any opinion as to the weight or effect of that evidence.

Also, you should know, ladies and gentlemen, that the Court has already made certain rulings in advance of the trial prohibiting references to certain matters over the course of the trial, because the Court's determined that they are not relevant, they are not germane, or that they're unacceptably prejudicial. Those rulings by the Court in advance of the trial to keep out certain types of information are called orders in limine. I doubt any of you have heard the word "limine" before. I don't want you to be confused if you do hear it over the course of the trial. You may hear this referred to as a motion in limine. You might hear it referred to as an abbreviated M-I-L, or MIL. All of that means it's regarding an area where the Court's determined that certain types of information should not come in, and if somebody purports to bring in information that would be in opposition to that limine order, I would expect the other side to object and I'll take that up. And if we get an objection that the other side is purporting to violate a limine order or a limine or a MIL, I don't want you confused by what that is. I'm just explaining to you that that's a type of information the Court has already found should be outside of the trial and not brought in before the jury, unless there are particular reasons why the Court would otherwise allow it.

Now, as I've told you, you, the jury, are the sole and only judges of the credibility and believability of each and every witness and what weight and effect to give to all of the evidence presented over this trial. I want to compliment the parties because in pretrial procedures long before today, the parties in working with the Court have gone through many of the issues that might otherwise have to come up before you during this trial, and those have already been dealt with and streamlined. All of the exhibits that are properly admissible that can be shown to you over the course of the trial have already been dealt with by the Court, and purported exhibits that are not admissible in the Court's view have already been excluded. So the offering of those documents and the process of hearing arguments and ruling on whether they are or are not admissible has already been handled in pretrial proceedings long before today, and been working with the lawyers for the parties, we have saved everybody, you especially, a lot of time. So when a document is offered to you as an exhibit over the course of the trial, you can understand it's already been determined by the Court to be admissible. If it weren't, you wouldn't be seeing it during this trial. And that process has saved us all a lot of time today and over the course of this week.

Even though the parties in working with the Court have streamlined many of these issues, it's

---

[9] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 131:18–135:4 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 172:13–175:20 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 20:11–23:11 (E.D Tex. March 21, 2019).

14

still possible that objections are going to arise over the course of the trial. If I should sustain an objection to a question addressed to a witness, you must disregard the question entirely and you may draw no inference from its wording or speculate or guess what the witness would have said if I had permitted them to answer the question. However, on the other hand, if I overrule an objection regarding a question addressed to a witness, then you should consider the question and the answer just like any other question and answer as if no objection had been made. You should also know, ladies and gentlemen, that the law of the United States permits a United States District Judge to comment to the jury regarding the evidence in a case, but such comments from the judge to the jury can be disregarded by the jury as they are only an expression of the judge's opinion. And as I've told you, it is you, the jury, not me, the judge, who will decide the credibility of the evidence and the facts and determine what the ultimate facts are in this case. So even though the law might permit me to comment to you on the evidence, as I told you during jury selection, I'm going to work very hard not to do that. It's my goal that you have no idea what I think about the evidence in this case, because determining the facts from the evidence is solely your responsibility and not mine.

**J.        Juror Notebooks[10]**

Now, the court reporter in front of me takes down everything that's said in the courtroom. That's why it's important for witnesses and lawyers not to talk at the same time. That written transcription of everything that's said is not going to be able to be printed and given to you during deliberations in the jury room. That means, ladies and gentlemen, you're not going to have the benefit of the transcript during your deliberations. You are going to have to rely on your memory of all the evidence that's presented over the course of the trial.

In a moment you're each going to be given a juror notebook, and in these notebooks you're going to find several things. I'll go over them with you. In the back of the notebooks, you'll find a brand-new legal pad that's been three-hole punched and can be used by you to take notes over the course of the trial. It's up to each juror to decide whether they want to take notes and how brief or detailed they want those notes to be. But, remember, any notes you take are for your own personal use and you still have to rely on your memory of the evidence, which is why you should pay close attention over the trial regarding the testimony of each and every witness. You should not abandon your own recollection and memory because some other juror's notes might indicate something different. Notes are to refresh your recollection of the evidence, and that's the only reason why you should be keeping them, if you decide to take notes over the course of the trial. I'm now going to ask our Court Security Officer to pass out these juror notebooks to the members of the jury.

If you look in these notebooks, you'll see that at the beginning you have a copy of each of the five patents-in-suit. They're lengthy documents. Those copies are printed on both sides of the page so that they won't be excessively large. But you have a complete copy of each of the five patents-in-suit.

Now, behind that, you will find a chart or a ledger regarding the case where there has been language from the asserted claims that the Court has interpreted or construed. On the left-hand side of that column will be the language from the claims that was at issue. And on the right-hand side corresponding to it on that ledger, you'll see the actual construction, sometimes called an interpretation or a definition, that the Court has already reached about that language from the claims. And as I've told you, you're required to take my definitions or constructions which I'm giving you there and apply it to that claim language throughout the trial, particularly with regard to the issues of infringement and invalidity.

