# EXHIBIT 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| Stratasys, Inc., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:24-cv-00644-JRG |
| Shenzhen Tuozhu Technology Co., Ltd., *et* | § | |
| | § | |
| *al.*, | § | |
| | § | |
| *Defendants*. | § | |

**JOINT PROPOSED FINAL JURY INSTRUCTIONS**

I. FINAL INSTRUCTIONS ..................................................................................... 1

    A. Introduction .......................................................................................... 1

    B. Credibility of Witnesses ....................................................................... 2

    C. Rulings on Objections ........................................................................... 3

    D. Discussions Out of the Presence of the Jury ......................................... 4

    E. Direct and Circumstantial Evidence ..................................................... 5

    F. Stipulated Facts .................................................................................... 6

    G. Deposition Testimony ........................................................................... 7

    H. Drawing Inferences .............................................................................. 8

    I. Witnesses ............................................................................................. 9

    J. Demonstrative Exhibits ...................................................................... 10

    K. Burdens of Proof ................................................................................ 11

    L. Positions of the Parties ....................................................................... 12

    M. Patent Claims ..................................................................................... 14

    N. Direct Infringement ............................................................................ 17

    O. Induced Infringement ......................................................................... 20

    P. Contributory Infringement .................................................................. 21

    Q. Willful Infringement ........................................................................... 22

    R. Invalidity ............................................................................................ 23

    S. Prior Art ............................................................................................. 24

    T. Printed Publication and Priority Date .................................................. 25

    U. Anticipation ........................................................................................ 27

    V. Prior Public Use ................................................................................. 28

    W. On-Sale Bar ........................................................................................ 29

    X. Obviousness ....................................................................................... 30

    Y. Person of Ordinary Skill in the Art ..................................................... 33

    Z. Invalidity – Enablement Requirement ................................................. 34

    AA. Invalidity – Written Description Requirement ..................................... 35

    BB. Invalidity – Patent Eligibility ............................................................. 36

    CC. [Bambu]: License and Exhaustion ...................................................... 39

      1. Express License ................................................................................. 39

2.    Patent Exhaustion.......................................................................39

DD.    Compensatory Damages – Patent Infringement ....................................40

EE.    Reasonable Royalty ..........................................................................42

FF.    False Advertising ..............................................................................48

GG.    Deliberations ....................................................................................50

## I.   **<u>FINAL INSTRUCTIONS</u>**

### A.   **<u>Introduction</u>**[1]

Ladies and gentlemen of the jury, you have now heard all the evidence in this case, and I will now instruct you on the law you must apply.

Each of you is going to have your own personal copy of these final jury instructions that I'm about to give you orally. You'll have these in written form for your review in the jury room when you retire to deliberate in a few minutes. Accordingly, there is really no need for you to take written notes on these final jury instructions unless you particularly want to do so.

It's your duty to follow the law as I give it to you. On the other hand, and as I've said before, you, the jury, are the sole judges of the facts in this case. Do not consider any statement I have made during the course of the trial or make during the course of these instructions as an indication that I have any opinion about the facts in this case.

Now, you are about to hear closing arguments from the attorneys for the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They're intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this verdict form to the jury room, and when you've reached a unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form to reflect your unanimous answers, date it, and it should be signed by your jury foreperson. Answer the questions in the verdict form as directed and from the facts as you find them to be. Do not decide who you think should win this case and then answer the questions accordingly to reach that result. Your answers and your verdict, ladies and gentlemen, must be unanimous.

In determining whether any of the facts have been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses regardless of who may have called them, and you may consider all the exhibits received and admitted into evidence regardless of who may have introduced them.

Remember, ladies and gentlemen, you the jurors are the sole and only judges of the credibility of all the witnesses and the weight and effect to give all of the evidence.

---

[1] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1040:8–1042:12 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 852:1–854:25 (E.D. Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 19:10–20:19 (E.D. Tex. November 27, 2013).

B. **Credibility of Witnesses**[2]

Now, in deciding the facts in this case, you may have to decide which testimony to believe and which testimony to not believe. You alone are to determine the questions of credibility or truthfulness of the witnesses, and in weighing the testimony of the witnesses, you may consider the witness's manner and demeanor as reflected on the witness stand but may not credit or penalize any witness based on their physical characteristics or language.

You may consider any feelings or interest they may have in the case and any bias or prejudice about the case that the witness may have, and you may consider the consistency or inconsistency of their testimony considered in the light of the circumstances.

Has the witness been contradicted by other evidence? Has he or she made statements at other times in other places contrary to what he or she said on the witness stand? You must give the testimony of each witness the amount of credibility and weight that you think it deserves. You must keep in mind, however, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth.

You must consider whether any misstatement is an intentional falsehood or a simple lapse of memory and what significance should be attached to that testimony.

Now, unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence you believe that single witness.

---

[2] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1042:9–1043:14 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 852:1–854:25 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 8:9–18 (E.D. Tex. March 21, 2019).

## C.    Rulings on Objections[3]

As I've told you previously, the attorneys in this case are advocates for their competing clients, and they have a duty to raise objections when they believe evidence is being offered that should not be admitted under the rules of the Court.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and you may draw no inference from its wording, and you may not speculate about what the witness would have said if he or she had been permitted to answer the question by the Court. On the other hand, ladies and gentlemen, if the objection was overruled by the Court, then you should treat the question and the answer just as you would treat any other question and answer as if the objection had not been.

Also, by allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate to you any opinion as to the weight or effect of such evidence.

---

[3] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1043:15–1044:8 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 856:6–25 (E.D. Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 21:1–15 (E.D. Tex. Aug. 28, 2018).

**D.      Discussions Out of the Presence of the Jury[4]**

Now, at times, ladies and gentlemen, during the trial, it's been necessary for the Court to talk with the attorneys outside of your hearing by asking you to retire to the jury room or by calling a recess and talking to them outside of your hearing while we were in recess, and you were out of the courtroom. This happens because during trial, sometimes things arise that do not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence or your hearing.

---

[4] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1044:9–16 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 857:1–10 (E.D. Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 21:16–23 (E.D. Tex. Aug. 28, 2018).

### E.      Direct and Circumstantial Evidence[5]

Now, there are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, ladies and gentlemen, the law makes no distinction between direct evidence or circumstantial evidence but simply requires that you find the facts based on the evidence presented during the trial, both direct and circumstantial.

---

[5] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1046:5–15 (E.D. Tex. September 26, 2025); *Solas Oled Ltd v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 857:11–22 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 9:20–10:8 (E.D. Tex. March 21, 2019).

**F.**    **Stipulated Facts**[6]

Now, the parties may have agreed or stipulated to some facts in this case. When the lawyers for both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the facts as proven.

---

[6] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1046:16–20 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 857:23–858:2 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 10:9–13 (E.D. Tex. March 21, 2019).

### G.      Deposition Testimony[7]

Also, certain testimony in this case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be personally present to testify from the witness stand physically, the witness' testimony may be presented under oath in the form of a deposition.

Before this trial began, the attorneys representing the parties in this case questioned these deposition witnesses under oath. The witnesses were sworn, a court reporter was present and recorded the testimony, both the questions and the answers. Deposition testimony, ladies and gentlemen, is entitled to the same consideration as the testimony given by a witness in person from the witness stand during the trial. Accordingly, you should determine the credibility and the importance of deposition testimony to the best of your ability just as if the witness had testified in person from the witness stand.

---

[7] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1044:23–1045:17 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 858:3–21 (E.D. Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 22:6–22 (E.D. Tex. November 27, 2013).

**H.    Drawing Inferences[8]**

Now, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience. Said another way, ladies and gentlemen, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case.

However, you should not base your decisions on any evidence not presented by the parties during the trial, including your own personal experiences with any particular 3D printers, 3D printer software, or 3D printer accessories.

---

[8] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1045:18–1046:4 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 858:22–859:8 (E.D. Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 22:23–23:6 (E.D. Tex. November 27, 2013).

8

## I.      **Witnesses**[9]

Unless I instruct you otherwise, and as I have told you, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after you consider all the evidence you believe that single witness.

Now, when knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, we call them expert witnesses, they are permitted to testify and to state opinions on those technical matters. However, ladies and gentlemen, you're not required to accept or believe any such opinion. As with any other witness, it's solely up to you to decide whether to rely on an expert witness' testimony and opinions or not.

---

[9] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1047:9–16 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 859:9–23 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 11:22–12:16 (E.D. Tex. March 21, 2019).

**J.        Demonstrative Exhibits[10]**

Now, certain things have been shown to you over the course of the trial that were illustrations. We call these types of things demonstrative exhibits. Often, we simply call them demonstratives for short. Demonstratives, ladies and gentlemen, are a party's description, picture, drawing, model, or something to describe an issue involved in the trial. Many times, these demonstratives were shown to you as slides on the monitors that are before you.

If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstratives, which are sometimes called jury aides, themselves are not evidence, but a witness's testimony concerning a demonstrative is evidence.

Demonstrative exhibits will not be available to you to view again during your deliberations in the jury room.

---

[10] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1046:21–1047:8 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 859:24–860:15 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 12:17–13:9 (E.D. Tex. March 21, 2019).

### K.    Burdens of Proof[11]

Now, in any legal action, facts must be proven by a required amount of evidence known as the burden of proof. The burden of proof in this case is on the Plaintiff for some issues, and it's on the Defendants for other issues. And there are two burdens of proof that you will apply in this case, the preponderance of the evidence and clear and convincing evidence.

The Plaintiff, Stratasys, Inc., who you've heard referred to throughout the trial simply as Stratasys, has the burdens of proving patent infringement and false advertising by a preponderance of the evidence. Stratasys also has the burdens of proving willful patent infringement and that the false advertising was willful by a preponderance of the evidence. Stratasys, additionally, has the burdens of proving its damages for patent infringement and damages for false advertising by a preponderance of the evidence.

A preponderance of the evidence, ladies and gentlemen, means evidence that persuades you, the jury, that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

The Defendants in this case, Shenzhen Tuozhu Technology Co., Ltd., Shanghai Lunkuo Technology Co., Ltd., BambuLab Limited, Tuozhu Technology Limited, and BambuLab USA Inc., who you have heard referred to throughout this case collectively as Bambu, have the burden of proving invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces, in your mind, an abiding conviction that the truth of the party's factual contentions is highly probable. Now, although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than the preponderance of the evidence standard. To meet the clear and convincing evidence standard, the Defendants must establish proof in your mind, as the jury, an abiding conviction in the truth of the matter.

Now, ladies and gentlemen, these two burdens of proof are not to be confused with the burden of proof known as beyond a reasonable doubt, which is the burden of proof applied in a criminal case. It is never applied in a civil case like this. You should not confuse clear and convincing evidence beyond a reasonable doubt. Clear and convincing evidence is not as high a burden, but it is a higher burden than the preponderance of the evidence.

---

[11] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1048:8–1049:23 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 860:16–860:20 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 13:10–15:9 (E.D. Tex. March 21, 2019).

### L.    **Positions of the Parties**[12]

Now, as I did at the start of the case, I'll first give you a summary of each side's contentions, and then I'll provide you with detailed instructions on what each party must prove to win on each of its contentions.

As I previously told you, this is an action for patent infringement, and this case concerns five United States patents:

- U.S. Patent No. 7,555,357, which you have heard referred to as the '357 Patent.
- U.S. Patent No. 9,421,713, which you have heard referred to as the '713 Patent.
- U.S. Patent No. 9,168,698, which you have heard referred to as the '698 Patent.
- U.S. Patent No. 10,556,381, which you have heard referred to as the '381 Patent.
- U.S. Patent No. 9,592,660, which you have heard referred to as the '660 Patent.

I will refer to these patents as the "Patents-in-Suit." I may also refer to them as the "Asserted Patents."

Now, Stratasys, the Plaintiff, contends that the Defendants, collectively referred to as Bambu, have infringed the following claims of the Patents-in-Suit:

- claims 1, 2, and 8 of the '357 Patent;
- claims 1, 5, 6, 16, and 17 of the '713 Patent;
- claims 1, 9, and 10 of the '698 Patent;
- claims 1 and 11 of the '381 Patent; and
- claims 1 and 7 of the '660 Patent.

These are the "Asserted Claims."

Stratasys seeks money damages from Bambu for allegedly infringing the asserted claims of the Patents-in-Suit by making, using, importing, selling, or offering for sale in the United States the accused products in this case.

The Plaintiff, Stratasys, further contends that the Defendants, Bambu, have actively induced others to infringe of the Patents-in-Suit. Stratasys also contends that Bambu has contributed to others' infringement of the Patents-in-Suit.

Stratasys further contends that Bambu's alleged infringement of the Patents-in-Suit has been willful.

The Defendants, Bambu, deny that they have infringed any of the asserted claims of the Patents-

---

[12] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1049:24–1051:24 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 862:21–866:6 (E.D. Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 26:25–30:14 (E.D. Tex. Aug. 28, 2018).

12

in-Suit. Bambu contends that during the term of the patent, they did not make, use, sell, or offer for sale within the United States or import into the United States any product that infringes any of the asserted claims of the Patents-in-Suit.

Bambu further denies that they have induced others to infringe the Patents-in-Suit. Bambu also denies that they have contributed to others' infringement of the Patents-in-Suit.

Bambu further denies that they have willfully infringed the Patents-in-Suit. Bambu also denies that Stratasys is entitled to any money damages.

Bambu further contends that the asserted claims of the Patents-in-Suit are invalid because they are anticipated by, or rendered obvious over, prior art. Bambu further contends that the asserted claims are invalid because they are not supported by the written description or lack enablement. Bambu also contends that certain asserted claims are invalid because they are directed to unpatentable subject matter.

Invalidity is a defense to infringement. Invalidity and infringement, however, are separate and distinct issues. Your job is to decide whether the Defendants have infringed any of the asserted claims and whether those claims are invalid. If you decide that any asserted claim has been infringed and is not invalid, you will then need to decide the amount of money damages to be awarded to the Plaintiff to compensate it for that infringement. If you decide that there was any infringement of the asserted patent and that such infringement was willful, your decision as to willfulness should not affect any damages that you might award. I will take willfulness into account later.

In addition to patent infringement, Stratasys contends that Bambu engaged in false advertising. Stratasys further contends that Bambu's alleged false advertising was willful.  Bambu denies that any of its advertising is false or misleading, it denies that Stratasys has been damaged from any alleged false advertising, and it further denies that its alleged false advertising was willful. If you decide that Bambu has engaged in false advertising, you will then need to decide the amount of money damages to be awarded to Stratasys to compensate it for the false advertising.

13

M.    **Patent Claims**[13]

Now, before you can decide many of the issues in this case, you'll need to understand the role of the patent "claims." The patent claims are the numbered sentences at the end of the patent. The claims are important because it is the words of the claims that define what a patent covers.

The figures and the text in the rest of the patent provide a description and/or examples of the invention, and they provide a context for the claims. But it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or cover less than any other claim. Therefore, what a patent covers depends in turn on what each of its claims covers.

You'll first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.

Now, the law says that it's my role to define the terms of the claims, and it's your role to apply my definitions to the issues that you're asked to decide in this case.

Accordingly, as I've explained to you at the start of the trial, I've already determined the meaning of certain claim terms in this case, and I've provided you with those definitions or constructions as to those terms in your juror notebooks. You must accept my definitions and my constructions of these words in the claims as being correct. It's your job to take these definitions and apply them to the issues that you're deciding, including the issues of infringement and invalidity.

Now, ladies and gentlemen, you should disregard any evidence presented at the trial that contradicts or is inconsistent with the constructions and the definitions that I have given you. And, again, these are in your juror notebooks.

For claim elements or limitations that I have not construed, that is, elements or limitations that I have not interpreted or defined, you are to use and apply the plain and ordinary meaning of the element or limitation as understood by one of ordinary skill in the art, which is to say in the field of technology of the patent at the time of the alleged invention.

The meaning of the words of the patent claims must be the same when deciding both the issue of infringement and the issue of validity.

---

[13] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1052:17–1056:20 (E.D. Tex. September 26, 2025); *Synqor, Inc. v. Vicor Corp.*, No. 2:14-cv-287-RWS-JBB, Final Jury Instructions, Dkt. No. 734, Tr. at 1859:19–1864:10 (E.D. Tex. October 26, 2022); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. At 866:7–871:17 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 16:13–21:21 (E.D. Tex. March 21, 2019); *SSL Servs., LLC v. Citrix Sys., Inc.*, Final Jury Instructions, No. 2:08-cv-158-JRG, Final Jury Instructions, Dkt. No. 272, Tr. 19:10–22:21 (E.D. Tex. June 27, 2012).

14

As I've already told you, you've been provided with a copy of the asserted patent, and these are inside your juror notebooks, and you may use them and refer to them during your deliberations.

I'll now explain how a claim defines what it covers. A claim sets forth in words a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements, then it is covered by and infringes the claim.

Now, there can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis.