Now, once you get past that ledger or chart regarding the interpretation of certain claim language, you're going to find a section of tabbed pages for the witnesses that are going to be presented or may be presented to you over the course of the trial. On each of those pages, you should find a head-and-shoulders photograph of the witness at the top of the page with their complete name underneath and then simply ruled lines for potential note taking. The Court has found over the course of time that it's very

---

[10] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 135:5–139:7 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 175:21–178:25 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 23:12–26:16 (E.D Tex. March 21, 2019).

helpful to the jury after a trial while you're deliberating to be able to go back and see a picture of each of the several witnesses that testified over the course of the trial. So those are there to refresh your recollection and to be used during your deliberations or to be used as a place to take notes, if you choose to, over the course of the trial.

Now, behind these tabbed witness pages, and we've tabbed them so you can find the names of the witnesses, I'm not sure they'll be called to testify in exactly the same order that they're in your notebooks. So that's why the pages are tabbed with their names so you can get there quickly. Now, behind these tabbed witness pages you should find, as I mentioned, a new legal pad that's been hole-punched and included so that you can take notes there during the trial, if you choose to. And in the front pockets of these notebooks, there should be a pen for note taking in case you don't have one readily available to you.

Now, these notebooks, ladies and gentlemen, should be in your possession at all times. They are not meant to be laying around where somebody else might be tempted to see what's in there or to have access to them. When you leave each day at the end of that day's portion of the trial, I'm going to ask you to take the notebooks with you to the jury room and leave them closed on the table overnight in the jury room so they'll be there the next morning. Over lunch breaks each day, I'll ask you to take those notebooks with you to the jury room and not leave them here in the courtroom over your lunch break.

Now, there will be times during the trial when we will have a recess, a short break, where it may be 10 or 12 minutes where everybody gets a chance to get a drink of water and stretch their legs and then continue. In those instances where it's a short recess, I may simply say at that point, ladies and gentlemen of the jury, you may close and leave your notebooks in your chairs. And in that case when you go to the jury room, you can simply leave your notebooks here in the jury box in your chairs because we won't be out of the courtroom very long and it will be a short break. But unless I give you instructions about leaving it behind in your chairs, when in doubt take it with you and keep it in your possession.

17

### K.     <u>Outline of Trial[11]</u>

Now, in a minute you're going to hear opening statements from the lawyers for the competing parties. As I've told you, these opening statements are designed to give you a roadmap of what each side expects to offer by way of their evidence. And you should remember, ladies and gentlemen, throughout the trial that what the lawyers tell you is not evidence.

The evidence is the sworn testimony of the witnesses presented under oath either as live witnesses from the witness stand or as deposition witnesses as I've already explained that will be presented to you, as well as the exhibits that the Court has admitted into evidence already and will be shown to you during the trial. That's the evidence. Nothing else is evidence in the case. What the lawyers tell you is their impression of the evidence, and they have a duty to point out what they believe the evidence is. But, remember, what they tell you is not evidence itself.

Now, after the opening statements, the Plaintiff is going to proceed to present the Plaintiff's case-in-chief. They will call their witnesses and put on their evidence. Then after they've presented their case in chief, the Plaintiffs will rest their case in chief, the Defendants will put on their evidence and proceed with the Defendants' case-in-chief. And, finally, we'll see if there are or are not rebuttal witnesses from the Plaintiff after the Defendants have rested the Defendants' case-in-chief.

Now, after you've heard all of the evidence, I'll give you written instructions on the law that you are to apply, and then at that point counsel will present their closing arguments to you. After their closing arguments, then I will instruct you to retire to the jury room and to deliberate on your verdict.

---

[11] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 139:8–140:15 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 179:1–181:25 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 26:17–28:20 (E.D Tex. March 21, 2019).

### L.    Conclusion[12]

As I mentioned earlier, until I instruct you to retire to the jury room and deliberate on your verdict, after the completion of closing arguments from both sides, only then are you permitted and, in fact, required to discuss the evidence in this case between you. Prior to that time, you're not to discuss the evidence among yourselves, as well as not to communicate with anybody else about the trial or anything related to it.

It is not a large courthouse, and there is one way in and out and that's through the front steps. It's just altogether likely, if not inevitable, that you're going to come in close contact with some of these people during the course of the trial. If you look out, the courtroom's almost full. There are very few, if any, people out here who are spectators, they are aligned with one side or the other in this case. So all of them are subject to not entering into any interaction with you, the jury. So if you should come in close contact with any of these people, don't be offended if they don't look at you or engage you in conversation, don't seem to be friendly or outgoing. They're simply doing what I've instructed them to do, because again, the only information that you should have when you retire to deliberate on your verdict must be limited to the evidence of the witnesses given under oath subject to cross examination and the exhibits which the Court has already determined are admissible under the rules of evidence; that's it, nothing else. So when they're not friendly and outgoing just remember they're doing what I instructed them to do and don't hold this against them.

So with these instructions, ladies and gentlemen, we're going to hear opening statements from the parties at this time.