In patent law, the requirements of a claim are often divided into parts, sometimes referred to as the "claim elements" or the "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or one element of a claim, the product is not covered by the claim. And if the product is not covered by the claim, that product does not infringe that claim.

Now, the beginning portion or "preamble" of a claim often uses the word comprising. The word "comprising," when used in a preamble of a claim, means including but not limited to or containing but not limited to. When comprising is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed, and that is true even if the accused product or instrumentality contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also and additionally contains other structures, such as leaves to expand the size of the tabletop or wheels to go on the ends of the legs.

Now, this case involves two types of patent claims, independent claims and dependent claims. An independent claim, ladies and gentlemen, sets forth all the requirements that must be met in order to be covered by the claim. Thus, it's not necessary to look at any other claim in the patent to determine what an independent claim covers. It is independent.

However, on the other hand, a dependent claim does not itself recite all the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim depends on another claim. A dependent claim incorporates all the requirements of the claim to which it refers, or as we sometimes say, from which it depends, and it adds its own additional requirements.

Now, to determine what a dependent claim covers, it's necessary to look at both the dependent claim itself and any other claim or claims from which it refers or from which it depends.

A product that meets all the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.

Now, if a person or a corporation makes, uses, sells, or offers to sell within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission,

15

that person or corporation is said to infringe the patent.

In reaching your decision on infringement, keep in mind, ladies and gentlemen, that only the claims of a patent can be infringed. You must compare the asserted patent claims as I have construed them for you to the accused products and determine whether or not there is infringement.

This is the only correct comparison.

You should not compare the accused products with any specific examples set out in the patent or with the prior art in reaching your decision on infringement. In deciding infringement, the only correct comparison is between the accused products and the limitations of the asserted claims as the Court has construed any claim language.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both sides during the course of the trial.

16

### N.    Direct Infringement[14]

I'll now instruct you about the specific rules you must follow to determine whether Stratasys has proven that Bambu has infringed one or more of the patent claims involved in this case.

If a person or corporation makes, uses, sells, or offers to sell within the United States, or imports into the United States what is covered by a patent claim without the patent owner's permission, that person or corporation is said to infringe the patent claim. A party "makes" a claimed invention when it combines all of the elements of the claims in the United States. A party "uses" a claimed system when it controls a system that combines all elements of the claims in the United States and obtains benefit from it. A party obtains a benefit from a system if it obtains a benefit from each and every element of the claimed system. A party does not have to exercise physical or direct control over each individual element of the system in order to use the claimed system.

[**Bambu**: Activity performed outside the country is not infringement under United States patent laws. You may not find Bambu liable for, or award damages based on, any making, using, selling, or offering to sell the accused product in other countries. The "use" of a claimed system occurs where the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained.[15]

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. To determine whether there is infringement, you must compare the Asserted Claims to the

---

[14] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1057:3–1059:25 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 871:18–873:13 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 21:22–22:23 (E.D. Tex. March 21, 2019); *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, No. 2:17-cv-00577-JRG, Final Jury Instructions, Dkt. No. 341, Tr. at 25:11–27:1 (E.D. Tex. February 21, 2019).

[15] **Bambu**: *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007) ("It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country."), 446 (noting the patent at issue were directed to an apparatus); *Deepsouth Packing Co., Inc. v. Laitram Corp.*, 406 U.S. 518, 525 n.7, 527, 531 (1972) ("Our patent system makes no claim to extraterritorial effect"), 20 (explaining patents were directed to machines—a "slitter" and a tumbler"), *superseded in part on other grounds,* 35 U.S.C. § 271(f); *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 650 (1915) (in case concerning patent directed to "grain drills," not method claims, noting: "Some of the drills, about 261, sold by the defendants, were sold in Canada, no part of the transaction occurring within the United States, and as to them there could be no recovery of either profits or damages."); *Brown v. Duchesne*, 60 U.S. (19 How.) 183, 195–96 (1856) ("And the use of it outside of the jurisdiction of the United States is not an infringement of his rights, and  he has no claim to any compensation for the profit or advantage the party may derive from it.").

17

Accused Products. This is the only correct comparison.[16]]

You should not compare the Accused Products to any specific examples set out in the patent or the prior art in reaching your decision on infringement.

You must determine whether or not there is infringement separately for each Asserted Claim. However, if you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers, either directly or indirectly, to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the accused product meets the additional requirements of any claims that depend from the independent claim. That is, you must separately decide whether any dependent claims that refer to that independent claim have been infringed.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

I will now instruct you on the specific rules you must follow to determine whether Stratasys has proven that Bambu has directly infringed the Asserted Claims involved in this case.  A patent can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it was doing was infringement of the claim. A patent may also be directly infringed even though the accused direct infringer believes in good faith that what it is doing is not infringement of the patent.

Now, in order to prove direct infringement of a patent claim, the Plaintiff, Stratasys, must prove by a preponderance of the evidence that the accused products include each and every limitation of the claim.

In determining whether an accused product directly infringes a patent claim in this case, you must compare the accused product with each and every one of the requirements or limitations in that claim to determine whether the accused product contains each and every requirement or limitation recited in that claim. If an accused product omits any element recited in a claim, then you must find that particular product does not infringe that claim.

Infringement does not require proof that a party copied the asserted claims. A claim requirement is literally present if it existed in an accused technology just as it is described in the claim language, either as I've explained the language to you, or as I've said, if I did not explain it, as it would be understood by

---

[16] **Bambu**: *Correct Transmission, LLC v. Nokia Corp.*, No. 2:22-CV-343-JRG, Dkt. No. 341 at 1247:16–21 (E.D. Tex. Nov. 22, 2024) ("In reaching your decision on infringement, keep in mind, ladies and gentlemen, that only the claims of a patent can be infringed. You must compare the asserted patent claims as I may have construed them for you to the accused Nokia products and determine whether or not there is infringement. This is the only correct comparison."); *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1234:18–23 (E.D. Tex. Jun. 20, 2024) (substantially identical); *Daingean Techs., Ltd. v. AT&T Corp.*, No. 2:23-CV-123-JRG, Dkt. No. 586 at 1283:5–19 (E.D. Tex. Sept. 27, 2025) (substantially identical).

its plain and ordinary meaning of one of skill in the art. If an accused technology omits any requirement recited in a claim, then you must find that the particular technology does not literally infringe that claim.

If you do not find that each limitation or element of a claim is literally met, then as to claim 1 of the '713 patent, you may still find infringement if you find each element is met under the Doctrine of Equivalents.

Under the doctrine of equivalents, the accused products infringe a claim if they contain elements or limitations corresponding to each and every element or limitation of the claim that it is equivalent to, even though not literally met by the accused products.

You may find that an accused product is equivalent to an element or limitation of a claim that is not literally met if a person having ordinary skill in the field of the technology of the patent would have considered the differences between them to be insubstantial or would have found that the accused product, one, performs substantially the same function; two, in substantially the same way; and, three, to achieve substantially the same result as the element or limitation of the claim.

In order for the structure or action to be considered interchangeable, the structure or action must have been known at the time of the alleged infringement to a person having ordinary skill in the field of the technology of the patent. Interchangeability, ladies and gentlemen, at the present time is not sufficient.

Now, in order to prove direct infringement under the doctrine of equivalents, the Plaintiff, Stratasys, must prove by a preponderance of the evidence that for each claim element or limitation that is not literally present in the accused products, the equivalent of that element or limitation is present.

19

## O.    Induced Infringement[17]

Now, the Plaintiff, Stratasys, also alleges that the Defendants, Bambu, are liable for infringement for actively inducing others to directly infringe the Asserted Patents. As with direct infringement, ladies and gentlemen, you must determine whether there has been active inducement on a claim-by-claim basis.

Bambu is liable for induced inducement of a claim only if Stratasys proves by a preponderance of the evidence that:

(1) The alleged infringing acts were actually carried out by others and directly infringed that claim;

(2) The Defendants took action during the time the Asserted Patents were in force intending to cause infringing acts by users of the accused products; and

(3) The Defendants were aware of the Asserted Patents and knew that the acts, if taken, would constitute infringement of the Asserted Patents or was willfully blind to that infringement.

Willful blindness is established if Bambu believed there was a high probability that the acts, if taken, would constitute infringement of the Asserted Claims, but deliberately avoided confirming that belief.

In order to establish induced infringement, it is not sufficient that the users directly infringe the claim.  Nor is it sufficient that the company accused of inducing users' direct infringement merely had knowledge or notice of an asserted patent or had been aware of the acts by another that allegedly constitute direct infringement. The mere fact that the company accused of inducing another's direct infringement had known or should have known that there was a substantial risk that someone else's acts would infringe is not sufficient. Rather, in order to find inducement, you must find that Bambu specifically intended or was willfully blind to that infringement by the users of the accused products.

---

[17] **AUTHORITY:** Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 873:14–874:19 (E.D. Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 39:12–40:5 (E.D. Tex. November 27, 2013).

**P.        Contributory Infringement**[18]

Stratasys alleges that Bambu is liable for contributory infringement by contributing to the direct infringement of the asserted claims by consumers. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Bambu is liable for contributory infringement of a claim if Stratasys proves by a preponderance of the evidence:

(1) Bambu sells, offers to sell, or imports within the United States a component of a product or an apparatus for use in a process during the time the asserted patents were in force;

(2) the component or apparatus has no substantial non-infringing use;

(3) the component or apparatus constitutes a material part of an invention claimed in an Asserted Patent;

(4) Bambu was aware of the asserted patents and knew that the products or processes for which the component has no other substantial use may be covered by a claim of one or more of the asserted patents or may satisfy a claim of the same patent under the Doctrine of Equivalents; and

(5) that use directly infringes the claim.

In order to prove contributory infringement, Stratasys, the Plaintiff, must prove each of the above requirements have been met by a preponderance of the evidence.

---

[18] **AUTHORITY:** Adapted from *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, No. 2:17-cv-00577-JRG, Final Jury Instructions, Dkt. No. 341, Tr. at 28:16–29:14 (E.D. Tex. February 21, 2019).

## Q.      **Willful Infringement**[19]

Now, in this case, the Plaintiff, Stratasys, also contends that Bambu has willfully infringed the asserted claims of the Asserted Patents. If you decide that Bambu has infringed a valid claim of the Asserted Patents, you must go on and address the additional issue of whether or not that infringement was willful.

Stratasys must prove willfulness by a preponderance of the evidence. In other words, you must determine whether it is more likely than not that the Defendants willfully infringed.  You may not determine that infringement was willful just because Bambu knew of the asserted patents and infringed them.

You may find that a defendant willfully infringed if you find that it acted egregiously, willfully, or wantonly. You may find the defendant's actions were egregious, willful, or wanton if it acted in reckless or callous disregard of or with indifference to the rights of Stratasys. A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that is known to it or was apparent to a reasonable person in its position. Your determination, ladies and gentlemen, of willfulness as to the asserted patent should incorporate the totality of the circumstances based on the evidence presented during the trial.

To determine whether Bambu acted willfully, consider all the facts and assess Bambu's knowledge at the time of the challenged conduct. Facts that may be considered include whether or not Bambu reasonably believed that it did not infringe or that the asserted patents were invalid.

Your determination of willfulness should incorporate the totality of the circumstances based on all the evidence presented during this trial. Willfulness can be established by circumstantial evidence. If you decide that any infringement was willful, again, that decision should not affect or impact any damages award that you might make. Again, the Court will take willfulness into account later if you find it.

---

[19] **AUTHORITY:** Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 874:20–876:7 (E.D. Tex. March 8, 2021); *Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-013140-JRG, Final Jury Instructions, Dkt. No. 498, Tr. at 48:20–49:13 (E.D. Tex. June 18, 2018).

### R.      Invalidity[20]

I'll now instruct you on the rules that you must follow in deciding whether or not Bambu has proven that any of the asserted claims of the asserted patents are invalid.

Patent invalidity is a defense to patent infringement.  The fact that the Patent Office grants a patent does not necessarily mean that any invention claimed by the patent in fact deserves the protection of a patent.  In this case you have the ultimate responsibility for deciding whether the asserted claims are valid or invalid.  To prove that any of the asserted claims are invalid, Bambu must persuade you by clear and convincing evidence [**Bambu**:, that is, you must conclude that it is highly probable that the claim is invalid].[21]

An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing the patent. This presumption of validity, ladies and gentlemen, extends to all issued United States patents.

Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each Asserted Claim whether that claim is invalid. If one claim of a patent is invalid, that does not mean that any other claim is necessarily invalid.

Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity. And in making your determination as to invalidity, you should consider each claim separately.

---

[20] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1060:1–1061:2 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 876:8–877:8 (E.D. Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 41:4–42:18 (E.D. Tex. Aug. 28, 2018).

[21] **Bambu**: *Headwater Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-103-JRG, Dkt. No. 456 at 1197:13–17 (E.D. Tex. July 14, 2025) ("To prove that any of the asserted claims are invalid, Samsung must persuade you by clear and convincing evidence--that is, you must conclude that it is highly probable that a claim is invalid.").

23

## S.    Prior Art[22]

Now, in patent law, a previous device, system, method, publication, or patent that predates the claimed invention is generally called "prior art" or a "prior art reference." Prior art may include items that were publicly known or have been used or offered for sale or references such as publications or patents that disclose the claimed invention or elements of the claimed invention.

To be prior art, an item or reference must have been made, known, used, sold, offered for sale, published, or patented before the "priority date" of the Asserted Patents.  An invention is known when the information about it was reasonably accessible to the public on that date.

Now, in evaluating the prior art to determine whether an invalidity defense has been proved by clear and convincing evidence, you may consider whether that prior art was or was not before the Patent Office. You may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Office did consider.

The Asserted Patents are entitled to different priority dates. The '357 Patent claims are entitled to a priority date of January 31, 2006. As I will explain, the parties dispute the priority date of the '713 Patent. However, the '713 Patent is entitled to a priority date of at least March 8, 2013. The '698 Patent and '381 Patent claims are entitled to a priority date of October 29, 2012. The '660 Patent claims are entitled to a priority date of December 17, 2014.

---

[22] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1061:3–1062:2 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 877:9–878:8 (E.D. Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 42:19–43:13 (E.D. Tex. Aug. 28, 2018).

24

T.        **Printed Publication and Priority Date**[23]

[**Stratasys:** A party may seek to establish that the date of the invention of a patent is earlier than the filing date of the application of the patent.

In this case, you must determine whether Stratasys has established an earlier date of invention for the claims of the '713 Patent, such that the Dual Extruder Printing Project is not prior art to the '713 Patent. Stratasys asserts that it actually reduced to practice the claimed inventions of the '713 Patent by at least November 2011. Stratasys is entitled to an earlier priority date as of the date the inventions were actually reduced to practice. A claimed invention is "actually reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose. The actual reduction to practice of a claim must include all the limitations recited by the claim.

The party asserting an earlier date of invention may seek to establish the date of invention through the testimony of the inventors of the patent, documents, and physical evidence. Circumstantial evidence of an independent nature, as well as testimony from someone other than the inventors, may also be considered. An inventor's own testimony regarding reduction to practice of the claimed invention must be sufficiently corroborated by independent evidence.

In deciding whether the inventor's testimony has been sufficiently corroborated, you must evaluate all pertinent evidence. Reliable evidence of corroboration preferably comes in the form of records made contemporaneously with the inventive and reduction to practice process.].[24]

[**Bambu**: There are two parts of making an invention. One is conception, the other is reduction to practice. First, the inventor has the idea of the invention. This is referred to as the conception of the invention.

Conception is the mental part of the inventive act, that is to say, the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would actually work.

Conception of the invention is complete when the idea is so clearly defined in the inventor's mind that if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation.

Secondly, the invention must have been reduced to practice. A reduction to practice can take one of two forms, actual reduction to practice or constructive reduction to practice.

---

[23] **AUTHORITY:** Adapted from AIPLA's Model Patent Jury Instructions, Instruction No. 6.5 (August 2025); The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4.3a-2 (May 2020).

[24] **Stratasys**: The only relevant issue is whether Stratasys has shown actual reduction to practice. As such, discussion about "conception," "diligence," and "constructive reduction to practice" can only serve to unnecessarily lengthen these instructions and potentially confuse the jurors.

25

The actual making of the invention is referred to as actual reduction to practice. An invention is said to be actually reduced to practice when it's made and shown to work for its intended purpose.

The actual reduction to practice of a claim must include all the limitations recited by the claim. The invention must have been sufficiently tested to demonstrate that it will work for its intended purpose.

Now, absent proof of actual reduction to practice, the date of reduction to practice is the date that the patent application was filed. This is referred to as the constructive reduction to practice date.

In the case of the '713 patent, the patent application was filed on March 8, 2013. Ordinarily, a reference dated before the patent application filing date is prior art to the patent claims.

There are two, however, circumstances under which a reference dated before the application filing date would not be prior art.

The first occurs when the inventor on the patent actually reduced the invention to practice before the date of the reference. A reference dated after the actual reduction to practice date is not prior art as to the patent claims.