---

[12] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 140:16–141:24 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 182:1–183:9 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 28:21–29:16 (E.D Tex. March 21, 2019).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| Stratasys, Inc., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:24-cv-00645-JRG |
| | § | |
| Shenzhen Tuozhu Technology Co., Ltd., *et* | § | |
| | § | |
| *al.*, | § | |
| | § | |
| *Defendants*. | § | |

**JOINT PROPOSED PRELIMINARY JURY INSTRUCTIONS**

I.      PRELIMINARY INSTRUCTIONS ...................................................................2

        A.      General Preliminary Instructions.................................................2

        B.      Introduction to Patents ................................................................3

        C.      The Positions of the Parties.........................................................5

        D.      Role of the Court and Overview of Law......................................7

        E.      Credibility of Witnesses.............................................................10

        F.      Expert Witnesses........................................................................11

        G.      Deposition Testimony.................................................................12

        H.      Redactions..................................................................................13

        I.      Ruling on Objections .................................................................14

        J.      Juror Notebooks.........................................................................16

        K.      Outline of Trial ..........................................................................18

        L.      Conclusion ..................................................................................19

## I.    PRELIMINARY INSTRUCTIONS

### A.    General Preliminary Instructions[1]

Members of the jury, I now have some preliminary instructions to give you which I need to give you on the record before we start with opening statements and then get to on to the evidence. You've now been sworn as the jurors in this case, and as the jury, you are the sole judges of the facts. As such, you will decide and determine what all the facts are in this case. As the judge, I will give you instructions on the law, decide any questions of law that arise during the trial, handle matters related to evidence and procedure. I'm also responsible for maintaining an efficient flow of the evidence over the course of the trial and maintaining the decorum of the court. At the end of the evidence, I'll give you detailed instructions about the law to apply in deciding this case, and I'll give you a list of questions that you are then to answer. As I've already mentioned to you, this list of questions is called the verdict form. And your answers to those questions will need to be unanimous and your unanimous answers to the questions in the verdict form will constitute your verdict in this case.

---

[1] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 113:2–22 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 152:18–153:15 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 3:16–4:10 (E.D Tex. March 21, 2019).

### B.       Introduction to Patents[2]

Now, I want to briefly tell you what the case is about. This case involves a dispute regarding five United States patents. I know you've all seen the video prepared by the Federal Judicial Center, but I need to give you some instructions now and on the record about a patent and how one is obtained.

Patents are either granted or denied by the United States Patent and Trademark Office. You'll hear that agency referred to either as the Patent Office or simply as the PTO over the course of the trial. A valid United States patent gives the holder the right for up to 20 years from the date the patent application is filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A patent is a form of property called intellectual property, and like all forms of property, a patent can be bought or sold.

A violation of a patent holder's rights is called infringement. A patent holder may try to enforce a patent against persons it believes to be infringers by filing a lawsuit in federal court and that's what we have in this case.

Now, the process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the United States Patent and Trademark Office, the PTO. The PTO, ladies and gentlemen, is an agency of the United States government. It's a part of the U.S. Department of Commerce, and it employs trained examiners who review applications for patents. Now, an application submitted to the PTO includes within it something called a specification. The specification contains a written description of the claimed invention telling what it is, how to use it, how it works, how to make it. Now, the specification ends or concludes with one or more numbered sentences. These numbered sentences at the end of the patent are called the patent claims. When a patent is granted by the PTO, it is the claims that define the boundaries of its protection and give notice to the public of those boundaries. Now, patent claims may exist in two forms referred to as independent claims or as dependent claims. An independent claim does not refer to any other claim within the patent; it is independent. It's not necessary to look at any other claim within the patent to understand what an independent claim covers. On the other hand, a dependent claim refers to at least one other claim within the patent. A dependent claim includes each of the elements or limitations of that other claim to which it refers, or as we sometimes say, from which it depends, as well as the added elements within the dependent claim itself.

To determine what a dependent claim covers, it's necessary to look at both the dependent claim itself and the independent claim or claims to which it refers or, again, from which it depends. Now, the claims of the five patents in this suit use the word "comprising." "Comprising" means including or continuing. And a claim that includes the word "comprising" is not limited to the specific methods or devices having only the elements recited in the claim, but also covers methods or devices that add or

---

[2] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 113:23–119:3 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 153:16–159:5 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 4:11–9:17 (E.D Tex. March 21, 2019).

include additional elements. For example, if you take a claim that covers a table and if that claim recites a table comprising a tabletop, legs, and glue, that claim will cover any table that contains those three structures, even if the table also contains other structures, such as leaves that would expand the size of the tabletop or wheels that would go on the ends of the legs. Now, that's a simple example of what the word "comprising" means; in other words, it can have other features in addition to those that are covered by the patent.

Now, after the applicant files their application with the PTO, the PTO assigns an examiner to review the application to determine whether or not the claims are patentable—that is to say, appropriate for patent protection—and whether or not the specification adequately describes the invention that is claimed. In examining the application, the examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews this type of information that was publicly available or that might have been submitted by the applicant. This type of information is called prior art. The examiner reviews this prior art to determine whether or not the invention claimed in the application is truly an advance over the state of the art at the time.

Now, prior art is defined by law, and I'll give you specific instructions at a later time as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a patent was filed. Now, a patent includes within it a certain list of prior art items that the examiner has considered, and the items on this list are called the cited references, and they're set forth within the body of the patent itself.

Now, after the prior art search and examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable, in which case it would be allowed. This writing from the examiner to the applicant is called an office action.