The second circumstance under which a reference dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the prior art and exercised reasonable diligence from just before the date of the reference up to the date of the inventor's actual reduction to practice.

In that case -- or in that case, a reference date after the conception date would not be prior art as to the patent claims.

Now, reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Merely asserting diligence is not enough. A party must account for the entire period during which diligence is required.

However, interruptions necessitated by every day problems or obligations of the inventor or others working with him or her do not prevent a finding of diligence.

A party may seek to establish that the date of the invention of a patent is earlier than the filing date of the application of the patent. That party may seek to establish the date of invention through the testimony of the inventors of the patent, documents, and physical evidence.

Circumstantial evidence of an independent nature, as well as testimony from someone other than the inventors, may also be considered. An inventor's own testimony regarding conception and reduction to practice of the claimed invention must be sufficiently corroborated by independent evidence.

In deciding whether the inventor's testimony has been sufficiently corroborated, you must evaluate all pertinent evidence. Reliable evidence of corroboration preferably comes in the form of records made contemporaneously with the inventive and reduction to practice process.][25]

---

[25] *Solas OLED Ltd. v. Samsung Display Co., Ltd.*, No. 2:19-cv-00152-JRG, Dkt. No. 354 at 878:15–881:18 (E.D. Tex. Mar. 8, 2021)

26

**U.      Anticipation[26]**

I will now instruct you on how to determine whether any of the Asserted Claims of any of the Asserted Patents are invalid as anticipated.  In order for someone to be entitled to a patent, the invention must actually be "new."  In general, inventions are not "new" when the identical product, method, or process has been made, used, or disclosed before.

Bambu contends that some of the asserted claims are invalid because the claimed invention(s) are invalid because the claimed inventions are not "new." In other words, Bambu contends that the Asserted Claims are "anticipated" by prior art.

Anticipation requires that all of the requirements of a patent claim be disclosed in a single prior art reference or system. Also, the single prior art reference or system must disclose all elements of the claim arranged or combined in the same way as in the claim. Anticipation must be determined on a claim-by-claim basis. Bambu must prove by clear and convincing evidence that an Asserted Patent claim is anticipated by the prior art reference or system.

To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or inherently, to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention. Keep in mind that Defendants may not establish anticipation by arguing that the Accused Products practice the prior art, or by comparing the Accused Products to a prior art reference.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

---

[26] **AUTHORITY:** The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4.3b-1 (May 2020); adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1062:10–1063:23 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 882:5–883:12 (E.D. Tex. March 8, 2021).

27

## V.    Prior Public Use[27]

Bambu contends that [**Bambu**: the claims of the Asserted Patents] [**Stratasys**: claims ___ of the '698 and '381 patents] are invalid because the invention defined in those claims was publicly used by others in the United States before their priority dates.

The patent claims are invalid if the invention defined in those claims was publicly used by others in the United States before it was invented by Stratasys.

That invention was publicly used in the United States if an embodiment of the claimed invention was both: (1) accessible to the public or commercially exploited in the United States, and (2) ready for patenting.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. Factors relevant to determining whether a claimed invention was in public use include: the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation, even if the specifics of the invention are kept secret; and the circumstances surrounding any testing and experimentation. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.

To be a public use, the invention also must have been ready for patenting at the time of the alleged public use. An invention is ready for patenting either when (1) it is reduced to practice or (2) the inventor has prepared drawings or other descriptions of the invention sufficient to enable a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when the inventor(s) (1) constructed an embodiment or performed a process of the invention, and (2) determined that it would work for its intended purpose.

---

[27] **AUTHORITY:** Adapted from AIPLA's Model Patent Jury Instructions, Instruction No. 6.2.1 (August 2025).

### W.    On-Sale Bar[28]

Bambu contends that [**Bambu**: the claims of the Asserted Patents] [**Stratasys**: claims ___ of the '698 and '381 patents] are invalid because the invention defined in those claims was on sale in the United States before their priority dates.

Those patent claims are invalid if before the priority date an embodiment of the claimed invention was both (1) the subject of a commercial sale or offer for sale in the United States, and (2) ready for patenting.

A commercial offer for sale was made if another party could make a binding contract by simply accepting the offer. An invention was subject to an offer for sale if the claimed invention was embodied in an actual product and that product was commercially sold or offered for sale, even if it was done confidentially. It is not required that a sale was made, nor that the terms of the sale disclose the details of the invention.

The invention also must have been ready for patenting at the time of the sale or offer for sale. The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person of ordinary skill in the art to practice the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose.

---

[28] **AUTHORITY:** Adapted from AIPLA's Model Patent Jury Instructions, Instruction No. 6.3 (August 2025).

29

### X.    Obviousness[29]

Bambu also contends that the asserted claims of the Patents-in-Suit are invalid as being obvious. Even though an invention may not have been identically disclosed or identically described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of the technology of the patent at the time the invention was made.

Bambu in this case has the burden of establishing obviousness by showing by clear and convincing evidence that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the technology of the patent.

Now, in determining whether the claimed invention was obvious, you must consider the level of ordinary skill in the field that someone would have had as of the priority date, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

A patent claim with several elements, ladies and gentlemen, is not proved obvious merely by demonstrating that each of the elements was known. Most, if not all, inventions rely on the building blocks of prior art.

In considering whether a claimed invention was obvious, you must first determine the scope and content of the prior art.  The scope and content of the prior art for deciding whether the invention was obvious includes at least prior art in the same field in the claimed invention.  It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Further, the teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps, including logic, judgment, and common sense, that a person of ordinary skill in the art would employ.  A person of ordinary skill may be able to fit the teachings of multiple pieces of prior art together like pieces of a puzzle.  The person of ordinary skill in the art would have the capability of understanding the scientific and engineering principles applicable to the pertinent art.

In considering whether a claimed invention was obvious, you may but you are not required to find obviousness if you find at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way the claimed invention does, taking into account such factors as:

1. Whether the claimed invention was merely the predictable result of using prior art elements

---

[29] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1063:24–1068:16 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 889:2–884:11 (E.D. Tex. March 8, 2021); *Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-013140-JRG, Final Jury Instructions, Dkt. No. 498, Tr. at 56:7–59:16 (E.D. Tex. June 18, 2018).

according to their known function;

2. Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. Whether the prior art teaches or suggests the desirability of combining elements in the claimed invention;

4. Whether the prior art teaches away from combining elements in the claimed invention;

5. Whether it would have been obvious to try the combination of elements in the claimed invention, such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified predictable solutions; and

6. Whether the change resulted more from design incentives or other market forces.
If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so, this evidence would make it more likely that the claimed invention was obvious.

Prior art is not limited to the patents and published materials, but includes the general knowledge of a person of skill in the art in the field of the invention.  Also, Bambu does not need to show that one of ordinary skill would actually have combined the physical structures of the references.  A person of skill in the art need only be motivated to combine the teachings.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight; consider only what was known at the time of the invention. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teaching of the Asserted Patents.

In making these assessments, ladies and gentlemen, you should take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on the obviousness or not of the claimed invention. The following are possible secondary considerations but it's up to you to decide whether secondary considerations of non-obviousness exist at all, such as:

1. Whether the invention was commercially successful as the result of the merits of the claimed inventions rather than the result of design needs or market pressure, advertising, or similar activities;

2. Whether the invention satisfied a long-felt need;
3. Whether the inventor proceeded contrary to accepted wisdom in the field;
4. Whether others tried but failed to solve the problem solved by the claimed invention;
5. Whether others invented the invention at roughly the same time;
6. Whether others copied the claimed invention;
7. Whether others accepted licenses under the Patents-in-Suit because of the merits of the claimed invention;

31

8. Whether the claimed invention achieved unexpected results;

9. Whether others in the field praised the claimed invention;

10. Whether there were changes or related technologies or market needs contemporaneous with the invention; and

11. Whether persons having ordinary skill in the art in the invention expressed surprise or disbelief regarding the invention.

No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the inventions made as a whole.

These factors are relevant only if there was a connection or a nexus between the evidence and the patented invention. Stratasys, the Plaintiff, has the burden of establishing this connection or nexus. Moreover, even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other evidence in the case in determining whether Bambu has proven that the invention would have been obvious.

If you find that Bambu has proven the obviousness of a claim by clear and convincing evidence, then you must find that that claim is invalid. If you find that Bambu has failed to prove by clear and convincing evidence that a claim was obvious, you must find that the claim is not invalid.

### Y.    Person of Ordinary Skill in the Art[30]

Now, several times in these instructions, ladies and gentlemen, I refer to a person of ordinary skill in the field of the invention. It's up to you to decide the level of ordinary skill in the field of technology of the patent and what it is.

In deciding this, you should consider all the evidence introduced at trial, including but not limited to:

1. The levels of education and experience of persons working in the field;
2. The types of problems encountered in the field;
3. Prior art solutions to those problems;
4. The rapidity of which innovations are made; and
5. The sophistication of the technology.

A person of ordinary skill in the art is a hypothetical person who is presumed to have known all of the relevant prior art at the time of the claimed invention.

In considering whether the claimed invention was obvious, you should first decide the scope and content of the prior art. The scope and content of the prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

---

[30] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1051:25–1052:16 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 890:1–891:15 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 24:18–25:14 (E.D. Tex. March 21, 2019).

## Z.    Invalidity – Enablement Requirement[31]

Now, the Defendants, Bambu, contend that certain asserted claims of the Patents-in-Suit are invalid as lacking enablement. To succeed, Bambu must show by clear and convincing evidence that the patents' specifications do not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of the effective filing date without undue experimentation. If a patent claim is not enabled, it is invalid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention. Thus, a patent need not expressly state information that persons of ordinary skill in that field would be likely to know or could obtain without undue experimentation.

Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include the following:

(1) The quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques;

(2) The amount of direction or guidance disclosed in the patent;

(3) The presence or absence of working examples in the patent;

(4) The nature of the invention;

(5) The state of the prior art;

(6) The relative skill of those in the art;

(7) The predictability of the art; and

(8) The breadth of the claims.

No one or more of these factors is alone dispositive.  Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the effective filing date, whether a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

---

[31] **AUTHORITY:** Adapted from The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4.2b (May 2020).

34

## AA.   Invalidity – Written Description Requirement[32]

Bambu also contends that the asserted claims of the patents-in-suit are invalid for failure to provide an adequate written description of the full scope of the claimed invention. Bambu bears the burden of establishing by clear and convincing evidence that the specification fails to satisfy the written description requirement.

A patent must also contain a written description of the product or method claimed in the patent. The written description requirement helps ensure that the patent applicant actually invented the claimed subject matter. [**Bambu**: The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently.][33]

When determining whether the specification discloses the invention, the claim must be viewed as a whole. The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize from reading the patent specification that the inventor possessed the subject matter finally claimed in the patent. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims may have changed or new claims have been added since that time.

The exact words found in the claim need not be used in the specification. It's unnecessary to spell out every detail of the invention in the specification, and specific examples are not required. Enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.

The written description requirement may be satisfied by a combination of words, structures, figures, diagrams, formulas, et cetera, contained in the patent application. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1. The nature and scope of the patent claims;
2. The complexity, predictability, and maturity of the technology at issue;
3. The existing knowledge in the relevant field; and
4. The scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or group of claims.

---

[32] **AUTHORITY:** Adapted from AIPLA's Model Patent Jury Instructions, Instruction No. 9 (August 2025); The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4.2a (May 2020).

[33] **Bambu**: *Headwater Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-103-JRG, Dkt. No. 456 at 1206:16–18 (E.D. Tex. July 14, 2025); *Correct Transmission, LLC v. Nokia Corp.*, No. 2:22-CV-343-JRG, Dkt. No. 341 at 1257:18–20 (E.D. Tex. Nov. 22, 2024).

## BB.    Invalidity – Patent Eligibility[34]

I'll now instruct you about the rules that you must follow in deciding whether or not Bambu has proven that certain asserted patents are ineligible for patent protection.

To succeed on its claims for patent ineligibility, Bambu must establish two things. The first is whether the claims are directed to an abstract idea. [**Bambu**: The Court has already determined] [**Stratasys**: Defendants contend] that claims 1, 2, and 8 of the '357 Patent are directed to the abstract idea of determining an optimized path. You, the jury, will decide the second question related to patent ineligibility. Specifically, and in that regard, Bambu must show that the claims involve nothing more than the performance of activities which a person of ordinary skill in the art would have considered well-understood, routine, and conventional at the time the patent application was filed. You, the jury, will determine this issue.

To meet its burden on this issue, Bambu must show by clear and convincing evidence that the [**Bambu**: asserted claims][35] [**Stratasys**: limitations of the claims of the [insert] patents] involve only [**Bambu**: technology][36] [**Stratasys:** activities][37] which a person of ordinary skill in the art would have

---

[34] **AUTHORITY:** Adapted from *Ollnova Technologies, Ltd. v. Ecobee, Inc.*, No. 2:22-cv-00072-JRG Final Jury Instructions, Dkt. No. 279, Tr. at 1239:15–1241:12 (E.D. Tex. June 20, 2024); *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 n.11 (Fed. Cir. 2025).

[35] **Bambu**: *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1240:16–20 (E.D. Tex. Jun. 20, 2024) ("To meet its burden on this issue, ecobee must show by clear and convincing evidence that *the asserted claims of the '495 patent* involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of April the 9th, 2004."); *Infernal Tech., Inc. v. Sony Interactive Entertainment, LLC*, No. 2:19-CV-248-JRG, Dkt. No. 355 at 34:10–14 (E.D. Tex. Dec. 3, 2021) ("To meet its burden on this issue, Defendant must show by clear and convincing evidence that the asserted claims involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional, as of March the 12th, 1999.").

[36] **Bambu**: *G+ Comm'cns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Dkt. No. 592 at 67:11–17 (E.D. Tex. Feb. 2, 2024) ("If the evidence shows by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and as an ordered combination, *involve* only *technology* which a person of ordinary skill in the art would have considered are well-understood, routine, and conventional, then this element of patent ineligibility has been established.").

[37] **Stratasys**: *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 490 at 118:9-13 (E.D. Tex. Aug. 12, 2020) ("[I]f the Court determines that a patent is also directed toward an abstract idea, then the jury must determine whether the patent covers only the activities that are well-understood, routine, and conventional at the time the patent was filed."); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 850 at 6 (E.D. Tex. Feb. 12, 2026); *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 (Fed. Cir. 2025) ("At *Alice* step two, the court must examine the elements of each claim, both individually and as an ordered combination, to determine whether it contains an 'inventive concept,' beyond what was 'well-

36

considered to be well-understood, routine, and conventional as of their priority dates. The abstract idea cannot contribute to demonstrating that the [**Bambu**: technology was][38] [**Stratasys:** activities were][39] not well-understood, routine, and conventional. However, the mere fact that something was known in the art at the time does not necessarily mean that it was well-understood, routine, and conventional. Rather, the test is whether, in view of all the evidence, a person of ordinary skill in the art would have considered the claim [**Stratasys**: limitations other than the invention's use of the abstract idea][40] to

---

understood,' 'routine,' and 'conventional,' that transforms the nature of the claim into a patent-eligible application.") (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014)).

[38] **Bambu**: *G+ Comm'cns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Dkt. No. 592 at 67:11–17 (E.D. Tex. Feb. 2, 2024) ("If the evidence shows by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and as an ordered combination, ***involve*** only ***technology*** which a person of ordinary skill in the art would have considered are well-understood, routine, and conventional, then this element of patent ineligibility has been established.").

[39] **Stratasys**: *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 490 at 118:9-13 (E.D. Tex. Aug. 12, 2020) ("[I]f the Court determines that a patent is also directed toward an abstract idea, then the jury must determine whether the patent covers only the activities that are well-understood, routine, and conventional at the time the patent was filed."); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 850 at 6 (E.D. Tex. Feb. 12, 2026); *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 (Fed. Cir. 2025) ("At *Alice* step two, the court must examine the elements of each claim, both individually and as an ordered combination, to determine whether it contains an 'inventive concept,' beyond what was 'well-understood,' 'routine,' and 'conventional,' that transforms the nature of the claim into a patent-eligible application.") (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014)).

[40] **Stratasys**: *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 n.11 (Fed. Cir. 2025) ("If on remand the district court chooses to have the jury decide whether what Optis alleges is the inventive concept is well-understood, routine, and conventional, then the jury should be instructed what the abstract idea is (i.e., a mathematical formula) and that the abstract idea cannot contribute to the inventive concept.").

**Bambu**: Stratasys's proposed instruction is confusing, redundant, and over-emphasizes an instruction already agreed upon by the Parties.

37

involve only [**Bambu**: technology][41] [**Stratasys:** activity][42] that was well-understood, routine, and conventional as of their priority dates.