If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try to persuade the examiner to allow the claims. The applicant also has the opportunity to amend or change the claims or to submit new claims. And the papers generated in these communications in writing back and forth between the examiner and the applicant are called the prosecution history. This back-and-forth process of prosecution history may go on for some time between the applicant and the examiner, until the examiner is ultimately satisfied that the application meets the requirements for a patent. And in that case, the application issues as a United States patent; or, alternatively, if the examiner ultimately concludes that the application should be rejected, then no patent is issued. Sometimes patents are issued after appeals within the Patent Office or to a court.

Now, the fact that the PTO has granted a patent does not necessarily mean that the invention claimed in the patent, in fact, deserves the protection of a patent. While all issued United States patents are presumed to be valid under the law, a person accused of infringement has the right in Federal Court to argue that the claimed invention in the patent is invalid. It's your job as the jury to consider the evidence presented by the parties and determine independently and for yourselves whether or not the Defendants have proven that a patent is, in fact, invalid.

### C.    The Positions of the Parties[3]

Now, to help you follow the evidence, I'll give you a brief summary of the positions of the competing parties. As you all know, the party that initiates or brings a lawsuit is called the plaintiff. The Plaintiff in this case is Stratasys, Inc., and you'll hear them referred to throughout the trial as simply the Plaintiff or simply as Stratasys. And as you all know, the party against whom a lawsuit is brought is called the defendant, and there are five Defendants in this case. They are Shenzhen Tuozhu Technology Co., Ltd., Shanghai Lunkuo Technology Co., Ltd., BambuLab Limited, Tuozhu Technology Limited, and BambuLab USA Inc., and you'll hear these five companies referred to during the trial collectively as either the Defendants or simply as Bambu.

Now, as I told you during jury selection, this case involves allegations of patent infringement brought by Stratasys against Bambu, and as I've already mentioned there are five United States patents that have been asserted by Stratasys and are at issue in this case.

The first of these is United States Patent No. 10,569,466. Patent numbers are commonly referred to by their last three digits, so this particular patent will be referred to during the trial as the '466 Patent. The second U.S. patent at issue in this case is United States Patent No. 11,167,464, which you'll hear consistently referred to over the course of the trial as the '464 Patent. The third U.S. patent at issue in this case is United States Patent No. 8,747,097, which you'll hear consistently referred to over the course of the trial as the '097 Patent. The fourth U.S. patent at issue in this case is United States Patent No. 11,886,774, which you'll hear consistently referred to over the course of the trial as the '774 Patent. The fifth U.S. patent at issue in this case is United States Patent No. 8,562,324, which you'll hear consistently referred to over the course of the trial as the '324 Patent.

These patents may be referred to at various times collectively as either the patents-in-suit or you may hear them called the asserted patents. Those two things mean the same thing and refer to the five patents I've just identified for you. And these asserted patents, these patents-in-suit, generally relate to three-dimensional, or 3D, printers. Now, the Plaintiff Stratasys contends that the Bambu Defendants are infringing certain claims of the five patents-in-suit by making, using, importing, selling, or offering for sale in the United States certain products that include its patented technology. Plaintiff also contends that it is entitled to money damages as the result of this alleged infringement. Now, the Defendants deny that they have infringed now or in the past any of the asserted claims from the five patents-in-suit. The Defendants contend also that certain of the asserted claims in these five patents are invalid because they are anticipated by the prior art or they are obvious in view of the prior art. Defendants also contend that certain asserted claims are invalid because the patents do not contain an adequate written description or lack sufficient enablement. Finally, Defendants further contend that certain asserted claims are invalid for claiming patent ineligible subject matter. Also, the Defendants deny that the Plaintiff is entitled to any money damages.

---

[3] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 119:4–121:22 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 159:6–162:19 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 9:18–12:6 (E.D Tex. March 21, 2019).

Now, I know, ladies and gentlemen, that there are a lot of new words and new concepts that have been thrown at you since you got to the courthouse this morning. I am going to define a lot of these words and explain these concepts to you as we go through these instructions, the attorneys are going to discuss them with you in their opening statements, and the witnesses are going to help you over the course of the trial as they go through their testimony to understand these words and concepts. So, please, do not feel overwhelmed at this point. I promise you, it will all come together as we go through the trial.

Now, one of your jobs in this case is to decide whether or not the asserted claims of the patents-in-suit have been infringed. You'll also be asked to decide whether or not certain of the asserted patent claims are invalid. Now, if you decide that any particular asserted claim has been infringed by the Defendants and that claim is not invalid, then in that case you'll need to decide what amount of money, if any, should be awarded as damages to the Plaintiff to compensate it for the infringement you found.

### D.     <u>Role of the Court and Overview of Law[4]</u>

Now, my job in this case is to tell you what the law is, to handle rulings on evidence and procedure, to oversee the process of the trial efficiently, and to maintain the decorum of the courtroom.

In determining the law, it is specifically the Court's job to determine the meaning of any language from the claims that needs to be interpreted. I have already determined the meanings of certain language from the asserted claims from the patents-in-suit, and I'm going to provide those constructions or interpretations to you, sometimes called definitions to you, and you must accept these constructions, meanings that I will give you and you must apply those meanings to that language with regard to whether any of the claims have been infringed and whether or not any claim is invalid. You're going to be given a document in a few moments that lays out these particular constructions or interpretations that I've already reached and will be providing to you.