You should consider all the evidence presented during this trial, including the testimony of the witnesses as well as the exhibits introduced, including the specifications within the Patents-in-Suit. If the evidence shows by clear and convincing evidence that the elements of the asserted claims, when taken individually or when taken as an ordered combination, [**Bambu**: involve] [**Stratasys**: recite] only [**Bambu**: technology] [**Stratasys**: activities][43] which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional, then this second question of patent ineligibility has been established.

---

[41] **Bambu**: *G+ Comm'cns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Dkt. No. 592 at 67:11–17 (E.D. Tex. Feb. 2, 2024) ("If the evidence shows by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and as an ordered combination, *involve* only *technology* which a person of ordinary skill in the art would have considered are well-understood, routine, and conventional, then this element of patent ineligibility has been established.").

[42] **Stratasys**: *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 490 at 118:9-13 (E.D. Tex. Aug. 12, 2020) ("[I]f the Court determines that a patent is also directed toward an abstract idea, then the jury must determine whether the patent covers only the *activities* that are well-understood, routine, and conventional at the time the patent was filed."); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 850 at 6 (E.D. Tex. Feb. 12, 2026); *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 (Fed. Cir. 2025) ("At *Alice* step two, the court must examine the elements of each claim, both individually and as an ordered combination, to determine whether it contains an 'inventive concept,' beyond what was 'well-understood,' 'routine,' and 'conventional,' that transforms the nature of the claim into a patent-eligible application.") (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014)).

[43] **Stratasys**: *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 490 at 118:9-13 (E.D. Tex. Aug. 12, 2020) ("[I]f the Court determines that a patent is also directed toward an abstract idea, then the jury must determine whether the patent covers only the *activities* that are well-understood, routine, and conventional at the time the patent was filed."); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 850 at 6 (E.D. Tex. Feb. 12, 2026); *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 (Fed. Cir. 2025) ("At *Alice* step two, the court must examine the elements of each claim, both individually and as an ordered combination, to determine whether it contains an 'inventive concept,' beyond what was 'well-understood,' 'routine,' and 'conventional,' that transforms the nature of the claim into a patent-eligible application.") (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014)).

### CC.    [Bambu]: License and Exhaustion[44]

Bambu contends it is licensed to practice the '357 patent under two independent defenses: (1) an express patent license under Section 11 of the AGPLv3; and (2) patent exhaustion. If Bambu proves either theory by a preponderance of the evidence, Bambu is licensed and cannot infringe.

#### 1.    Express License

Section 11 of the AGPLv3 grants each downstream recipient "a non-exclusive, worldwide, royalty-free patent license under the contributor's essential patent claims, to make, use, sell, offer for sale, import and otherwise run, modify and propagate the contents of its contributor version." A contributor's "essential patent claims" are all claims the contributor owns or controls that would be infringed by making, using, or selling the contributor version.

Bambu must show that (1) Stratasys, or a party whose acts bind Stratasys, contributed to or distributed software under the AGPLv3; (2) the software embodies one or more asserted claims; and (3) the functionality accused by the '357 patent derives from that software.

#### 2.    Patent Exhaustion

Bambu must show by a preponderance of the evidence that (1) that the distributed product substantially embodies the '357 patent, and (2) Bambu is an authorized acquirer of the product.

The product substantially embodies the '357 patent if (1) the distributed article had no reasonable and intended noninfringing use, and (2) the distributed article embodied all the essential or inventive features of the '357 patent.

If Bambu proves both prongs, Stratasys's patent rights are exhausted upon that authorized distribution.

---

[44] **Stratasys:** Bambu provided the section titled "License and Exhaustion" at 9pm ET on the date of filing and cited no supporting law or similar prior instructions. As such, Stratasys reserves the right to propose alternative language and additional objections after the initial filing of these proposed instructions. Furthermore, this entire section is irrelevant and should be excluded if the Court grants Stratasys's pending motion for summary judgment against Bambu's license defense.

### DD.    Compensatory Damages – Patent Infringement[45]

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Bambu infringed any asserted claims, and those claims are not invalid, you must then consider what amount of damages to award to Stratasys. If you do not find infringement by Bambu or you find that all the infringed claims are invalid, you will not consider patent damages at all.

Stratasys has the burden to establish the amount of its damages by a preponderance of the evidence. [**Bambu**: In other words, you should award only those damages that Stratasys establishes that it more likely than not suffered as a result of Bambu's infringement if you find infringement.][46, 47] While Stratasys is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. Stratasys is not entitled to damages that are remote or that are only speculative.

The damages you award must be adequate to compensate Stratasys for any infringement you may find. However, you may not award Stratasys more damages than are adequate to compensate for the infringement, nor should you include any additional amount for purposes of punishing Bambu or setting an example.

Your damages award, if you reach this issue, should put Stratasys in approximately the same financial position that it would have been in had the infringement not occurred. Under the law, this means that if Bambu infringes, Stratasys would be entitled to recover at least a reasonable royalty for each

---

[45] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1068:17–1069:9 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG Final Jury Instructions, Dkt. No. 354, Tr. at 891:16–892:12 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 28:10–29:14 (E.D. Tex. March 21, 2019).

[46] **Bambu**: *Correct Transmission, LLC v. Nokia Corp.*, No. 2:22-CV-343-JRG, Dkt. No. 341 at 1259:2–5 (E.D. Tex. Nov. 22, 2024) ("In other words, you should award only those damages that Correct Transmission establishes that it more likely than not suffered as a result of Nokia's infringement if you find infringement."); *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1249:22–25 (E.D. Tex. Jun. 20, 2024) (substantially identical); *Daingean Techs., Ltd. v. AT&T Corp.*, No. 2:23-CV-123-JRG, Dkt. No. 586 at 1283:5–19 (E.D. Tex. Sept. 27, 2025) (substantially identical); *Daingean Techs., Ltd. v. AT&T Corp.*, No. 2:23-CV-123-JRG, Dkt. No. 586 at 1291:15–18 (E.D. Tex. Sept. 27, 2025) (substantially identical); *Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-495-JRG-RSP, Dkt. No. 574 at 1336:14–17 (E.D. Tex. Oct. 31, 2025) (substantially identical).

[47] **Stratasys**: Bambu's instruction serves to confuse the issues between lost profits damages (not at issue for patent infringement) and reasonable royalty damages (at issue). Under reasonable royalty analysis, Stratasys does not need to "establish[] that it more likely than not suffered [monetary damages] as a result of Bambu's infringement" in the manner Bambu asserts.

infringing sale or use of its inventions.

EE.    **Reasonable Royalty**[48]

I will now instruct you on how to calculate reasonable royalty damages, if you find damages are appropriate to award in this case.

Stratasys seeks damages in the form of a reasonable royalty.  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of money that Stratasys and Bambu would have agreed to in a hypothetical license negotiation taking place at a time just prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the Asserted Patents were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

[**Bambu**: The law requires that any royalty awarded to Stratasys correspond to the value of the patented invention within the Accused Product, as distinct from other unpatented features.  This is particularly true where the Accused Products have multiple features and multiple components not covered by the patent or where the Accused Products work in conjunction with other non-patented items.][49]

---

[48] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1069:10–1074:25 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG Final Jury Instructions, Dkt. No. 354, Tr. at 892:13–901:2 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 29:15–33:12 (E.D. Tex. March 21, 2019); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 51:5–59:13 (E.D. Tex. Aug. 28, 2018).

[49] **Bambu:** *Correct Transmission, LLC v. Nokia Corp.*, No. 2:22-CV-343-JRG, Dkt. No. 341 at 1259:2–5 (E.D. Tex. Nov. 22, 2024) ("Now, the law requires that any damages awarded to Correct Transmission correspond to the value of the alleged inventions within the accused products, as distinct from other, unpatented features of the accused products, or other factors such as marketing or advertising, or either party's size or market position. And this is particularly true where the accused products have multiple features and multiple components not covered by the patents or whether the accused product works in conjunction with other non-patented items."); *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1249:22–25 (E.D. Tex. Jun. 20, 2024) ("The law requires that any royalty awarded to Ollnova correspond to the value of the alleged inventions within the accused product, as distinct from other unpatented features of the

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused products or other factors such as marketing or advertising or size or market position.  A royalty compensating Stratasys for damages must reflect the value attributable to the infringing features of the accused products and nothing more.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features.  [**Bambu**: You may not award damages based on Bambu's revenue from products that you do not find have infringed.[50] Stratasys's evidence must be reliable and tangible; it can't be speculative.[51]]

[**Bambu**: A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the first infringement began.][52, 53] If you find that Stratasys is entitled to damages, both

---

accused product. This is particularly true where the accused products have multiple features and multiple components not covered by the patent or where the accused products work in conjunction with other non-patented items.").

[50] **Bambu**: *Headwater Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-103-JRG, Dkt. No. 456 at 1197:13–17 (E.D. Tex. July 14, 2025) ("You may not award damages based on Samsung's revenue from products that you do not find have infringed.").

[51] **Bambu**: *Implicit, LLC v. Netscout Sys., Inc.*, No. 2:18-CV-53-JRG, Dkt. No. 240 at 31:15–19 (E.D. Tex. Dec. 18, 2019) ("That is, Implicit must give evidence tending to separate and apportion between the patented features and the unpatented features. And such evidence must be reliable and tangible and not conjectural or speculative."); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-CV-912-JRG-RSP, Dkt. No. 45 at 40:19–24 (E.D. Tex. Oct. 6, 2016) ("Core Wireless bears the burden to establish the amounts attributable to the patented feature; that is, Core Wireless must give evidence tending to separate or apportion between the patented features and the unpatented features and such evidence must be reliable and tangible and not conjectural or speculative.").

[52] **Bambu:** *Correct Transmission, LLC v. Nokia Corp.*, No. 2:22-CV-343-JRG, Dkt. No. 341 at 1259:20–24 (E.D. Tex. Nov. 22, 2024) ("A reasonable royalty, ladies and gentlemen, is the amount of royalty payment that a patent owner and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the infringement first began."); *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1250:14–17 (E.D. Tex. Jun. 20, 2024) ("A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when infringement first began."); *Daingean Techs., Ltd. v. AT&T Corp.*, No. 2:23-CV-123-JRG, Dkt. No. 586 at 1292:12–16 (E.D. Tex. Sept. 27, 2025) ("A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when infringement first began.").

[53] **Stratasys**: This is redundant with what is stated in the second paragraph of this section.

43

Stratasys and Bambu contend that the parties would have agreed to a running royalty at the time of the hypothetical negotiations for the '357, '713, '698, and '381 patents. A running royalty is a fee paid for the right to use the patent that is paid for each unit of the infringing products that have been sold. If there are additional units sold in the future, any damages for these sales will not be addressed by you but may be addressed by the Court. The damages you award, if any, for the '357, '713, '698, and '381 patents should reflect the total amount necessary to compensate Stratasys for Bambu's past infringement.

However, the parties dispute the proper form of a royalty with respect to the '660 patent. Stratasys contends that the parties would have agreed to a running royalty at the time of the hypothetical negotiation, while Bambu contends that the parties would have agreed to a lump-sum royalty. If you find that Stratasys is entitled to damages for the '660 patent, you must then decide whether the parties would have agreed to a running royalty or to a fully paid-up lump-sum royalty at the time of the hypothetical negotiation with respect to this one patent. A lump-sum royalty is where the infringer pays a single amount, paid all at once, for a license covering both past and future infringing sales. If you decide that a lump sum is appropriate, then the damages you award, if any, should reflect the total amount necessary to compensate Stratasys for Bambu's past and future infringement.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are as follows:

1. the royalties received by the patentee for licensing of the Patents-in-Suit proving or tending to prove an established royalty;

2. the nature and scope of the license as exclusive or non-exclusive or as restricted or non-restricted in terms of territory or with respect to whom the manufactured products may be sold;

3. the patent owner's established policy and marketing program to maintain his or her patent exclusivity by not licensing others to use the invention or by granting licenses under special positions designed to preserve that exclusivity;

4. the duration of the patent and the term of the license;

5. the established profitability of the product made under the patent, its commercial success, and its current popularity;

6. the portion of the profit or selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

7. the portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

8. the testimony and opinions of qualified experts;

9. the amount that a licensor, such as the patent owner, and a licensee, such as the infringer, would

have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement, that is, the amount which a prudent licensee who desired as a business proposition to obtain a license to manufacture and sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit which amount would have been acceptable to a prudent patentee who was willing to grant a license;

10. the utility and advantages of the patented invention over the old modes or devices, if any, that had been used for working out similar results;

11. the extent to which Defendants have made use of the invention, and any evidence probative of the value of that use;

12. the nature of the patented invention, the character of the commercial embodiment of it as owned or produced by the licensor, and the benefits to those who have used the invention;

13. the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

14. the rates paid by a licensee for the use of other patents comparable to the Patents-in-Suit; and

15. the commercial relationship between Stratasys and Bambu, such as whether they are competitors in the same territory in the same line of business.

Now, none of these factors, ladies and gentlemen, are dispositive, and you can and you should consider the evidence that's been presented to you in this case on each of these factors. You may have heard these factors referred to during the trial as the *Georgia-Pacific* factors.  You may consider any other factors that in your minds would have increased or decreased the royalty the infringer would have been willing to pay, and the patent owner would have been willing to accept acting as normally prudent businesspeople.

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the Asserted Patents or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would have been negotiated between Stratasys and Bambu in order for you to consider it.  However, if you choose to rely upon evidence from license agreements, you must account for any differences between those licenses and the hypothetically negotiated license in terms of the technology and economic circumstances of the contracting parties when you make your reasonable royalty determination.

In determining a reasonable royalty, you may also consider whether Bambu had commercially acceptable non-infringing alternatives to taking a license from Stratasys that were available at the time of the hypothetical negotiation, and whether that would have affected the reasonable royalty the parties would have agreed upon.

A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or comparable result that does not require using the asserted claims. You may

45

compare the patented invention to non-infringing alternatives to determine the value of the patented invention, including the utility and advantages of the patent over the old modes or devices, if any, that have been used to achieve similar results.

In calculating damages, you must consider whether or not Stratasys or its licensees marked its own products that practice the Asserted Patents, if any such products existed, by placing on or within those products the word "patent" or PAT, period, or the Asserted Patents' numbers. [**Stratasys**: I have already determined that Stratasys was not required to mark the '713, '698, and '357 patents.] [**Bambu**: The parties agree that Stratasys has not marked its products with the '381 and '660 patents.][54] [**Stratasys:** For any products that Bambu asserts practice any Asserted Patents,] Stratasys has the burden to prove by a preponderance of the evidence that it or its licensees products do not practice any of the '381 and '660 patents.][55] To the extent Stratasys has proven that it or its licensees do not have a product that practices an Asserted Patent, Stratasys does not need to demonstrate that it marked its products for that patent. In such case, the damages period for the '357, '713, and '660 patents begins on May 31, 2022, and for the '698 and '381 patents begins on September 20, 2023.

If you find Stratasys or its licensees failed to properly mark their respective products with the '381 and '660 patents, [**Bambu**: then you may only award damages to Stratasys for infringement of the '357, '381, and '660 patents that occurred after Stratasys served the complaint filed in this lawsuit on August 10, 2024.][56]  [**Stratasys**: then you may only award damages to Stratasys for infringement of the

---

[54] **Bambu:** Stratasys's proposed instruction incorrectly states that the Court has "determined that Stratasys was not required to mark the '713, '698, and '357 patents." However, the Court has not made such a determination in this case. Rather, Bambu's proposed instruction correctly frames the issue: marking is only at issue for the '381 and '660 patents.

**Stratasys**: First, Stratasys's proposed instruction correctly states the law, which clearly establishes that no marking obligation applies to patents that contain only method claims. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) ("The law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method."). Second, Bambu's construction misstates the facts and attempts to fabricate a concession where none exists—multiple products have been marked with the '381 Patent. *See* (Dkt. No. 311-5 at 4-5).

[55] **Bambu**: *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1256:18–25 (E.D. Tex. Jun. 20, 2024) ("ecobee contends that the APOGEE system provided by Siemens Building Technologies, Inc., is a product that should have been marked with the '282, '887, and '371 patent numbers. The parties agree that the APOGEE system was not marked with those patent numbers. Ollnova has the burden to prove by a preponderance of the evidence that the APOGEE system does not practice any of the '282, '887, and '371 patents. This is an issue that you must decide.").

[56] **Bambu**: Bambu's proposed instruction accurately informs the jury of the precise date on which from which damages would be calculated.

46

'381 and '660 patents that occurred as of the date Bambu received notice of these patents.]

[**Bambu**: You cannot award reasonable royalty damages for any Bambu sales that occurred prior to the date that you found infringement began.  If you find that Bambu's infringement is indirect rather than direct, then you cannot award damages for Bambu sales occurring earlier than the date that you found Bambu had the knowledge and intent necessary for indirect infringement.][57]

In considering the evidence of a reasonable royalty, you are not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you consider to be a reasonable royalty based on your consideration of all the evidence presented by the parties, whether that evidence is of a specific figure or a range of figures.