Now, for any language from within an asserted claim where I have not provided you with a definition or a construction, you should apply the plain and ordinary meaning to that language. But if I've provided you with a definition or a construction, you are to apply my definition to those terms throughout the case.

However, ladies and gentlemen, my interpretation of some of the language from the asserted claims should not be taken by you as an indication that I have a personal opinion or any opinion at all regarding the issues of infringement or invalidity. Those issues are your issues alone to decide in this case.

Now, I'll provide you with more detailed instructions on the meaning of the claims before you retire to deliberate on your verdict. In deciding, however, the issues that are before you, you will be asked to consider specific legal rules, and I'll give you an overview of those rules now, and then at the conclusion of the case I'll give you more detailed instructions.

The first issue that you'll be asked to decide is whether the Bambu Defendants have infringed any of the asserted claims from the five patents-in-suit. Infringement is assessed on a claim-by-claim basis. And Stratasys, the Plaintiff, must show by a preponderance of the evidence that a claim has been infringed. As a result, there may be infringement as to one claim but no infringement as to another claim.

Also, there are a few different ways that a claim can be infringed, and I'll explain the requirements of each of these types of infringement to you in detail at the conclusion of the case. But in general, ladies and gentlemen, a defendant may infringe an asserted claim from one of the patents-in-suit by making, using, selling, or offering for sale in the United States, or importing into the United States, a product meeting all the requirements of that claim from the asserted patents or a product that practices

---

[4] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 121:23–127:3 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 162:20–167:23 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 12:7–17:2 (E.D Tex. March 21, 2019).

all of the required steps of that claim. Now, a defendant may also infringe by actively inducing others to infringe a claim from the asserted patents, or by contributing to another's infringement of the asserted patents, and I'll explain and provide you with more detailed instructions on these requirements for infringement at the conclusion of the case.

Now, you'll be asked to decide whether certain claims from the asserted patents are invalid. Invalidity, ladies and gentlemen, is a defense to infringement. As a result, even though the U.S. Patent and Trademark Office, the PTO, has allowed the asserted claims and even though an issued United States patent is presumed to be valid, you, the jury, must decide whether those claims are or are not invalid, after hearing all the evidence presented during this trial. You may find a patent claim to be invalid for a number of reasons, including because it is anticipated, because it is obvious, or because it is not supported by an adequate written description within the patent specification.

Now, for a claim to be invalid because it is anticipated, the Defendants must show by clear and convincing evidence that all of the elements of that claim are sufficiently described in a single previous printed publication or patent. As I mentioned, we call these items prior art. For a patent claim, however, to be invalid because it is obvious, the Defendants must show, again by clear and convincing evidence, that that claim would have been obvious to a person of ordinary skill in the field of the technology of the patent at the relevant time.

Now, you'll need to consider a number of questions in deciding whether the inventions claimed in the asserted patents are obvious, and I'll provide you with more detailed instructions on those questions at the conclusion of the trial. Now, another way that a claim can be found to be invalid is if there is a lack of an adequate written description. A patent might be invalid if its specification does not adequately describe the claimed invention in sufficient detail so that one of ordinary skill in the art can reasonably conclude that the inventor actually had possession of the invention they are claiming. Invalidity, ladies and gentlemen, is assessed and determined on a claim-by-claim basis. Accordingly, one claim might be invalid while another claim is not invalid. And you'll need to consider a number of questions in deciding whether the claims from the patents-in-suit contain a sufficient written description, are adequately enabled, and sufficiently definite. I'll provide you with more detailed instructions on this issue at the conclusion of the trial.

Now, if you decide that any of the claims from the asserted patents have been infringed, and they are not invalid, then you'll need to decide what amount of money damages should be awarded to the Plaintiff to compensate it for that infringement. Now, a damages award in a patent case must be adequate to compensate the patent holder for the infringement, and in no event may a damages award be less than what the patent holder would have received if it had been paid a reasonable royalty for the use of its patents. However, the damages that you might award, if any, are meant to compensate the patent holder; they are not meant to punish the Defendants. And you may not include in any damages award you might make an additional amount as a fine or a penalty over and above what is necessary to fully compensate the patent holder for the infringement. Also, ladies and gentlemen, damages cannot be speculative. Stratasys, the Plaintiff, must prove the amount of its damages for the alleged infringement by a preponderance of the evidence. However, the fact that I'm instructing you on damages now does not mean that Stratasys is or is not entitled to recover damages. And I'll give you more detailed instructions on the calculation of damages for the alleged infringement of the Defendants at the conclusion of the trial, including by giving you specific instructions at that time with regard to the calculation of a

8

reasonable royalty.

### E.    Credibility of Witnesses[5]

Now, you're going to be hearing from a number of witnesses over the trial of this case, and I want you to keep an open mind while you're listening to all the evidence and not decide any of the facts until you've heard all of the evidence and all of the witnesses.

Now, this is important, ladies and gentlemen. While the witnesses are testifying, remember you, the jury, will have to decide the degree of credibility and believability to allocate to each of the witnesses and all of the evidence.