---

**Stratasys**: Bambu's proposed instruction seeks to impose a marking requirement on a patent containing only method claims for which no marking obligation can apply. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) ("The law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method."). It further ignores evidence of earlier notice that will be in the record.

[57] **Bambu**: *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1448 (Fed. Cir. 1990) (noting "the rule that damages cannot be awarded for contributory infringement unless there is evidence of knowledge of the existence of a patent" and remanding to determine when knowledge occurred); *see also SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-cv-00158-JRG, Dkt. No. 256 at 29 (E.D. Tex. June 18, 2012) (explaining in case with marking and direct/indirect infringement issues that "damages should be calculated as of the date you determine that the infringement began.").

**Stratasys:** Bambu provides no prior instructions similar to what it proposes. Further, Bambu's instruction confuses the issues by speaking only to "Bambu's sales," when sales are only one type of infringing activity.

47

**FF.    False Advertising[58]**

[**Bambu**: Stratasys also contends that Bambu has engaged in false advertising.  You need not consider or decide false advertising unless you find that Bambu has not infringed.]

Stratasys claims that Bambu engaged in false advertising under federal law. To establish this claim, Stratasys must prove each of the following by a preponderance of the evidence:

(1) Bambu made false statements in a commercial advertisement about Bambu's 3D printer products, which includes related hardware and software. Commercial advertisement means commercial speech by a party in commercial competition with the other party for the purpose of influencing consumers to buy its goods or services;

(2) the statements actually deceived or had the tendency to deceive a substantial segment of their intended audience;

(3) the statements are material in that they are likely to influence the purchasing decisions of consumers. If a statement is literally false, materiality will be assumed. If a statement is either ambiguous or true but misleading, there must be evidence of actual deception;

(4) The Bambu 3D printer products, which includes related hardware and software, are in interstate commerce; and

(5) Stratasys has been or is likely to be injured as a result of Bambu's statements, either by direct diversion of Stratasys' sales or by lessening of the goodwill associated with Stratasys' products.

While the representations need not be made in a classical advertising campaign and may consist instead of more informed types of promotion, the representations must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.

Goodwill includes the advantages accruing to a business on account of its name, location, reputation, and success.

If you find that Bambu has engaged in false advertising, you must go on and address the

---

[58] **AUTHORITY:** *See* 15 U.S.C. § 1117(a)*; Avid Identification Sys., Inc. v. Philips Elecs. N. Am. Corp.*, Case No. 2:04-cv-183, Dkt. No. 373 at 92–94 (E.D. Tex. June 1, 2006); *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 135–36 (2014) (stating that the plaintiff is entitled to either its own provable losses or the disgorgement of the defendant's "ill-gotten profits"); *Alfa Laval Inc. v. Flowtrend, Inc.*, 2016 WL 2625068, at *7 (S.D. Tex. May 9, 2016); *IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 375 (5th Cir. 2002); *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 464–65 (5th Cir. 2001) (holding that the plaintiff may prove that defendant benefitted from the false advertising by showing that the "plaintiff lost sales or profits, or that defendant gained them," and that this may entitle plaintiff to "an award of defendant's profits"); *Airflow Houston, Inc. v. Theriot*, 849 S.W.2d 928, 933 (Tex. App. 1993).

additional issue of whether or not that false advertising was willful. Stratasys must prove willfulness by a preponderance of the evidence. In other words, you must determine whether it is more likely than not that the Defendants willfully engaged in false advertising.

You may find that a defendant willfully engaged in false advertising if you find that it acted egregiously, willfully, or wantonly. You may find the Defendants' actions were egregious, willful, or wanton if they acted in reckless or callous disregard of or with indifference to others. A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that is known to it or was apparent to a reasonable person in its position. In addition, you may consider whether the Defendants' behavior was deliberate or intentional. Your determination, ladies and gentlemen, of willfulness as to false advertising should incorporate the totality of the circumstances based on the evidence presented during the trial.

Willfulness can be established by circumstantial evidence. If you decide that any false advertising was willful, that decision should not affect any damages award that you give. I will take willfulness into account later if you find it.

If you find that Bambu has engaged in false advertising, then you should consider the amount of money, if any, that Stratasys has proven it should receive.  You must award Stratasys a sum that will fairly and justly compensate it for any injury caused by Bambu's false advertising. Stratasys must prove entitlement to damages by a preponderance of the evidence. The damages owed to Stratasys for false advertising by Bambu may include Bambu's profits.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of Bambu's receipts from the sale of products attributable to the false advertising. Stratasys has the burden of proving Bambu's gross revenue by a preponderance of the evidence.

Expenses are all operating, overhead, production and sales costs incurred in producing the gross revenue. Bambu has the burden of proving these expenses.

Stratasys is entitled to recover Bambu's profits attributable to the false advertising.  You must not award damages for any profit you find was attributable to factors other than false advertising.

49

## GG.    <u>Deliberations</u>[59]

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer the questions in the verdict form based on the facts as you find them, following the instructions that the Court has given you. Do not decide who you think should win and then answer the questions accordingly. Again, your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties, and all corporations, partnerships, and other organizations stand equal before the law, regardless of their size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of these instructions to take with you. If you desire to review any of the exhibits that the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or exhibits to you. Once you retire, you should select your foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your foreperson is to fill in the verdict form, which reflects your unanimous answers to the questions. Do not reveal your answers until such time as you are discharged, unless I direct you otherwise. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer

---

[59] **AUTHORITY:** *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Final Jury Instructions, Dkt. No. 284 at 28–30 (E.D. Tex. Aug. 28, 2018).

your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise. However, at that time, if you choose to talk about your service as jurors, then you are perfectly free to. At that point, after you have been discharged, that decision will be yours and yours alone.

Now, with those instructions, ladies and gentlemen, we're ready to hear closing arguments from the attorneys in the case.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| Stratasys, Inc., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | Case No. 2:24-cv-00645-JRG |
| v. | § | |
| | § | |
| Shenzhen Tuozhu Technology Co., Ltd., *et* | § | |
| | § | |
| *al.*, | § | |
| | § | |
| *Defendants*. | § | |

## JOINT PROPOSED FINAL JURY INSTRUCTIONS

I.    FINAL INSTRUCTIONS.................................................................................................1

      A.    Introduction.......................................................................................................1

      B.    Credibility of Witnesses....................................................................................2

      C.    Rulings on Objections........................................................................................3

      D.    Discussions Out of the Presence of the Jury.....................................................4

      E.    Direct and Circumstantial Evidence..................................................................5

      F.    Stipulated Facts.................................................................................................6

      G.    Deposition Testimony........................................................................................7

      H.    Drawing Inferences...........................................................................................8

      I.    Witnesses...........................................................................................................9

      J.    Demonstrative Exhibits....................................................................................10

      K.    Burdens of Proof..............................................................................................11

      L.    Positions of the Parties....................................................................................12

      M.    Patent Claims...................................................................................................14

      N.    Direct Infringement.........................................................................................17

      O.    Induced Infringement......................................................................................20

      P.    Contributory Infringement...............................................................................21

      Q.    Willful Infringement........................................................................................22

      R.    Invalidity.........................................................................................................23

      S.    Prior Art...........................................................................................................24

      T.    Anticipation.....................................................................................................25

      U.    Obviousness.....................................................................................................26

      V.    Person of Ordinary Skill in the Art.................................................................29

      W.    Invalidity – Written Description Requirement................................................30

      X.    Invalidity – Patent Eligibility..........................................................................32

      Y.    Compensatory Damages – Patent Infringement..............................................36

      Z.    Reasonable Royalty.........................................................................................38

      AA.   Deliberations....................................................................................................44

## I.    FINAL INSTRUCTIONS

### A.    Introduction[1]

Ladies and gentlemen of the jury, you have now heard all the evidence in this case, and I will now instruct you on the law you must apply.

Each of you is going to have your own personal copy of these final jury instructions that I'm about to give you orally. You'll have these in written form for your review in the jury room when you retire to deliberate in a few minutes. Accordingly, there is really no need for you to take written notes on these final jury instructions unless you particularly want to do so.

It's your duty to follow the law as I give it to you. On the other hand, and as I've said before, you, the jury, are the sole judges of the facts in this case. Do not consider any statement I have made during the course of the trial or make during the course of these instructions as an indication that I have any opinion about the facts in this case.

Now, you are about to hear closing arguments from the attorneys for the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They're intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this verdict form to the jury room, and when you've reached a unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form to reflect your unanimous answers, date it, and it should be signed by your jury foreperson. Answer the questions in the verdict form as directed and from the facts as you find them to be. Do not decide who you think should win this case and then answer the questions accordingly to reach that result. Your answers and your verdict, ladies and gentlemen, must be unanimous.

In determining whether any of the facts have been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses regardless of who may have called them, and you may consider all the exhibits received and admitted into evidence regardless of who may have introduced them.

Remember, ladies and gentlemen, you the jurors are the sole and only judges of the credibility of all the witnesses and the weight and effect to give all of the evidence.

---

[1] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1040:8–1042:12 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 852:1–854:25 (E.D. Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 19:10–20:19 (E.D. Tex. November 27, 2013).

1

### B.    Credibility of Witnesses[2]

Now, in deciding the facts in this case, you may have to decide which testimony to believe and which testimony to not believe. You alone are to determine the questions of credibility or truthfulness of the witnesses, and in weighing the testimony of the witnesses, you may consider the witness's manner and demeanor as reflected on the witness stand but may not credit or penalize any witness based on their physical characteristics or language.

You may consider any feelings or interest they may have in the case and any bias or prejudice about the case that the witness may have, and you may consider the consistency or inconsistency of their testimony considered in the light of the circumstances.

Has the witness been contradicted by other evidence? Has he or she made statements at other times in other places contrary to what he or she said on the witness stand? You must give the testimony of each witness the amount of credibility and weight that you think it deserves. You must keep in mind, however, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth.

You must consider whether any misstatement is an intentional falsehood or a simple lapse of memory and what significance should be attached to that testimony.

Now, unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence you believe that single witness.

---

[2] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1042:9–1043:14 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 852:1–854:25 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 8:9–18 (E.D. Tex. March 21, 2019).

C.        **Rulings on Objections**[3]

As I've told you previously, the attorneys in this case are advocates for their competing clients, and they have a duty to raise objections when they believe evidence is being offered that should not be admitted under the rules of the Court.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and you may draw no inference from its wording, and you may not speculate about what the witness would have said if he or she had been permitted to answer the question by the Court. On the other hand, ladies and gentlemen, if the objection was overruled by the Court, then you should treat the question and the answer just as you would treat any other question and answer as if the objection had not been.

Also, by allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate to you any opinion as to the weight or effect of such evidence.

---

[3] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1043:15–1044:8 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 856:6–25 (E.D. Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 21:1–15 (E.D. Tex. Aug. 28, 2018).

3

### D.    Discussions Out of the Presence of the Jury[4]

Now, at times, ladies and gentlemen, during the trial, it's been necessary for the Court to talk with the attorneys outside of your hearing by asking you to retire to the jury room or by calling a recess and talking to them outside of your hearing while we were in recess, and you were out of the courtroom. This happens because during trial, sometimes things arise that do not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence or your hearing.

---

[4] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1044:9–16 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 857:1–10 (E.D. Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 21:16–23 (E.D. Tex. Aug. 28, 2018).

### E.    <u>Direct and Circumstantial Evidence</u>[5]

Now, there are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, ladies and gentlemen, the law makes no distinction between direct evidence or circumstantial evidence but simply requires that you find the facts based on the evidence presented during the trial, both direct and circumstantial.

---

[5] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1046:5–15 (E.D. Tex. September 26, 2025); *Solas Oled Ltd v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 857:11–22 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 9:20–10:8 (E.D. Tex. March 21, 2019).

F.    **Stipulated Facts**[6]

Now, the parties may have agreed or stipulated to some facts in this case. When the lawyers for both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the facts as proven.

---

[6] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1046:16–20 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 857:23–858:2 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 10:9–13 (E.D. Tex. March 21, 2019).

### G.    Deposition Testimony[7]

Also, certain testimony in this case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be personally present to testify from the witness stand physically, the witness' testimony may be presented under oath in the form of a deposition.

Before this trial began, the attorneys representing the parties in this case questioned these deposition witnesses under oath. The witnesses were sworn, a court reporter was present and recorded the testimony, both the questions and the answers. Deposition testimony, ladies and gentlemen, is entitled to the same consideration as the testimony given by a witness in person from the witness stand during the trial. Accordingly, you should determine the credibility and the importance of deposition testimony to the best of your ability just as if the witness had testified in person from the witness stand.

---

[7] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1044:23–1045:17 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 858:3–21 (E.D. Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 22:6–22 (E.D. Tex. November 27, 2013).

**H.**       **Drawing Inferences**[8]

Now, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience. Said another way, ladies and gentlemen, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case.

However, you should not base your decisions on any evidence not presented by the parties during the trial, including your own personal experiences with any particular 3D printers, 3D printer software, or 3D printer accessories.

---

[8] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1045:18–1046:4 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 858:22–859:8 (E.D. Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 22:23–23:6 (E.D. Tex. November 27, 2013).

I.    **Witnesses**[9]

Unless I instruct you otherwise, and as I have told you, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after you consider all the evidence you believe that single witness.

Now, when knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, we call them expert witnesses, they are permitted to testify and to state opinions on those technical matters. However, ladies and gentlemen, you're not required to accept or believe any such opinion. As with any other witness, it's solely up to you to decide whether to rely on an expert witness' testimony and opinions or not.

---

[9] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1047:9–16 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 859:9–23 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 11:22–12:16 (E.D. Tex. March 21, 2019).

**J.        <u>Demonstrative Exhibits</u>**[10]

Now, certain things have been shown to you over the course of the trial that were illustrations. We call these types of things demonstrative exhibits. Often, we simply call them demonstratives for short. Demonstratives, ladies and gentlemen, are a party's description, picture, drawing, model, or something to describe an issue involved in the trial. Many times, these demonstratives were shown to you as slides on the monitors that are before you.

If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstratives, which are sometimes called jury aides, themselves are not evidence, but a witness's testimony concerning a demonstrative is evidence.

Demonstrative exhibits will not be available to you to view again during your deliberations in the jury room.

---

[10] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1046:21–1047:8 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 859:24–860:15 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 12:17–13:9 (E.D. Tex. March 21, 2019).

### K.    <u>Burdens of Proof</u>[11]

Now, in any legal action, facts must be proven by a required amount of evidence known as the burden of proof. The burden of proof in this case is on the Plaintiff for some issues, and it's on the Defendants for other issues. And there are two burdens of proof that you will apply in this case, the preponderance of the evidence and clear and convincing evidence.

The Plaintiff, Stratasys, Inc., who you've heard referred to throughout the trial simply as Stratasys, has the burden of proving patent infringement by a preponderance of the evidence. Stratasys also has the burden of proving willful patent infringement by a preponderance of the evidence. Stratasys, additionally, has the burdens of proving its damages for patent infringement by a preponderance of the evidence.

A preponderance of the evidence, ladies and gentlemen, means evidence that persuades you, the jury, that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

The Defendants in this case, Shenzhen Tuozhu Technology Co., Ltd., Shanghai Lunkuo Technology Co., Ltd., BambuLab Limited, Tuozhu Technology Limited, and BambuLab USA Inc., who you have heard referred to throughout this case collectively as Bambu, have the burden of proving invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces, in your mind, an abiding conviction that the truth of the party's factual contentions is highly probable. Now, although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than the preponderance of the evidence standard. To meet the clear and convincing evidence standard, the Defendants must establish proof in your mind, as the jury, an abiding conviction in the truth of the matter.

Now, ladies and gentlemen, these two burdens of proof are not to be confused with the burden of proof known as beyond a reasonable doubt, which is the burden of proof applied in a criminal case. It is never applied in a civil case like this. You should not confuse clear and convincing evidence beyond a reasonable doubt. Clear and convincing evidence is not as high a burden, but it is a higher burden than the preponderance of the evidence.

---

[11] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1048:8–1049:23 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 860:16–860:20 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 13:10–15:9 (E.D. Tex. March 21, 2019).

**L.    Positions of the Parties**[12]

Now, as I did at the start of the case, I'll first give you a summary of each side's contentions, and then I'll provide you with detailed instructions on what each party must prove to win on each of its contentions.

As I previously told you, this is an action for patent infringement, and this case concerns five United States patents:

- U.S. Patent No. 10,569,466, which you have heard referred to as the '466 Patent.
- U.S. Patent No. 11,167,464, which you have heard referred to as the '464 Patent.
- U.S. Patent No. 8,747,097, which you have heard referred to as the '097 Patent.
- U.S. Patent No. 11,886,774, which you have heard referred to as the '774 Patent.
- U.S. Patent No. 8,562,324, which you have heard referred to as the '324 Patent.

I will refer to these patents as the "Patents-in-Suit." I may also refer to them as the "Asserted Patents."