So, while the witnesses are testifying, you should be asking yourselves things like this:

Does the witness impress you as being truthful?

Did he or she have a reason not to tell the truth?

Did he or she have any personal interest in the outcome of the case?

Does the witness seem to have a good memory?

Did the witness have the opportunity and ability to observe accurately the things that they've testified about?

Did the witness appear to understand the questions clearly and answer them directly?

And, of course, does the witness' testimony differ from the testimony of other witnesses?

And if it does, how does it differ?

These are some of the kinds of things you should be thinking about while you're listening to each of the witnesses over the course of this trial.

---

[5] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 127:4–128:1 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 167:24–168:24 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 17:3–18:3 (E.D Tex. March 21, 2019).

### F.    Expert Witnesses[6]

Also, ladies and gentlemen, I want to talk to you briefly about expert witnesses. When knowledge of a technical subject may be helpful to you, the jury, a person who has special training or experience in that particular field—we refer to them as an expert witness—is permitted to testify to you about his or her opinions on those technical matters. However, you're not required to accept any expert witness' opinions. It's up to you to decide whether you believe what any expert witness says or any witness, for that matter, whether you believe it's correct or incorrect, whether or not you want to believe it, and what amount of weight, if any, that you want to give to that testimony. Now, I anticipate that there will be expert witnesses testifying in support of each side in this case, but it will be up to you to listen to their qualifications when they testify and when they give an opinion and explain the basis for that opinion, you will have to evaluate what they say, whether you believe it, and to what degree, if any, that you want to give it weight. Remember, ladies and gentlemen, judging and evaluating the credibility and the believability of each and every witness is an important part of your job as jurors.

---

[6] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 128:2–23 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 168:25–169:22 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 18:3–19:4 (E.D Tex. March 21, 2019).

### G. <u>Deposition Testimony</u>[7]

Now, during the course of the trial, it's possible that there will be testimony from one or more witnesses that are going to be presented to you through what's called a deposition. In trials like this, it's difficult to get every witness to the courthouse in person to testify for you—before you live in open court. So before the trial begins, the lawyers for each side take the witnesses of each—take the depositions of each of the witnesses. In a deposition, a court reporter is present, the witness is sworn and placed under oath just as if he or she were personally in court, and then the parties through their counsel ask them questions, the witnesses answer those questions, and both the questions and the answers are recorded and transcribed. Not only are they written down, they are often recorded by video recordings or other mechanisms.

Now, it's important that over the course of the trial when a deposition witness is presented to you, for you to understand that you're going to be seeing portions of that video deposition that are selected and then put together for presentation to you. As a part of that, there will be certain glitches and skips and imperfections that you need to overlook. Let me explain this to you.

When a witness is deposed by the attorneys before the trial begins, depositions usually last up to seven hours. Now, when it comes time for the trial, the parties presenting that witness who's not here to testify live and is going to be presented to you through a deposition, the parties and their counsel may determine that there's, for example, 20 minutes of that seven hours that is really relevant and important for the jury to hear, and that 20 minutes may come from several different places within that seven-hour deposition.

So, the lawyers will pick and select and edit that deposition to pull out those important parts in their view, and then put them together as a new clip and present it to you by a video presentation during the trial. The fact that you may see a few glitches or imperfections as a part of that editing and recombining process is a small price to pay to otherwise being required to listen to seven hours of testimony to get 20 minutes of information. So when you see those video deposition clips, ignore the skips and irregularities, the different sounding voices. Focus on the material. Focus on the questions asked and the answers given. And understand by doing that, we're all saving a lot of time as opposed to the alternative. However, you need to understand that that deposition testimony is testimony in this case, and it's entitled to the same consideration insofar as possible, as you would give judging the credibility, weight, and other considerations of a live witness who testifies in person from the witness stand in open court.

---

[7] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 128:24–131:1 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 169:23–172:12 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 19:5–20:2 (E.D Tex. March 21, 2019).

## H.    Redactions[8]

Now, also, ladies and gentlemen, over the course of the trial it's possible you're going to be shown certain documents that have been admitted into evidence by the Court as exhibits, and some of these exhibits may have portions of them that have been redacted or blacked out. If you're shown an exhibit or document that has portions of it blacked out, there are two things to remember. Those redactions are there because the Court ordered them. The Court found that they were appropriate, and the Court directed the parties to black out or redact that section or sections of the document. The other thing to remember is not to focus on the redactions. Don't try to read what's before it and after it and guess what was blacked out. Focus on what is not redacted, focus upon what you can read and what it means, and ignore what has been redacted.

---

[8] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 131:2–17 (E.D. Tex. September 26, 2025).

13

## I.    <u>Ruling on Objections</u>[9]

Now, during the course of the trial, it's possible that the lawyers will raise objections from time to time, and when they do, the Court will issue rulings on those objections. Remember, it's the duty of an attorney to object when the other side purports to offer testimony or evidence that the objecting attorney believes is not proper under the rules of the Court, and you should understand that by allowing the testimony or other evidence to be introduced over the objection of an attorney, in so doing the Court does not, unless expressly stated, indicate to you any opinion as to the weight or effect of that evidence.