Now, Stratasys, the Plaintiff, contends that the Defendants, collectively referred to as Bambu, have infringed the following claims of the Patents-in-Suit:

- claims 1, 5, 10, 17, and 19 of the '466 Patent;
- claims 1 and 12 of the '464 Patent;
- claims 1, 12, 16, and 18 of the '097 Patent;
- claims 1, 6, and 8 of the '774 Patent; and
- claims 1, 11, and 19 of the '324 Patent.

These are the "Asserted Claims."

Stratasys seeks money damages from Bambu for allegedly infringing the asserted claims of the Patents-in-Suit by making, using, importing, selling, or offering for sale in the United States the accused products in this case.

The Plaintiff, Stratasys, further contends that the Defendants, Bambu, have actively induced others to infringe of the Patents-in-Suit. Stratasys also contends that Bambu has contributed to others' infringement of the Patents-in-Suit.

Stratasys further contends that Bambu's alleged infringement of the Patents-in-Suit has been willful.

---

[12] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1049:24–1051:24 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 862:21–866:6 (E.D. Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 26:25–30:14 (E.D. Tex. Aug. 28, 2018).

The Defendants, Bambu, deny that they have infringed any of the asserted claims of the Patents-in-Suit. Bambu contends that during the term of the patent, they did not make, use, sell, or offer for sale within the United States or import into the United States any product that infringes any of the asserted claims of the Patents-in-Suit.

Bambu further denies that they have induced others to infringe the Patents-in-Suit. Bambu also denies that they have contributed to others' infringement of the Patents-in-Suit.

Bambu further denies that they have willfully infringed the Patents-in-Suit. Bambu also denies that Stratasys is entitled to any money damages.

Bambu further contends that the asserted claims of the Patents-in-Suit are invalid because they are anticipated by, or rendered obvious over, prior art. Bambu further contends that the asserted claims are invalid because they are not supported by the written description or lack enablement. Bambu also contends that certain asserted claims are invalid because they are directed to unpatentable subject matter.

Invalidity is a defense to infringement. Invalidity and infringement, however, are separate and distinct issues. Your job is to decide whether the Defendants have infringed any of the asserted claims and whether those claims are invalid. If you decide that any asserted claim has been infringed and is not invalid, you will then need to decide the amount of money damages to be awarded to the Plaintiff to compensate it for that infringement. If you decide that there was any infringement of the asserted patent and that such infringement was willful, your decision as to willfulness should not affect any damages that you might award. I will take willfulness into account later.

**M.    Patent Claims[13]**

Now, before you can decide many of the issues in this case, you'll need to understand the role of the patent "claims." The patent claims are the numbered sentences at the end of the patent. The claims are important because it is the words of the claims that define what a patent covers.

The figures and the text in the rest of the patent provide a description and/or examples of the invention, and they provide a context for the claims. But it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or cover less than any other claim. Therefore, what a patent covers depends in turn on what each of its claims covers.

You'll first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.

Now, the law says that it's my role to define the terms of the claims, and it's your role to apply my definitions to the issues that you're asked to decide in this case.

Accordingly, as I've explained to you at the start of the trial, I've already determined the meaning of certain claim terms in this case, and I've provided you with those definitions or constructions as to those terms in your juror notebooks. You must accept my definitions and my constructions of these words in the claims as being correct. It's your job to take these definitions and apply them to the issues that you're deciding, including the issues of infringement and invalidity.

Now, ladies and gentlemen, you should disregard any evidence presented at the trial that contradicts or is inconsistent with the constructions and the definitions that I have given you. And, again, these are in your juror notebooks.

For claim elements or limitations that I have not construed, that is, elements or limitations that I have not interpreted or defined, you are to use and apply the plain and ordinary meaning of the element or limitation as understood by one of ordinary skill in the art, which is to say in the field of technology of the patent at the time of the alleged invention.

The meaning of the words of the patent claims must be the same when deciding both the issue of infringement and the issue of validity.

---

[13] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1052:17–1056:20 (E.D. Tex. September 26, 2025); *Synqor, Inc. v. Vicor Corp.*, No. 2:14-cv-287-RWS-JBB, Final Jury Instructions, Dkt. No. 734, Tr. at 1859:19–1864:10 (E.D. Tex. October 26, 2022); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. At 866:7–871:17 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 16:13–21:21 (E.D. Tex. March 21, 2019); *SSL Servs., LLC v. Citrix Sys., Inc.*, Final Jury Instructions, No. 2:08-cv-158-JRG, Final Jury Instructions, Dkt. No. 272, Tr. 19:10–22:21 (E.D. Tex. June 27, 2012).

As I've already told you, you've been provided with a copy of the asserted patent, and these are inside your juror notebooks, and you may use them and refer to them during your deliberations.

I'll now explain how a claim defines what it covers. A claim sets forth in words a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements, then it is covered by and infringes the claim.

Now, there can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis.

In patent law, the requirements of a claim are often divided into parts, sometimes referred to as the "claim elements" or the "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or one element of a claim, the product is not covered by the claim. And if the product is not covered by the claim, that product does not infringe that claim.

Now, the beginning portion or "preamble" of a claim often uses the word comprising. The word "comprising," when used in a preamble of a claim, means including but not limited to or containing but not limited to. When comprising is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed, and that is true even if the accused product or instrumentality contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also and additionally contains other structures, such as leaves to expand the size of the tabletop or wheels to go on the ends of the legs.

Now, this case involves two types of patent claims, independent claims and dependent claims. An independent claim, ladies and gentlemen, sets forth all the requirements that must be met in order to be covered by the claim. Thus, it's not necessary to look at any other claim in the patent to determine what an independent claim covers. It is independent.

However, on the other hand, a dependent claim does not itself recite all the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim depends on another claim. A dependent claim incorporates all the requirements of the claim to which it refers, or as we sometimes say, from which it depends, and it adds its own additional requirements.

Now, to determine what a dependent claim covers, it's necessary to look at both the dependent claim itself and any other claim or claims from which it refers or from which it depends.

A product that meets all the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.

Now, if a person or a corporation makes, uses, sells, or offers to sell within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission,

15

that person or corporation is said to infringe the patent.

In reaching your decision on infringement, keep in mind, ladies and gentlemen, that only the claims of a patent can be infringed. You must compare the asserted patent claims as I have construed them for you to the accused products and determine whether or not there is infringement.

This is the only correct comparison.

You should not compare the accused products with any specific examples set out in the patent or with the prior art in reaching your decision on infringement. In deciding infringement, the only correct comparison is between the accused products and the limitations of the asserted claims as the Court has construed any claim language.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both sides during the course of the trial.

## N.    **Direct Infringement**[14]

I'll now instruct you about the specific rules you must follow to determine whether Stratasys has proven that Bambu has infringed one or more of the patent claims involved in this case.

If a person or corporation makes, uses, sells, or offers to sell within the United States, or imports into the United States what is covered by a patent claim without the patent owner's permission, that person or corporation is said to infringe the patent claim. A party "makes" a claimed invention when it combines all of the elements of the claims in the United States. A party "uses" a claimed system when it controls a system that combines all elements of the claims in the United States and obtains benefit from it. A party obtains a benefit from a system if it obtains a benefit from each and every element of the claimed system. A party does not have to exercise physical or direct control over each individual element of the system in order to use the claimed system.

[**Bambu**: Activity performed outside the country is not infringement under United States patent laws. You may not find Bambu liable for, or award damages based on, any making, using, selling, or offering to sell the accused product in other countries. The "use" of a claimed system occurs where the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained.[15]

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. To determine whether there is infringement, you must compare the Asserted Claims to the

---

[14] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1057:3–1059:25 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 871:18–873:13 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 21:22–22:23 (E.D. Tex. March 21, 2019); *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, No. 2:17-cv-00577-JRG, Final Jury Instructions, Dkt. No. 341, Tr. at 25:11–27:1 (E.D. Tex. February 21, 2019).

[15] **Bambu**: *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007) ("It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country."), 446 (noting the patent at issue were directed to an apparatus); *Deepsouth Packing Co., Inc. v. Laitram Corp.*, 406 U.S. 518, 525 n.7, 527, 531 (1972) ("Our patent system makes no claim to extraterritorial effect"), 20 (explaining patents were directed to machines—a "slitter" and a tumbler"), *superseded in part on other grounds,* 35 U.S.C. § 271(f); *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 650 (1915) (in case concerning patent directed to "grain drills," not method claims, noting: "Some of the drills, about 261, sold by the defendants, were sold in Canada, no part of the transaction occurring within the United States, and as to them there could be no recovery of either profits or damages."); *Brown v. Duchesne*, 60 U.S. (19 How.) 183, 195–96 (1856) ("And the use of it outside of the jurisdiction of the United States is not an infringement of his rights, and  he has no claim to any compensation for the profit or advantage the party may derive from it.").

Accused Products. This is the only correct comparison.[16]]

You should not compare the Accused Products to any specific examples set out in the patent or the prior art in reaching your decision on infringement.

You must determine whether or not there is infringement separately for each Asserted Claim. However, if you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers, either directly or indirectly, to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the accused product meets the additional requirements of any claims that depend from the independent claim. That is, you must separately decide whether any dependent claims that refer to that independent claim have been infringed.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

I will now instruct you on the specific rules you must follow to determine whether Stratasys has proven that Bambu has directly infringed the Asserted Claims involved in this case. A patent can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it was doing was infringement of the claim. A patent may also be directly infringed even though the accused direct infringer believes in good faith that what it is doing is not infringement of the patent.

Now, in order to prove direct infringement of a patent claim, the Plaintiff, Stratasys, must prove by a preponderance of the evidence that the accused products include each and every limitation of the claim.

In determining whether an accused product directly infringes a patent claim in this case, you must compare the accused product with each and every one of the requirements or limitations in that claim to determine whether the accused product contains each and every requirement or limitation recited in that claim. If an accused product omits any element recited in a claim, then you must find that particular product does not infringe that claim.

Infringement does not require proof that a party copied the asserted claims. A claim requirement is literally present if it existed in an accused technology just as it is described in the claim language, either as I've explained the language to you, or as I've said, if I did not explain it, as it would be understood by

---

[16] **Bambu**: *Correct Transmission, LLC v. Nokia Corp.*, No. 2:22-CV-343-JRG, Dkt. No. 341 at 1247:16–21 (E.D. Tex. Nov. 22, 2024) ("In reaching your decision on infringement, keep in mind, ladies and gentlemen, that only the claims of a patent can be infringed. You must compare the asserted patent claims as I may have construed them for you to the accused Nokia products and determine whether or not there is infringement. This is the only correct comparison."); *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1234:18–23 (E.D. Tex. Jun. 20, 2024) (substantially identical); *Daingean Techs., Ltd. v. AT&T Corp.*, No. 2:23-CV-123-JRG, Dkt. No. 586 at 1283:5–19 (E.D. Tex. Sept. 27, 2025) (substantially identical).

its plain and ordinary meaning of one of skill in the art. If an accused technology omits any requirement recited in a claim, then you must find that the particular technology does not literally infringe that claim.

If you do not find that each limitation or element of a claim is literally met, then as to the asserted claims of the [resolve after motion to strike rulings] patents, you may still find infringement if you find each element is met under the Doctrine of Equivalents.

Under the doctrine of equivalents, the accused products infringe a claim if they contain elements or limitations corresponding to each and every element or limitation of the claim that it is equivalent to, even though not literally met by the accused products.

You may find that an accused product is equivalent to an element or limitation of a claim that is not literally met if a person having ordinary skill in the field of the technology of the patent would have considered the differences between them to be insubstantial or would have found that the accused product, one, performs substantially the same function; two, in substantially the same way; and, three, to achieve substantially the same result as the element or limitation of the claim.

In order for the structure or action to be considered interchangeable, the structure or action must have been known at the time of the alleged infringement to a person having ordinary skill in the field of the technology of the patent. Interchangeability, ladies and gentlemen, at the present time is not sufficient.

Now, in order to prove direct infringement under the doctrine of equivalents, the Plaintiff, Stratasys, must prove by a preponderance of the evidence that for each claim element or limitation that is not literally present in the accused products, the equivalent of that element or limitation is present.

19

## O.    Induced Infringement[17]

Now, the Plaintiff, Stratasys, also alleges that the Defendants, Bambu, are liable for infringement for actively inducing others to directly infringe the Asserted Patents. As with direct infringement, ladies and gentlemen, you must determine whether there has been active inducement on a claim-by-claim basis.

Bambu is liable for induced inducement of a claim only if Stratasys proves by a preponderance of the evidence that:

(1) The alleged infringing acts were actually carried out by others and directly infringed that claim;

(2) The Defendants took action during the time the Asserted Patents were in force intending to cause infringing acts by users of the accused products; and

(3) The Defendants were aware of the Asserted Patents and knew that the acts, if taken, would constitute infringement of the Asserted Patents or was willfully blind to that infringement.

Willful blindness is established if Bambu believed there was a high probability that the acts, if taken, would constitute infringement of the Asserted Claims, but deliberately avoided confirming that belief.

In order to establish induced infringement, it is not sufficient that the users directly infringe the claim. Nor is it sufficient that the company accused of inducing users' direct infringement merely had knowledge or notice of an asserted patent or had been aware of the acts by another that allegedly constitute direct infringement. The mere fact that the company accused of inducing another's direct infringement had known or should have known that there was a substantial risk that someone else's acts would infringe is not sufficient. Rather, in order to find inducement, you must find that Bambu specifically intended or was willfully blind to that infringement by the users of the accused products.

---

[17] **AUTHORITY:** Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 873:14–874:19 (E.D. Tex. March 8, 2021); *TQP Dev. LLC v. Newegg, Inc.*, 2:11-cv-248-JRG, Final Jury Instructions, Dkt. No. 421, Tr. at 39:12–40:5 (E.D. Tex. November 27, 2013).

20

**P.      Contributory Infringement**[18]

Stratasys alleges that Bambu is liable for contributory infringement by contributing to the direct infringement of the asserted claims by consumers. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Bambu is liable for contributory infringement of a claim if Stratasys proves by a preponderance of the evidence:

(1) Bambu sells, offers to sell, or imports within the United States a component of a product or an apparatus for use in a process during the time the asserted patents were in force;

(2) the component or apparatus has no substantial non-infringing use;

(3) the component or apparatus constitutes a material part of an invention claimed in an Asserted Patent;

(4) Bambu was aware of the asserted patents and knew that the products or processes for which the component has no other substantial use may be covered by a claim of one or more of the asserted patents or may satisfy a claim of the same patent under the Doctrine of Equivalents; and

(5) that use directly infringes the claim.

In order to prove contributory infringement, Stratasys, the Plaintiff, must prove each of the above requirements have been met by a preponderance of the evidence.

---

[18] **AUTHORITY:** Adapted from *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, No. 2:17-cv-00577-JRG, Final Jury Instructions, Dkt. No. 341, Tr. at 28:16–29:14 (E.D. Tex. February 21, 2019).

## Q.    Willful Infringement[19]

Now, in this case, the Plaintiff, Stratasys, also contends that Bambu has willfully infringed the asserted claims of the Asserted Patents. If you decide that Bambu has infringed a valid claim of the Asserted Patents, you must go on and address the additional issue of whether or not that infringement was willful.

Stratasys must prove willfulness by a preponderance of the evidence. In other words, you must determine whether it is more likely than not that the Defendants willfully infringed.  You may not determine that infringement was willful just because Bambu knew of the asserted patents and infringed them.

You may find that a defendant willfully infringed if you find that it acted egregiously, willfully, or wantonly. You may find the defendant's actions were egregious, willful, or wanton if it acted in reckless or callous disregard of or with indifference to the rights of Stratasys. A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that is known to it or was apparent to a reasonable person in its position. Your determination, ladies and gentlemen, of willfulness as to the asserted patent should incorporate the totality of the circumstances based on the evidence presented during the trial.

To determine whether Bambu acted willfully, consider all the facts and assess Bambu's knowledge at the time of the challenged conduct. Facts that may be considered include whether or not Bambu reasonably believed that it did not infringe or that the asserted patents were invalid.

Your determination of willfulness should incorporate the totality of the circumstances based on all the evidence presented during this trial. Willfulness can be established by circumstantial evidence. If you decide that any infringement was willful, again, that decision should not affect or impact any damages award that you might make. Again, the Court will take willfulness into account later if you find it.

---

[19] **AUTHORITY:** Adapted from *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 874:20–876:7 (E.D. Tex. March 8, 2021); *Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-013140-JRG, Final Jury Instructions, Dkt. No. 498, Tr. at 48:20–49:13 (E.D. Tex. June 18, 2018).

22

R.    **Invalidity**[20]

I'll now instruct you on the rules that you must follow in deciding whether or not Bambu has proven that any of the asserted claims of the asserted patents are invalid.