Also, you should know, ladies and gentlemen, that the Court has already made certain rulings in advance of the trial prohibiting references to certain matters over the course of the trial, because the Court's determined that they are not relevant, they are not germane, or that they're unacceptably prejudicial. Those rulings by the Court in advance of the trial to keep out certain types of information are called orders in limine. I doubt any of you have heard the word "limine" before. I don't want you to be confused if you do hear it over the course of the trial. You may hear this referred to as a motion in limine. You might hear it referred to as an abbreviated M-I-L, or MIL. All of that means it's regarding an area where the Court's determined that certain types of information should not come in, and if somebody purports to bring in information that would be in opposition to that limine order, I would expect the other side to object and I'll take that up. And if we get an objection that the other side is purporting to violate a limine order or a limine or a MIL, I don't want you confused by what that is. I'm just explaining to you that that's a type of information the Court has already found should be outside of the trial and not brought in before the jury, unless there are particular reasons why the Court would otherwise allow it.

Now, as I've told you, you, the jury, are the sole and only judges of the credibility and believability of each and every witness and what weight and effect to give to all of the evidence presented over this trial. I want to compliment the parties because in pretrial procedures long before today, the parties in working with the Court have gone through many of the issues that might otherwise have to come up before you during this trial, and those have already been dealt with and streamlined. All of the exhibits that are properly admissible that can be shown to you over the course of the trial have already been dealt with by the Court, and purported exhibits that are not admissible in the Court's view have already been excluded. So the offering of those documents and the process of hearing arguments and ruling on whether they are or are not admissible has already been handled in pretrial proceedings long before today, and been working with the lawyers for the parties, we have saved everybody, you especially, a lot of time. So when a document is offered to you as an exhibit over the course of the trial, you can understand it's already been determined by the Court to be admissible. If it weren't, you wouldn't be seeing it during this trial. And that process has saved us all a lot of time today and over the course of this week.

Even though the parties in working with the Court have streamlined many of these issues, it's

---

[9] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 131:18–135:4 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 172:13–175:20 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 20:11–23:11 (E.D Tex. March 21, 2019).

still possible that objections are going to arise over the course of the trial. If I should sustain an objection to a question addressed to a witness, you must disregard the question entirely and you may draw no inference from its wording or speculate or guess what the witness would have said if I had permitted them to answer the question. However, on the other hand, if I overrule an objection regarding a question addressed to a witness, then you should consider the question and the answer just like any other question and answer as if no objection had been made. You should also know, ladies and gentlemen, that the law of the United States permits a United States District Judge to comment to the jury regarding the evidence in a case, but such comments from the judge to the jury can be disregarded by the jury as they are only an expression of the judge's opinion. And as I've told you, it is you, the jury, not me, the judge, who will decide the credibility of the evidence and the facts and determine what the ultimate facts are in this case. So even though the law might permit me to comment to you on the evidence, as I told you during jury selection, I'm going to work very hard not to do that. It's my goal that you have no idea what I think about the evidence in this case, because determining the facts from the evidence is solely your responsibility and not mine.

**J.      Juror Notebooks[10]**

Now, the court reporter in front of me takes down everything that's said in the courtroom. That's why it's important for witnesses and lawyers not to talk at the same time. That written transcription of everything that's said is not going to be able to be printed and given to you during deliberations in the jury room. That means, ladies and gentlemen, you're not going to have the benefit of the transcript during your deliberations. You are going to have to rely on your memory of all the evidence that's presented over the course of the trial.

In a moment you're each going to be given a juror notebook, and in these notebooks you're going to find several things. I'll go over them with you. In the back of the notebooks, you'll find a brand-new legal pad that's been three-hole punched and can be used by you to take notes over the course of the trial. It's up to each juror to decide whether they want to take notes and how brief or detailed they want those notes to be. But, remember, any notes you take are for your own personal use and you still have to rely on your memory of the evidence, which is why you should pay close attention over the trial regarding the testimony of each and every witness. You should not abandon your own recollection and memory because some other juror's notes might indicate something different. Notes are to refresh your recollection of the evidence, and that's the only reason why you should be keeping them, if you decide to take notes over the course of the trial. I'm now going to ask our Court Security Officer to pass out these juror notebooks to the members of the jury.

If you look in these notebooks, you'll see that at the beginning you have a copy of each of the five patents-in-suit. They're lengthy documents. Those copies are printed on both sides of the page so that they won't be excessively large. But you have a complete copy of each of the five patents-in-suit.

Now, behind that, you will find a chart or a ledger regarding the case where there has been language from the asserted claims that the Court has interpreted or construed. On the left-hand side of that column will be the language from the claims that was at issue. And on the right-hand side corresponding to it on that ledger, you'll see the actual construction, sometimes called an interpretation or a definition, that the Court has already reached about that language from the claims. And as I've told you, you're required to take my definitions or constructions which I'm giving you there and apply it to that claim language throughout the trial, particularly with regard to the issues of infringement and invalidity.