Patent invalidity is a defense to patent infringement.  The fact that the Patent Office grants a patent does not necessarily mean that any invention claimed by the patent in fact deserves the protection of a patent.  In this case you have the ultimate responsibility for deciding whether the asserted claims are valid or invalid.  To prove that any of the asserted claims are invalid, Bambu must persuade you by clear and convincing evidence [**Bambu**:, that is, you must conclude that it is highly probable that the claim is invalid].[21]

An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing the patent. This presumption of validity, ladies and gentlemen, extends to all issued United States patents.

Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, that does not mean that any other claim is necessarily invalid.

Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity. And in making your determination as to invalidity, you should consider each claim separately.

---

[20] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1060:1–1061:2 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 876:8–877:8 (E.D. Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 41:4–42:18 (E.D. Tex. Aug. 28, 2018).

[21] **Bambu**: *Headwater Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-103-JRG, Dkt. No. 456 at 1197:13–17 (E.D. Tex. July 14, 2025) ("To prove that any of the asserted claims are invalid, Samsung must persuade you by clear and convincing evidence--that is, you must conclude that it is highly probable that a claim is invalid.").

23

S.    **Prior Art**[22]

Now, in patent law, a previous device, system, method, publication, or patent that predates the claimed invention is generally called "prior art" or a "prior art reference." Prior art may include items that were publicly known or have been used or offered for sale or references such as publications or patents that disclose the claimed invention or elements of the claimed invention.

To be prior art, an item or reference must have been made, known, used, sold, offered for sale, published, or patented before the "priority date" of the Asserted Patents.  An invention is known when the information about it was reasonably accessible to the public on that date.

Now, in evaluating the prior art to determine whether an invalidity defense has been proved by clear and convincing evidence, you may consider whether that prior art was or was not before the Patent Office. You may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Office did consider.

The Asserted Patents are entitled to different priority dates. The '097 Patent and '324 Patent claims are entitled to a priority date of August 18, 2010. The '466 Patent and '464 Patent claims are entitled to a priority date of October 29, 2012. The '774 Patent claims are entitled to a priority date of December 31, 2014.

---

[22] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1061:3–1062:2 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 877:9–878:8 (E.D. Tex. March 8, 2021); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 42:19–43:13 (E.D. Tex. Aug. 28, 2018).

24

**T.**      <u>**Anticipation**</u>[23]

I will now instruct you on how to determine whether any of the Asserted Claims of any of the Asserted Patents are invalid as anticipated.  In order for someone to be entitled to a patent, the invention must actually be "new."  In general, inventions are not "new" when the identical product, method, or process has been made, used, or disclosed before.

Bambu contends that some of the asserted claims are invalid because the claimed invention(s) are invalid because the claimed inventions are not "new." In other words, Bambu contends that the Asserted Claims are "anticipated" by prior art.

Anticipation requires that all of the requirements of a patent claim be disclosed in a single prior art reference or system. Also, the single prior art reference or system must disclose all elements of the claim arranged or combined in the same way as in the claim. Anticipation must be determined on a claim-by-claim basis. Bambu must prove by clear and convincing evidence that an Asserted Patent claim is anticipated by the prior art reference or system.

To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or inherently, to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention. Keep in mind that Defendants may not establish anticipation by arguing that the Accused Products practice the prior art, or by comparing the Accused Products to a prior art reference.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

---

[23] **AUTHORITY:** The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4.3b-1 (May 2020); adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1062:10–1063:23 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 882:5–883:12 (E.D. Tex. March 8, 2021).

U.       **<u>Obviousness</u>**[24]

Bambu also contends that the asserted claims of the Patents-in-Suit are invalid as being obvious. Even though an invention may not have been identically disclosed or identically described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of the technology of the patent at the time the invention was made.

Bambu in this case has the burden of establishing obviousness by showing by clear and convincing evidence that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the technology of the patent.

Now, in determining whether the claimed invention was obvious, you must consider the level of ordinary skill in the field that someone would have had as of the priority date, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

A patent claim with several elements, ladies and gentlemen, is not proved obvious merely by demonstrating that each of the elements was known. Most, if not all, inventions rely on the building blocks of prior art.

In considering whether a claimed invention was obvious, you must first determine the scope and content of the prior art.  The scope and content of the prior art for deciding whether the invention was obvious includes at least prior art in the same field in the claimed invention.  It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Further, the teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps, including logic, judgment, and common sense, that a person of ordinary skill in the art would employ.  A person of ordinary skill may be able to fit the teachings of multiple pieces of prior art together like pieces of a puzzle.  The person of ordinary skill in the art would have the capability of understanding the scientific and engineering principles applicable to the pertinent art.

In considering whether a claimed invention was obvious, you may but you are not required to find obviousness if you find at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way the claimed invention does, taking into account such factors as:

1. Whether the claimed invention was merely the predictable result of using prior art elements

---

[24] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1063:24–1068:16 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 889:2–884:11 (E.D. Tex. March 8, 2021); *Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-013140-JRG, Final Jury Instructions, Dkt. No. 498, Tr. at 56:7–59:16 (E.D. Tex. June 18, 2018).

according to their known function;

2. Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. Whether the prior art teaches or suggests the desirability of combining elements in the claimed invention;

4. Whether the prior art teaches away from combining elements in the claimed invention;

5. Whether it would have been obvious to try the combination of elements in the claimed invention, such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified predictable solutions; and

6. Whether the change resulted more from design incentives or other market forces.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so, this evidence would make it more likely that the claimed invention was obvious.

Prior art is not limited to the patents and published materials, but includes the general knowledge of a person of skill in the art in the field of the invention.  Also, Bambu does not need to show that one of ordinary skill would actually have combined the physical structures of the references.  A person of skill in the art need only be motivated to combine the teachings.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight; consider only what was known at the time of the invention. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teaching of the Asserted Patents.

In making these assessments, ladies and gentlemen, you should take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on the obviousness or not of the claimed invention. The following are possible secondary considerations but it's up to you to decide whether secondary considerations of non-obviousness exist at all, such as:

1. Whether the invention was commercially successful as the result of the merits of the claimed inventions rather than the result of design needs or market pressure, advertising, or similar activities;

2. Whether the invention satisfied a long-felt need;

3. Whether the inventor proceeded contrary to accepted wisdom in the field;

4. Whether others tried but failed to solve the problem solved by the claimed invention;

5. Whether others invented the invention at roughly the same time;

6. Whether others copied the claimed invention;

7. Whether others accepted licenses under the Patents-in-Suit because of the merits of the claimed invention;

8. Whether the claimed invention achieved unexpected results;

9. Whether others in the field praised the claimed invention;

10. Whether there were changes or related technologies or market needs contemporaneous with the invention; and

11. Whether persons having ordinary skill in the art in the invention expressed surprise or disbelief regarding the invention.

No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the inventions made as a whole.

These factors are relevant only if there was a connection or a nexus between the evidence and the patented invention. Stratasys, the Plaintiff, has the burden of establishing this connection or nexus. Moreover, even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other evidence in the case in determining whether Bambu has proven that the invention would have been obvious.

If you find that Bambu has proven the obviousness of a claim by clear and convincing evidence, then you must find that that claim is invalid. If you find that Bambu has failed to prove by clear and convincing evidence that a claim was obvious, you must find that the claim is not invalid.

28

## V.    Person of Ordinary Skill in the Art[25]

Now, several times in these instructions, ladies and gentlemen, I refer to a person of ordinary skill in the field of the invention. It's up to you to decide the level of ordinary skill in the field of technology of the patent and what it is.

In deciding this, you should consider all the evidence introduced at trial, including but not limited to:

1. The levels of education and experience of persons working in the field;

2. The types of problems encountered in the field;

3. Prior art solutions to those problems;

4. The rapidity of which innovations are made; and

5. The sophistication of the technology.

A person of ordinary skill in the art is a hypothetical person who is presumed to have known all of the relevant prior art at the time of the claimed invention.

In considering whether the claimed invention was obvious, you should first decide the scope and content of the prior art. The scope and content of the prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

---

[25] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1051:25–1052:16 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG, Final Jury Instructions, Dkt. No. 354, Tr. at 890:1–891:15 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 24:18–25:14 (E.D. Tex. March 21, 2019).

29

### W.    Invalidity – Written Description Requirement[26]

Bambu also contends that the asserted claims of the patents-in-suit are invalid for failure to provide an adequate written description of the full scope of the claimed invention. Bambu bears the burden of establishing by clear and convincing evidence that the specification fails to satisfy the written description requirement.

A patent must also contain a written description of the product or method claimed in the patent. The written description requirement helps ensure that the patent applicant actually invented the claimed subject matter. [**Bambu**: The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently.][27]

When determining whether the specification discloses the invention, the claim must be viewed as a whole. The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize from reading the patent specification that the inventor possessed the subject matter finally claimed in the patent.[28] It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims may have changed or new claims have been added since that time.

The exact words found in the claim need not be used in the specification. It's unnecessary to spell out every detail of the invention in the specification, and specific examples are not required. Enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.

The written description requirement may be satisfied by a combination of words, structures,

---

[26] **AUTHORITY:** Adapted from AIPLA's Model Patent Jury Instructions, Instruction No. 9 (August 2025); The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction No. B.4.2a (May 2020).

[27] **Bambu**: *Headwater Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-103-JRG, Dkt. No. 456 at 1206:16–18 (E.D. Tex. July 14, 2025); *Correct Transmission, LLC v. Nokia Corp.*, No. 2:22-CV-343-JRG, Dkt. No. 341 at 1257:18–20 (E.D. Tex. Nov. 22, 2024).

[28] **Bambu**: *General Access Solutions, Ltd. v. Cellco Partnership, d/b/a Verizon Wireless*, No. 2:22-CV-394-JRG, Dkt. No. 324 at 1263:8–12 (E.D. Tex. Dec. 4, 2024) ("The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize from reading the patent specification that the inventor possessed the subject matter finally claimed in the patent."); *Daingean Techs., Ltd. v. T-Mobile USA, Inc.*, No. 2:23-CV-347-JRG, Dkt. No. 470 at 19–24 (E.D. Tex. July 14, 2025) ("The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification (which includes the originally filed claims), that the inventor possessed the subject matter finally claimed in the patent.").

30

figures, diagrams, formulas, et cetera, contained in the patent application. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1. The nature and scope of the patent claims;
2. The complexity, predictability, and maturity of the technology at issue;
3. The existing knowledge in the relevant field; and
4. The scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or group of claims.

### X.        Invalidity – Patent Eligibility[29]

I'll now instruct you about the rules that you must follow in deciding whether or not Bambu has proven that certain asserted patents are ineligible for patent protection.

To succeed on its claims for patent ineligibility, Bambu must establish two things. The first is whether the claims are directed to an abstract idea. [**Bambu**: The Court has already determined][30] [**Stratasys**: Defendants contend] that the asserted claims of the '466 and '464 patents are directed to the abstract idea of using a tag to communicate information.  [**Bambu**: The Court has already determined] [**Stratasys**: Defendants contend] that the asserted claims of the '774 patent are directed to the abstract idea of gathering printer configuration data and preparing a customized model file in response. Bambu contends that the asserted claims of the '324 and '097 patents are directed to the abstract idea of monitoring a 3D printer. You, the jury, will decide the second question related to patent ineligibility. Specifically, and in that regard, Bambu must show that the claims involve nothing more than the performance of activities which a person of ordinary skill in the art would have considered well-understood, routine, and conventional at the time the patent application was filed. You, the jury, will determine this issue.

To meet its burden on this issue, Bambu must show by clear and convincing evidence that the [**Bambu**: asserted claims of the '774,  '466, '464, '324, and '097 patents][31] [**Stratasys**: limitations of the

---

[29] **AUTHORITY:** Adapted from *Ollnova Technologies, Ltd. v. Ecobee, Inc.*, No. 2:22-cv-00072-JRG Final Jury Instructions, Dkt. No. 279, Tr. at 1239:15–1241:12 (E.D. Tex. June 20, 2024); *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 n.11 (Fed. Cir. 2025).

[30] **Bambu**: Bambu has challenged patent eligibility at the summary judgment stage.  If the Court determines that the claims are directed to an abstract idea at *Alice* step 1, the jury should know that finding.  Stratasys frames this as a mere contention rather than an affirmative finding by the Court, but Stratasys's proposed instruction is misleading and inaccurate.

**Stratasys**: The Court has made no ruling on Bambu's abstract idea contentions, and thus Stratasys's language is the most accurate at this time. Based on the Court's rulings on Bambu's motions for summary judgment of ineligibility, the jury instruction will necessarily be changed— either to (1) remove the instruction entirely if no abstract idea is found or (2) update the instruction to reflect the precise abstract idea determined by this Court.

[31] **Bambu**: *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1240:16–20 (E.D. Tex. Jun. 20, 2024) ("To meet its burden on this issue, ecobee must show by clear and convincing evidence that *the asserted claims of the '495 patent* involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of April the 9th, 2004."); *Infernal Tech., Inc. v. Sony Interactive Entertainment, LLC*, No. 2:19-CV-248-JRG, Dkt. No. 355 at 34:10–14 (E.D. Tex. Dec. 3, 2021) ("To meet its burden on this issue, Defendant must show by clear and convincing evidence that the asserted claims involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional, as of March the 12th, 1999.").

32

claims of the [insert] patents] involve only [**Bambu**: technology][32] [**Stratasys:** activities][33] which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of their priority dates. The abstract idea cannot contribute to demonstrating that the [**Bambu**: technology was][34] [**Stratasys:** activities were][35] not well-understood, routine, and conventional. However, the mere fact that something was known in the art at the time does not necessarily mean that it was well-understood, routine, and conventional. Rather, the test is whether, in view of all the evidence, a person of ordinary skill in the art would have considered the claim [**Stratasys:** limitations other than

---

[32] **Bambu**: *G+ Comm'cns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Dkt. No. 592 at 67:11–17 (E.D. Tex. Feb. 2, 2024) ("If the evidence shows by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and as an ordered combination, *involve* only *technology* which a person of ordinary skill in the art would have considered are well-understood, routine, and conventional, then this element of patent ineligibility has been established.").

[33] **Stratasys**: *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 490 at 118:9-13 (E.D. Tex. Aug. 12, 2020) ("[I]f the Court determines that a patent is also directed toward an abstract idea, then the jury must determine whether the patent covers only the activities that are well-understood, routine, and conventional at the time the patent was filed."); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 850 at 6 (E.D. Tex. Feb. 12, 2026); *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 (Fed. Cir. 2025) ("At *Alice* step two, the court must examine the elements of each claim, both individually and as an ordered combination, to determine whether it contains an 'inventive concept,' beyond what was 'well-understood,' 'routine,' and 'conventional,' that transforms the nature of the claim into a patent-eligible application.") (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014)).

[34] **Bambu**: *G+ Comm'cns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Dkt. No. 592 at 67:11–17 (E.D. Tex. Feb. 2, 2024) ("If the evidence shows by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and as an ordered combination, *involve* only *technology* which a person of ordinary skill in the art would have considered are well-understood, routine, and conventional, then this element of patent ineligibility has been established.").

[35] **Stratasys**: *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 490 at 118:9-13 (E.D. Tex. Aug. 12, 2020) ("[I]f the Court determines that a patent is also directed toward an abstract idea, then the jury must determine whether the patent covers only the activities that are well-understood, routine, and conventional at the time the patent was filed."); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 850 at 6 (E.D. Tex. Feb. 12, 2026); *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 (Fed. Cir. 2025) ("At *Alice* step two, the court must examine the elements of each claim, both individually and as an ordered combination, to determine whether it contains an 'inventive concept,' beyond what was 'well-understood,' 'routine,' and 'conventional,' that transforms the nature of the claim into a patent-eligible application.") (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014)).

the invention's use of the abstract idea][36] to involve only [**Bambu**: technology][37] [**Stratasys:** activity][38] that was well-understood, routine, and conventional as of their priority dates.

You should consider all the evidence presented during this trial, including the testimony of the witnesses as well as the exhibits introduced, including the specifications within the Patents-in-Suit. If the evidence shows by clear and convincing evidence that the elements of the asserted claims, when taken individually or when taken as an ordered combination, [**Bambu**: involve] [**Stratasys**: recite] only

---

[36] **Stratasys**: *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 n.11 (Fed. Cir. 2025) ("If on remand the district court chooses to have the jury decide whether what Optis alleges is the inventive concept is well-understood, routine, and conventional, then the jury should be instructed what the abstract idea is (i.e., a mathematical formula) and that the abstract idea cannot contribute to the inventive concept.").

**Bambu**: Stratasys's proposed instruction is confusing, redundant, and over-emphasizes an instruction already agreed upon by the Parties.

[37] **Bambu**: *G+ Comm'cns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Dkt. No. 592 at 67:11–17 (E.D. Tex. Feb. 2, 2024) ("If the evidence shows by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and as an ordered combination, *involve* only *technology* which a person of ordinary skill in the art would have considered are well-understood, routine, and conventional, then this element of patent ineligibility has been established.").