Now, once you get past that ledger or chart regarding the interpretation of certain claim language, you're going to find a section of tabbed pages for the witnesses that are going to be presented or may be presented to you over the course of the trial. On each of those pages, you should find a head-and-shoulders photograph of the witness at the top of the page with their complete name underneath and then simply ruled lines for potential note taking. The Court has found over the course of time that it's very

---

[10] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 135:5–139:7 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 175:21–178:25 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 23:12–26:16 (E.D Tex. March 21, 2019).

helpful to the jury after a trial while you're deliberating to be able to go back and see a picture of each of the several witnesses that testified over the course of the trial. So those are there to refresh your recollection and to be used during your deliberations or to be used as a place to take notes, if you choose to, over the course of the trial.

Now, behind these tabbed witness pages, and we've tabbed them so you can find the names of the witnesses, I'm not sure they'll be called to testify in exactly the same order that they're in your notebooks. So that's why the pages are tabbed with their names so you can get there quickly. Now, behind these tabbed witness pages you should find, as I mentioned, a new legal pad that's been hole-punched and included so that you can take notes there during the trial, if you choose to. And in the front pockets of these notebooks, there should be a pen for note taking in case you don't have one readily available to you.

Now, these notebooks, ladies and gentlemen, should be in your possession at all times. They are not meant to be laying around where somebody else might be tempted to see what's in there or to have access to them. When you leave each day at the end of that day's portion of the trial, I'm going to ask you to take the notebooks with you to the jury room and leave them closed on the table overnight in the jury room so they'll be there the next morning. Over lunch breaks each day, I'll ask you to take those notebooks with you to the jury room and not leave them here in the courtroom over your lunch break.

Now, there will be times during the trial when we will have a recess, a short break, where it may be 10 or 12 minutes where everybody gets a chance to get a drink of water and stretch their legs and then continue. In those instances where it's a short recess, I may simply say at that point, ladies and gentlemen of the jury, you may close and leave your notebooks in your chairs. And in that case when you go to the jury room, you can simply leave your notebooks here in the jury box in your chairs because we won't be out of the courtroom very long and it will be a short break. But unless I give you instructions about leaving it behind in your chairs, when in doubt take it with you and keep it in your possession.

17

**K.     <u>Outline of Trial</u>**[11]

Now, in a minute you're going to hear opening statements from the lawyers for the competing parties. As I've told you, these opening statements are designed to give you a roadmap of what each side expects to offer by way of their evidence. And you should remember, ladies and gentlemen, throughout the trial that what the lawyers tell you is not evidence.

The evidence is the sworn testimony of the witnesses presented under oath either as live witnesses from the witness stand or as deposition witnesses as I've already explained that will be presented to you, as well as the exhibits that the Court has admitted into evidence already and will be shown to you during the trial. That's the evidence. Nothing else is evidence in the case. What the lawyers tell you is their impression of the evidence, and they have a duty to point out what they believe the evidence is. But, remember, what they tell you is not evidence itself.

Now, after the opening statements, the Plaintiff is going to proceed to present the Plaintiff's case-in-chief. They will call their witnesses and put on their evidence. Then after they've presented their case in chief, the Plaintiffs will rest their case in chief, the Defendants will put on their evidence and proceed with the Defendants' case-in-chief. And, finally, we'll see if there are or are not rebuttal witnesses from the Plaintiff after the Defendants have rested the Defendants' case-in-chief.

Now, after you've heard all of the evidence, I'll give you written instructions on the law that you are to apply, and then at that point counsel will present their closing arguments to you. After their closing arguments, then I will instruct you to retire to the jury room and to deliberate on your verdict.

---

[11] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 139:8–140:15 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 179:1–181:25 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 26:17–28:20 (E.D Tex. March 21, 2019).

**L.      Conclusion**[12]

As I mentioned earlier, until I instruct you to retire to the jury room and deliberate on your verdict, after the completion of closing arguments from both sides, only then are you permitted and, in fact, required to discuss the evidence in this case between you. Prior to that time, you're not to discuss the evidence among yourselves, as well as not to communicate with anybody else about the trial or anything related to it.

It is not a large courthouse, and there is one way in and out and that's through the front steps. It's just altogether likely, if not inevitable, that you're going to come in close contact with some of these people during the course of the trial. If you look out, the courtroom's almost full. There are very few, if any, people out here who are spectators, they are aligned with one side or the other in this case. So all of them are subject to not entering into any interaction with you, the jury. So if you should come in close contact with any of these people, don't be offended if they don't look at you or engage you in conversation, don't seem to be friendly or outgoing. They're simply doing what I've instructed them to do, because again, the only information that you should have when you retire to deliberate on your verdict must be limited to the evidence of the witnesses given under oath subject to cross examination and the exhibits which the Court has already determined are admissible under the rules of evidence; that's it, nothing else. So when they're not friendly and outgoing just remember they're doing what I instructed them to do and don't hold this against them.

So with these instructions, ladies and gentlemen, we're going to hear opening statements from the parties at this time.

---

[12] **AUTHORITY:** Adapted from *Headwater Research LLC v. Samsung Electronics Co.*, No. 2:23-cv-103, Preliminary Jury Instructions, Dkt. 470 (Trial Tr. Vol. 1) at 140:16–141:24 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Preliminary Jury Instructions, Dkt. No. 344, Tr. at 182:1–183:9 (E.D Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Preliminary Jury Instructions, Dkt. No. 105, Tr. at 28:21–29:16 (E.D Tex. March 21, 2019).

19