[38] **Stratasys**: *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 490 at 118:9-13 (E.D. Tex. Aug. 12, 2020) ("[I]f the Court determines that a patent is also directed toward an abstract idea, then the jury must determine whether the patent covers only the *activities* that are well-understood, routine, and conventional at the time the patent was filed."); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 850 at 6 (E.D. Tex. Feb. 12, 2026); *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 (Fed. Cir. 2025) ("At *Alice* step two, the court must examine the elements of each claim, both individually and as an ordered combination, to determine whether it contains an 'inventive concept,' beyond what was 'well-understood,' 'routine,' and 'conventional,' that transforms the nature of the claim into a patent-eligible application.") (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014)).

34

[**Bambu**: technology] [**Stratasys**: activities][39] which[40] a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional, then this second question of patent ineligibility has been established.

---

[39] **Stratasys**: *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 490 at 118:9-13 (E.D. Tex. Aug. 12, 2020) ("[I]f the Court determines that a patent is also directed toward an abstract idea, then the jury must determine whether the patent covers only the ***activities*** that are well-understood, routine, and conventional at the time the patent was filed."); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, Dkt. No. 850 at 6 (E.D. Tex. Feb. 12, 2026) ; *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1380 (Fed. Cir. 2025) ("At *Alice* step two, the court must examine the elements of each claim, both individually and as an ordered combination, to determine whether it contains an 'inventive concept,' beyond what was 'well-understood,' 'routine,' and 'conventional,' that transforms the nature of the claim into a patent-eligible application.") (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 225 (2014)).

[40] **Bambu**: *G+ Comm'cns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Dkt. No. 592 at 67:11–17 (E.D. Tex. Feb. 2, 2024) ("If the evidence shows by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and as an ordered combination, ***involve*** only ***technology*** which a person of ordinary skill in the art would have considered are well-understood, routine, and conventional, then this element of patent ineligibility has been established.").

### Y.  Compensatory Damages – Patent Infringement[41]

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Bambu infringed any asserted claims, and those claims are not invalid, you must then consider what amount of damages to award to Stratasys. If you do not find infringement by Bambu or you find that all the infringed claims are invalid, you will not consider patent damages at all.

Stratasys has the burden to establish the amount of its damages by a preponderance of the evidence. [**Bambu**: In other words, you should award only those damages that Stratasys establishes that it more likely than not suffered as a result of Bambu's infringement if you find infringement.][42] , [43] While Stratasys is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. Stratasys is not entitled to damages that are remote or that are only speculative.

The damages you award must be adequate to compensate Stratasys for any infringement you may find. However, you may not award Stratasys more damages than are adequate to compensate for the infringement, nor should you include any additional amount for purposes of punishing Bambu or setting an example.

Your damages award, if you reach this issue, should put Stratasys in approximately the same financial position that it would have been in had the infringement not occurred. Under the law, this means that if Bambu infringes, Stratasys would be entitled to recover at least a reasonable royalty for each

---

[41] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1068:17–1069:9 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG Final Jury Instructions, Dkt. No. 354, Tr. at 891:16–892:12 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 28:10–29:14 (E.D. Tex. March 21, 2019).

[42] **Bambu**: *Correct Transmission, LLC v. Nokia Corp.*, No. 2:22-CV-343-JRG, Dkt. No. 341 at 1259:2–5 (E.D. Tex. Nov. 22, 2024) ("In other words, you should award only those damages that Correct Transmission establishes that it more likely than not suffered as a result of Nokia's infringement if you find infringement."); *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1249:22–25 (E.D. Tex. Jun. 20, 2024) (substantially identical); *Daingean Techs., Ltd. v. AT&T Corp.*, No. 2:23-CV-123-JRG, Dkt. No. 586 at 1283:5–19 (E.D. Tex. Sept. 27, 2025) (substantially identical); *Daingean Techs., Ltd. v. AT&T Corp.*, No. 2:23-CV-123-JRG, Dkt. No. 586 at 1291:15–18 (E.D. Tex. Sept. 27, 2025) (substantially identical); *Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-495-JRG-RSP, Dkt. No. 574 at 1336:14–17 (E.D. Tex. Oct. 31, 2025) (substantially identical).

[43] **Stratasys**: Bambu's instruction serves to confuse the issues between lost profits damages (not at issue for patent infringement) and reasonable royalty damages (at issue). Under reasonable royalty analysis, Stratasys does not need to "establish[] that it more likely than not suffered [monetary damages] as a result of Bambu's infringement" in the manner Bambu asserts.

infringing sale or use of its inventions.

## Z.     Reasonable Royalty[44]

I will now instruct you on how to calculate reasonable royalty damages, if you find damages are appropriate to award in this case.

Stratasys seeks damages in the form of a reasonable royalty.  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of money that Stratasys and Bambu would have agreed to in a hypothetical license negotiation taking place at a time just prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the Asserted Patents were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

[**Bambu**: The law requires that any royalty awarded to Stratasys correspond to the value of the patented invention within the Accused Product, as distinct from other unpatented features.  This is particularly true where the Accused Products have multiple features and multiple components not covered by the patent or where the Accused Products work in conjunction with other non-patented items.][45] The amount you find as damages must be based on the value attributable to the patented

---

[44] **AUTHORITY:** Adapted from *Anonymous Media Research Holds., LLC v. Samsung Elecs. Co.*, No. 2:23-cv-439-JRG, Final Jury Instructions, Dkt. No. 286, Tr. 1069:10–1074:25 (E.D. Tex. September 26, 2025); *Solas Oled Ltd. v. Samsung Display Co.*, No. 2:19-cv-152-JRG Final Jury Instructions, Dkt. No. 354, Tr. at 892:13–901:2 (E.D. Tex. March 8, 2021); *Intellectual Ventures II LLC v. Great W. Cas. Co.*, No. 6:18-cv-299-JRG, Final Jury Instructions, Dkt. No. 110, Tr. at 29:15–33:12 (E.D. Tex. March 21, 2019); *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Dkt. No. 310, Tr. at 51:5–59:13 (E.D. Tex. Aug. 28, 2018).

[45] **Bambu:** *Correct Transmission, LLC v. Nokia Corp.*, No. 2:22-CV-343-JRG, Dkt. No. 341 at 1259:2–5 (E.D. Tex. Nov. 22, 2024) ("Now, the law requires that any damages awarded to Correct Transmission correspond to the value of the alleged inventions within the accused products, as distinct from other, unpatented features of the accused products, or other factors such as marketing or advertising, or either party's size or market position. And this is particularly true where the accused products have multiple features and multiple components not covered by the patents or whether the accused product works in conjunction with other non-patented items."); *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1249:22–25 (E.D. Tex. Jun. 20, 2024) ("The law requires that any royalty awarded to Ollnova correspond to the value of the alleged inventions within the accused product, as distinct from other unpatented features of the

invention, as distinct from unpatented features of the accused products or other factors such as marketing or advertising or size or market position.  A royalty compensating Stratasys for damages must reflect the value attributable to the infringing features of the accused products and nothing more.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features.  [**Bambu**: You may not award damages based on Bambu's revenue from products that you do not find have infringed.[46] Stratasys's evidence must be reliable and tangible; it can't be speculative.[47]]

[**Bambu**: A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the first infringement began.][48, 49]  If you find Stratasys is entitled to damages, both Stratasys and Bambu contend that the parties would have agreed to a running royalty at the time of the hypothetical negotiation.  A running royalty is a fee paid for the right to use the patent that is paid for

---

accused product. This is particularly true where the accused products have multiple features and multiple components not covered by the patent or where the accused products work in conjunction with other non-patented items.").

[46] **Bambu**: *Headwater Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-103-JRG, Dkt. No. 456 at 1197:13–17 (E.D. Tex. July 14, 2025) ("You may not award damages based on Samsung's revenue from products that you do not find have infringed.").

[47] **Bambu**: *Implicit, LLC v. Netscout Sys., Inc.*, No. 2:18-CV-53-JRG, Dkt. No. 240 at 31:15–19 (E.D. Tex. Dec. 18, 2019) ("That is, Implicit must give evidence tending to separate and apportion between the patented features and the unpatented features. And such evidence must be reliable and tangible and not conjectural or speculative."); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-CV-912-JRG-RSP, Dkt. No. 45 at 40:19–24 (E.D. Tex. Oct. 6, 2016) ("Core Wireless bears the burden to establish the amounts attributable to the patented feature; that is, Core Wireless must give evidence tending to separate or apportion between the patented features and the unpatented features and such evidence must be reliable and tangible and not conjectural or speculative.").

[48] **Bambu:** *Correct Transmission, LLC v. Nokia Corp.*, No. 2:22-CV-343-JRG, Dkt. No. 341 at 1259:20–24 (E.D. Tex. Nov. 22, 2024) ("A reasonable royalty, ladies and gentlemen, is the amount of royalty payment that a patent owner and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the infringement first began."); *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1250:14–17 (E.D. Tex. Jun. 20, 2024) ("A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when infringement first began."); *Daingean Techs., Ltd. v. AT&T Corp.*, No. 2:23-CV-123-JRG, Dkt. No. 586 at 1292:12–16 (E.D. Tex. Sept. 27, 2025) ("A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when infringement first began.").

[49] **Stratasys**: This is redundant with what is stated in the second paragraph of this section.

each unit of the infringing products that have been sold. If there are additional units sold in the future, any damages for these sales will not be addressed by you but may be addressed by the Court.

The damages you award, if any, should reflect the total amount necessary to compensate Stratasys for Bambu's past infringement.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are as follows:

1. the royalties received by the patentee for licensing of the Patents-in-Suit proving or tending to prove an established royalty;

2. the nature and scope of the license as exclusive or non-exclusive or as restricted or non-restricted in terms of territory or with respect to whom the manufactured products may be sold;

3. the patent owner's established policy and marketing program to maintain his or her patent exclusivity by not licensing others to use the invention or by granting licenses under special positions designed to preserve that exclusivity;

4. the duration of the patent and the term of the license;

5. the established profitability of the product made under the patent, its commercial success, and its current popularity;

6. the portion of the profit or selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

7. the portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

8. the testimony and opinions of qualified experts;

9. the amount that a licensor, such as the patent owner, and a licensee, such as the infringer, would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement, that is, the amount which a prudent licensee who desired as a business proposition to obtain a license to manufacture and sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit which amount would have been acceptable to a prudent patentee who was willing to grant a license;

10. the utility and advantages of the patented invention over the old modes or devices, if any, that had been used for working out similar results;

11. the extent to which Defendants have made use of the invention, and any evidence probative of the value of that use;

40

12. the nature of the patented invention, the character of the commercial embodiment of it as owned or produced by the licensor, and the benefits to those who have used the invention;

13. the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

14. the rates paid by a licensee for the use of other patents comparable to the Patents-in-Suit; and

15. the commercial relationship between Stratasys and Bambu, such as whether they are competitors in the same territory in the same line of business.

Now, none of these factors, ladies and gentlemen, are dispositive, and you can and you should consider the evidence that's been presented to you in this case on each of these factors. You may have heard these factors referred to during the trial as the *Georgia-Pacific* factors.  You may consider any other factors that in your minds would have increased or decreased the royalty the infringer would have been willing to pay, and the patent owner would have been willing to accept acting as normally prudent businesspeople.

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the Asserted Patents or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would have been negotiated between Stratasys and Bambu in order for you to consider it.  However, if you choose to rely upon evidence from license agreements, you must account for any differences between those licenses and the hypothetically negotiated license in terms of the technology and economic circumstances of the contracting parties when you make your reasonable royalty determination.

In determining a reasonable royalty, you may also consider whether Bambu had commercially acceptable non-infringing alternatives to taking a license from Stratasys that were available at the time of the hypothetical negotiation, and whether that would have affected the reasonable royalty the parties would have agreed upon.

A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or comparable result that does not require using the asserted claims. You may compare the patented invention to non-infringing alternatives to determine the value of the patented invention, including the utility and advantages of the patent over the old modes or devices, if any, that have been used to achieve similar results.

In calculating damages, you must consider whether or not Stratasys or its licensees marked its own products that practice the Asserted Patents, if any such products existed, by placing on or within those products the word "patent" or PAT, period, or the Asserted Patents' numbers. [**Stratasys**: I have already determined that Stratasys was not required to mark the '466 and '774 patents.] [**Bambu**: The

41

parties agree that Stratasys has not marked its products with the '464, '097, and '324 patents.][50] [**Stratasys:** For any products that Bambu asserts practice any Asserted Patents,] [Stratasys has the burden to prove by a preponderance of the evidence that it or its licensees products do not practice any of the '464, '097, and '324 patents.][51] To the extent Stratasys has proven that it or its licensees do not have a product that practices an Asserted Patent, Stratasys does not need to demonstrate that it marked its products for that patent. In such case, the damages period for the '466, '464, '097, and '324 patents begins on May 31, 2022, and for the '744 patent begins on January 30, 2024.

If you find Stratasys or its licensees failed to properly mark their respective products with the '464, '097, and '324 patents, [**Bambu**: then you may only award damages to Stratasys for infringement of the '464, '097, and '324 patents that occurred after Stratasys served the complaint filed in this lawsuit on August 10, 2024.][52] [**Stratasys**: then you may only award damages to Stratasys for infringement of the '464, '097, and '324 patents that occurred as of the date Bambu received notice of these patents.]

[**Bambu**: You cannot award reasonable royalty damages for any Bambu sales that occurred prior to the date that you found infringement began. If you find that Bambu's infringement is indirect rather than direct, then you cannot award damages for Bambu sales occurring earlier than the date that you found Bambu had the knowledge and intent necessary for indirect

---

[50]  **Bambu:** Stratasys's proposed instruction incorrectly states that the Court has "determined that Stratasys was not required to mark the '466 and '774 patents." However, the Court has not made such a determination in this case. Rather, Bambu's proposed instruction correctly frames the issue: marking is only at issue for the '464, '097, and '324 patents.

**Stratasys**: First, Stratasys's proposed instruction correctly states the law, which clearly establishes that no marking obligation applies to patents that contain only method claims. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) ("The law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method."). Second, Bambu's construction misstates the facts and attempts to fabricate a concession where none exists—products have been marked with the '464 Patent. *See* (Dkt. No. 311-5 at 4-5).

[51]  **Bambu**: *Ollnova Techs., Ltd. v. Ecobee, Inc.*, No. 2:22-CV-72-JRG, Dkt. No. 279 at 1256:18–25 (E.D. Tex. Jun. 20, 2024) ("ecobee contends that the APOGEE system provided by Siemens Building Technologies, Inc., is a product that should have been marked with the '282, '887, and '371 patent numbers. The parties agree that the APOGEE system was not marked with those patent numbers. Ollnova has the burden to prove by a preponderance of the evidence that the APOGEE system does not practice any of the '282, '887, and '371 patents. This is an issue that you must decide.").

[52]  **Bambu**: Bambu's proposed instruction accurately informs the jury of the precise date on which from which damages would be calculated.

**Stratasys**: Bambu's proposed instruction ignores evidence of earlier notice that will be in the record.

42

infringement.]⁵³

In considering the evidence of a reasonable royalty, you are not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you consider to be a reasonable royalty based on your consideration of all the evidence presented by the parties, whether that evidence is of a specific figure or a range of figures.

---

⁵³ **Bambu**: *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1448 (Fed. Cir. 1990) (noting "the rule that damages cannot be awarded for contributory infringement unless there is evidence of knowledge of the existence of a patent" and remanding to determine when knowledge occurred); *see also SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-cv-00158-JRG, Dkt. No. 256 at 29 (E.D. Tex. June 18, 2012) (explaining in case with marking and direct/indirect infringement issues that "damages should be calculated as of the date you determine that the infringement began.").

**Stratasys:** Bambu provides no prior instructions similar to what it proposes. Further, Bambu's instruction confuses the issues by speaking only to "Bambu's sales," when sales are only one type of infringing activity.

## AA.    Deliberations[54]

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer the questions in the verdict form based on the facts as you find them, following the instructions that the Court has given you. Do not decide who you think should win and then answer the questions accordingly. Again, your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties, and all corporations, partnerships, and other organizations stand equal before the law, regardless of their size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of these instructions to take with you. If you desire to review any of the exhibits that the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or exhibits to you. Once you retire, you should select your foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your foreperson is to fill in the verdict form, which reflects your unanimous answers to the questions. Do not reveal your answers until such time as you are discharged, unless I direct you otherwise. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer

---

[54] **AUTHORITY:** *Optis Wireless Tech. LLC v. Huawei Techs. Co. LTD.*, No. 2:17-cv-123-JRG, Final Jury Instructions, Final Jury Instructions, Dkt. No. 284 at 28–30 (E.D. Tex. Aug. 28, 2018).

your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise. However, at that time, if you choose to talk about your service as jurors, then you are perfectly free to. At that point, after you have been discharged, that decision will be yours and yours alone.

Now, with those instructions, ladies and gentlemen, we're ready to hear closing arguments from the attorneys in the case.