IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| STRATASYS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHEN TUOZHU TECHNOLOGY CO., LTD., SHANGHAI LUNKUO TECHNOLOGY CO., LTD., BAMBU LAB LIMITED, AND TUOZHU TECHNOLOGY LIMITED,<br><br>Defendants. | Civil Action No. 2:24-cv-00644-JRG<br>LEAD CASE<br><br>Civil Action No. 2:24-cv-00645-JRG<br>MEMBER CASE<br><br>JURY TRIAL DEMANDED |
| BAMBULAB USA, INC., SHENZHEN TUOZHU TECHNOLOGY CO., LTD., SHANGHAI LUNKUO TECHNOLOGY CO., LTD., BAMBULAB LIMITED, AND TUOZHU TECHNOLOGY LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>STRATASYS, INC.,<br><br>Defendant. | Civil Action No. 2:25-cv-00465-JRG<br>MEMBER CASE<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* NOS. 1-5**

████████████████████████████████████

**TABLE OF CONTENTS**

I.   MIL NO. 1: RELATING TO OPEN-SOURCE/ CLOSED-SOURCE ISSUES ...................... 1

II.  MIL NO. 2: RELATING TO PRACTICING PRODUCT IDENTIFICATION UNDER *ARCTIC CAT* ............................................................................................................ 4

III. MIL NO. 3: RELATING TO ████████████████████████████

IV.  MIL NO. 4: RELATING TO COMPARING PRIOR ART AND ACCUSED PRODUCTS 11

V.   MIL NO. 5: RELATING TO NON-PRIOR ART PARTY PATENTS.................................. 13

i

███████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*,
  889 F.3d 735 (Fed. Cir. 2018)......................................................................................11

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001).....................................................................................11

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017)............................................................................ *passim*

*Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*,
  No. 2:21-cv-034-JRG-RSP, 2021 WL 8441751 (E.D. Tex. Dec. 10, 2021) ........................5, 7

*Bd. of Trs. Of the Leland Stanford Junior Univ. v. Chinese Univ. of H.K.*,
  860 F.3d 1367 (Fed. Cir. 2017).....................................................................................14

*Bradley v. Pittsburgh Bd. of Educ.*,
  913 F.2d 1064 (3d Cir. 1990).........................................................................................4

*Chiron Corp. v. Genentech, Inc.*,
  363 F.3d 1247 (Fed. Cir. 2004).....................................................................................14

*EireOg Innovations Ltd. v. Cisco Sys. Inc.*,
  No. 2:24-cv-00224-RWS-RSP (E.D. Tex. Apr. 6, 2026), Dkt. 439 ......................................11

*Giles v. State Farm Fire & Cas. Co.*,
  2023 WL 5598991 (S.D. Miss. Aug. 29, 2023)...................................................................4

*Headwater Rsch. LLC v. Samsung Elecs. Co.*,
  2024 WL 3843760 (E.D. Tex. July 15, 2024) ....................................................................5

*Infernal Tech., LLC v. Sony Interactive Ent. LLC*,
  No. 2:19-cv-00248-JRG, 2021 WL 405813 (E.D. Tex. Feb. 3, 2021) ................................3, 8

*Louzon v. Ford Motor Co.*,
  718 F.3d 556 (6th Cir. 2013) ..........................................................................................4

*Meyer Intell. Props. Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012).......................................................................................4

*Mid-America Tablewares, Inc. v. Mogi Trading Co.*,
  100 F.3d 1353 (7th Cir. 1996) ........................................................................................4

███████████████████████████

*Oyster Optics, LLC v. Infinera Corp.*,
No. 2:19-cv-257, 2021 WL 12146689 (E.D. Tex. Mar. 26, 2021) .............................................5

*Plant Genetic Sys. v. DeKalb Genetics Corp.*,
315 F.3d 1335 (Fed. Cir. 2003) ("the district court properly used later reports
as evidence of the state of the art existing in 1987") ...................................................14

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013)..............................................................................................14

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
No. 2:13-cv-213-JRG-RSP, 2015 WL 627430 (E.D. Tex. Jan. 31, 2015) ...............................5

*Ruiz v. A.B. Chance Co.*,
234 F.3d 654 (Fed. Cir. 2000)................................................................................................14

*Sk Nexilis Co., Ltd. v. Solus Adv. Mat'ls Co., Ltd. et al.*,
2:23-cv-539 (E.D. Tex. Apr. 6, 2026), Dkt. 359 (Payne, J.)....................................................5

*Smart Path Connections, LLC v. Nokia*,
No. 2:22-cv-296-JRG-RSP, 2024 WL 1073037 (E.D. Tex. Feb. 2, 2024)................................7

*Solas Oled Ltd. v. Samsung Elecs. Co.*,
No. 2:21-cv-105-JRG-RSP, 2022 WL 1912873 (E.D. Tex. May 30, 2022) ............................5

*Super Interconnect Techs. LLC v. Huawei Device Co. Ltd. et al.*,
No. 2:18-cv-462-JRG (E.D. Tex. Nov. 13, 2019), Dkt. 74................................................5, 6, 7

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
563 F.3d 1271 (Fed. Cir. 2009)........................................................................................10, 15

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
2013 WL 4456161 (N.D. Cal. Aug. 16, 2013) .......................................................................10

*U.S. Steel Corp. v. Phillips Petroleum Co.*,
865 F.2d 1247 (Fed. Cir. 1989)..............................................................................................15

*Vas-Cath Inc. v. Mahurkar*,
935 F.2d 1555 (Fed. Cir. 1991)..............................................................................................15

**Statutes**

35 U.S.C. § 271(c), and (ii)....................................................................................................12

**Other Authorities**

Rule 56 ...............................................................................................................................4, 8

Rule 403 ................................................................................................................................11

## I.    MIL NO. 1: RELATING TO OPEN-SOURCE/ CLOSED-SOURCE ISSUES

Stratasys acknowledges that Bambu "asserts under an affirmative defense that it has a license to one of Stratasys' patents pursuant to an open-source license." Dkt. 311 at 1. That admission dooms Stratasys's MIL. Bambu has asserted license, exhaustion, and estoppel defenses that arise directly from open-source activities that encumber at least some of the patents in suit. *See* Dkt. 224 at 1, 3–4, 5–15. Bambu framed those defenses around the accused Classic and Arachne modes in Bambu Studio, which "originate from open-source projects—Classic from Slic3r and Arachne from CuraEngine." *Id*. at 3–4. Stratasys cannot accuse open-source-originating code of infringement and then block Bambu from explaining the licensing structure, origin of that code, and the patent-license consequences Bambu contends flowed from Stratasys's conduct. *See id*. at 3–4, 8–15. To the extent Stratasys says it fears an anti-patent narrative, its own motion quotes Court MIL No. 7, which bars either side from suggesting that "there is anything legally improper in filing a patent application or writing patent claims to cover an adverse party's product." Dkt. 311 at 1–2.

Stratasys's MIL No. 1 rests on the false premise that Bambu's open-source evidence is policy commentary. It is not. Stratasys accuses Bambu Studio's "Classic" and "Arachne" modes of infringing the '357 Patent, and the evidence shows that those modes originated in open-source projects that encumber some of the patents in suit. Dkt. 224 at 3–4. Having chosen to accuse functionality that derives from open-source software, Stratasys cannot now ask the Court to prevent Bambu from explaining what it means for that code to be open-source, including what license obligations attach to it. Dkt. 311 at 3.

The report of Bambu's expert, Dr. Hackney, supplies exactly that framework. He explains that open-source software has publicly available source code, a license that allows users to "view, modify, and redistribute" it, and the right to "fork" such software, which is "fundamental to open-

1

source development." Ex. 1-1 (Hackney Rpt.) ¶¶ 16, 51. Dr. Hackney also explains that some open-source licenses explicitly grant patent rights. *See id*. ¶ 23 ("The Apache License explicitly grants users a royalty-free license to any patents that might cover the contributed code."). Dr. Hackney's report also ties the licensing framework to the actual software ecosystem at issue here. He explains that Slic3r was released under AGPLv3, and that "PrusaSlicer forked from Slic3r," "Bambu Studio forked from PrusaSlicer," and "OrcaSlicer forked from Bambu Studio." *Id*. ¶ 52. He further explains how the relevant license "explicitly permits commercial use" and "open-source participation and commercial success are not mutually exclusive." *Id*. ¶¶ 53, 55.

In other words, Bambu does not seek to debate the virtues of open-source. Bambu offers open-source evidence because Stratasys's own infringement theory places open-source-derived code at issue, and the jury cannot fairly evaluate Bambu's license-related defenses without understanding the open-source lineage of the accused functionality and the related licensing and patent consequences. *See* Dkt. 224 at 8–15; Ex. 1-1 (Hackney Rpt.) ¶¶ 41–55.

Faced with detailed portions of Dr. Hackney's report tied to specific license defenses, Stratasys focuses on isolated phrases and tries to recast all open-source evidence as ideology. Stratasys complains that Dr. Hackney discusses "vendor lock-in," "collective patent peace," and how the open-source community "felt betrayed" by MakerBot's shift to closed-source software. Dkt. 311 at 1–2. But Dr. Hackney's report does far more than that. It explains the structure and differences among open-source licenses; the difference between GPL, LGPL, AGPL, and permissive licenses; the role of derivative works; why distribution matters; and how patent grants can arise when contributors distribute GPL-covered code. Ex. 1-1 (Hackney Rpt.) ¶¶ 20–25, 41–49, 51–55. Dr. Hackney explains that different open-source licenses reflect different priorities and that "[n]either [license] approach is inherently better;" rather, they "represent different values and

2

serve different purposes." *Id*. ¶ 24.

If the jury hears only that Bambu's software performs accused functions but not how those functions trace to open-source projects or that Stratasys distributed, authorized, or licensed the relevant code in ways carrying patent-license consequences, the jury will receive the accusation without the context necessary to evaluate Bambu's defenses. Dr. Hackney's report explains open-source development as a licensing structure in which contributors, forks, and distributions are not accidental background facts, but the mechanism by which rights and obligations propagate through the software ecosystem. *Id*. ¶¶ 17, 44–49, 51–55. If the jury is barred from hearing that framework, it will be left with a half-told story, which is more likely to confuse.

Stratasys belatedly attempts to litigate the adequacy of Dr. Hackney's opinions through a motion *in limine*. It argues that Dr. Hackney "did not review 'any of the asserted patents,'" did not "identify any Stratasys patent claim" licensed under AGPL or infringed by AGPL code, and did not conclude that Stratasys "does not get to enforce its patents against Bambu in this case." Dkt. 311 at 2. But those are areas to explore on cross-examination—not justification for excluding the subject of open-source. Indeed, Stratasys already moved for summary judgment on Bambu's license-related defenses, and Bambu's opposition explained why open-source lineage, contributor status, essential patent claims, distribution, exhaustion, and estoppel are triable issues. *See* Dkts. 181, 224. Stratasys should not get a second bite at the apple. *See Infernal Tech., LLC v. Sony Interactive Ent. LLC*, No. 2:19-cv-00248-JRG, 2021 WL 405813, at *6 (E.D. Tex. Feb. 3, 2021) (motions *in limine* that attempt to relitigate dispositive motions are not proper motions *in limine*).

At most, Stratasys's criticisms go to the weight of the evidence. They do not support a categorical exclusion of the background of Bambu's defenses. The Court should deny MIL No. 1.

3

## II.   MIL NO. 2: RELATING TO PRACTICING PRODUCT IDENTIFICATION UNDER *ARCTIC CAT*

Stratasys's MIL No. 2 is not a proper motion *in limine* but instead attempts to backend a substantive issue—whether Bambu cleared the low hurdle for its *Arctic Cat* burden. The Federal Circuit has held it is error to address "the sufficiency of [a party's] defense on an evidentiary motion" because doing so "essentially convert[s] a motion *in limine* into a motion for summary judgment," which does "not allow for full development of the evidence." *Meyer Intell. Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012).[1] Having failed to move for summary judgment, Stratasys cannot now deprive Bambu of the procedural protections of Rule 56.

Even if a MIL were the correct vehicle for this dispute, Stratasys has not shown that Bambu's evidence of unmarked products should be precluded. Bambu properly identified products that should have been marked, satisfying the "low bar" under controlling law. Stratasys's MIL No. 2 mischaracterizes Bambu's production, presents a partial record, and should be denied.

An accused infringer's burden for marking is a "low bar." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) ("*Arctic Cat I*"). It needs only "put the patentee on notice" of "products which the alleged infringer **believes** practice the patent." *Id.* (emphasis added). After the accused infringer clears this low bar, the patent holder "bears the burden of proving that it satisfied the marking requirements." *Id.* at 1369.

Bambu met its burden here. Stratasys admits that Bambu identified a list of unmarked

---

[1] Other courts, including those in the Fifth Circuit, have similarly held that "[a] motion in limine is not a substitute for a motion for summary judgment." *Giles v. State Farm Fire & Cas. Co.*, 2023 WL 5598991, at *3 (S.D. Miss. Aug. 29, 2023); *see also Louzon v. Ford Motor Co.*, 718 F.3d 556, 560–63 (6th Cir. 2013) (MILs that are "no more than a rephrased summary-judgment motion" should not be considered, for they "deprive[] [the] opponents of the procedural protections that attach at summary judgment."); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990) (reversing where the court's procedure "converted the in limine motion into one for summary judgment"); *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996) (affirming denial of an MIL because arguments attacking the "sufficiency of . . . evidence" are "not a proper basis for a motion to exclude evidence prior to trial").

4

██████████████████████████

products almost a year ago. *See* Ex. 2-1 at 2–9. For each product, Bambu also identified the patents[2] it believed were practiced—surpassing the "low bar" of its *Arctic Cat* burden. *See, e.g., Sk Nexilis Co., Ltd. v. Solus Adv. Mat'ls Co., Ltd. et al.*, 2:23-cv-539 (E.D. Tex. Apr. 6, 2026), Dkt. 359 at 8–9 (Payne, J.), *adopted by* Dkt. 369 (Gilstrap, J.) (The "initial burden of production under *Arctic Cat* is only to identify which products practice the asserted patents, not which patents those products practice." (citing *Headwater Rsch. LLC v. Samsung Elecs. Co.*, 2024 WL 3843760, at \*2 (E.D. Tex. July 15, 2024)).

Stratasys relies on the false premise that Bambu was required to explain **why** the products practice, which is incorrect for numerous reasons. **First**, Stratasys identifies no cases finding an accused infringer did not meet its *Arctic Cat* burden because it failed to elucidate the basis of its belief.[3] Nor could it, as multiple cases in this District show this is not necessary. *See, e.g., Super Interconnect Techs. LLC v. Huawei Device Co. Ltd. et al.*, No. 2:18-cv-462-JRG (E.D. Tex. Nov. 13, 2019), Dkt. 74 at 3-4 (finding the accused infringer met its burden when it "identified the specific products"); *Solas Oled Ltd. v. Samsung Elecs. Co.*, No. 2:21-cv-105-JRG-RSP, 2022 WL 1912873, at \*2 (E.D. Tex. May 30, 2022) ("The *Arctic Cat* burden of production is a low bar predicated upon belief, not proof. . . . It is not necessary to wait . . . until deposition testimony ostensibly proves that the unmarked products actually practiced."); *see also Nexilis*, at 8–9.

Stratasys also incorrectly claims that Bambu's product identification is a "large scale

---

[2] Stratasys claims Bambu overidentified products because, *inter alia*, Bambu included patents consisting of method claims. But Bambu did so ██████████████████ ████████████████████████████████. As Bambu told Stratasys, it does not argue that a marking obligation applies to patents containing only method claims. *Id.* at 1.

[3] Stratasys's cases demonstrate only what was **sufficient** for accused infringers to meet their burden—not what is **necessary**. *See* Dkt. 311 at 7–8 (citing *Oyster Optics*, *Barkan Wireless*, and *Arctic Cat*). For example, the defendant in *Oyster Optics* "satisfie[d] the notice standard" after it identified unmarked products and provided a description of their basis. *Oyster Optics, LLC v. Infinera Corp.*, No. 2:19-cv-257, 2021 WL 12146689, at \*2 (E.D. Tex. Mar. 26, 2021). But the Court did not say that without such identification, the defendant would not have met its burden.

5

█████████████████████████████████

fishing expedition." Dkt. 311 at 7 (quoting *Arctic Cat I*). Stratasys's website lists 26 different current printer offerings,[4] and UltiMaker's and MakerBot's websites list at least 10 more.[5] This does not include the dozens of previous products no longer sold. From this "entire universe," Bambu identified a "subset" of unmarked practicing products—14 Stratasys, 11 MakerBot, and 16 UltiMaker printers—so "the concerns of a 'large-scale fishing expedition' are alleviated." *Super Interconnect*, Dkt. 74 at 4.

Stratasys also ignores the origin and number of the asserted patents in critiquing the "271 patent practicing assertions." Dkt. 311 at 4. Stratasys asserts ten patents—seven of which it acquired after releasing many of the identified products. With Stratasys's expansive product portfolio across 3D printing markets, failure to follow a strict marking policy would necessarily result in a large number of unmarked products. Indeed, Stratasys's own 30(b)(6) witness testified that ███████████████████████████████████ ██████████████████████████████████ so it makes sense that many products would not have been marked. ███████████████████████

**Second**, Bambu's initial notice was reasonable under the circumstances. Stratasys refused to produce **any documents** for its potentially-practicing products before Bambu identified which were practicing. Ex. 2-1 at 1. Bambu was thus forced to rely on publicly-available information. Ex. 2-1 at 1; Ex. 2-2 at 4.[6] And while Stratasys mistakenly claims that Bambu did not identify "what publicly available materials were reviewed and how those materials formed the basis for the

---

[4] Non-FDM printers (like the H350, *see* Dkt. 311 at 4 n.1) can practice the patents. *See* Dkt. 169 at 38 (finding the claims of the '713 Patent are not limited to FDM).
[5] Stratasys complains that "most of [Bambu's assertions] relate to third-party products." Dkt. 311 at 4. But seven of the ten asserted patents were previously owned by MakerBot, and ████████ ████████, so third-party products are clearly relevant. *See supra* Part III.
[6] Even after Bambu served its initial *Arctic Cat* letter, Stratasys withheld relevant materials, as evidenced by its technical experts reliance on product documents that were never produced. *See, e.g.*, Ex. 2-3 at ¶¶ 2194–2288.

■■■■■■■■■■■■■■■

. . . letter" (Dkt. 311 at 4), the very next page of Stratasys's motion shows where Bambu cited Stratasys's "user manual for the Fortus 450mc" and other "publicly available manuals." *Id.* at 5 (quoting Ex. F, *Arctic Cat* reply letter).

Bambu's identification of Stratasys's products also occurred relatively early in the case, before the close of claim construction or the deposition of any witnesses. Bambu's identification thus relied on the same interpretation that Stratasys advanced in its infringement contentions, and as Bambu explained in its November 7 letter, accused infringers are "expressly authorized by *Arctic Cat*" to identify "a product is an unmarked patented article under **plaintiff's infringement contention**," even if they do not agree with plaintiff's theory.  Ex. 2-2 at 5 (quoting *Smart Path Connections, LLC v. Nokia*, No. 2:22-cv-296-JRG-RSP, 2024 WL 1073037, at *3 (E.D. Tex. Feb. 2, 2024)); *see also Super Interconnect*, Dkt. 74 at 4 ("Google identified the specific products which Google contends are not marked, but under SIT's infringement contentions, would have required marking."). Stratasys thus ignores the law in claiming that Bambu's *Arctic Cat* representation is inconsistent with its noninfringing alternative position. Dkt. 311 at 5 & n.3.

**Third**, even if Bambu were required to identify the basis of its belief, Bambu did so. By identifying specific patent-product pairings, Bambu provided sufficient "guidance" to Stratasys. *Super Interconnect*, Dkt. 74 at 3–4.[7] Additionally—and contrary to Stratasys's assertions (Dkt. 311 at 7-8)—Bambu met its burden by identifying ■■■■■■■■■■

■■■■■■■■■■ *See id.*; ■■■■■■■■■

■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■

---

[7] This applies with equal force to the patent-product pairings in Bambu's last interrogatory response. *See* Dkt. 311 at 6–7 & n.5. Bambu's additional disclosures were based on patent-product pairings identified during fact discovery and involved only variants of products identified in its initial *Arctic Cat* letter, so Stratasys did not lack adequate notice.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Bambu also explained the basis of its belief in its initial *Arctic Cat* letter. Bambu informed Stratasys that its investigation was "based on publicly available information as well as Stratasys's documents and representations," which included its infringement theories. Ex. 2-1 at 11. Bambu elaborated in its November 7 letter, providing exemplary claim element analysis for the '464 and '324 Patents based on the same claim interpretation Stratasys presented in its infringement contentions. Ex. 2-2 at 4–5. This was sufficient to satisfy the "low bar" of Bambu's burden of "production." *Arctic Cat I*, 876 F.3d at 1368. Stratasys's MIL No. 2 should thus be denied.

## III. MIL NO. 3: RELATING TO ███████████████████████

Stratasys's MIL No. 3 is procedurally yet another motion for summary judgment of Bambu's marking and license defenses. Stratasys asks this Court to "preclude the parties from presenting any evidence, argument, or testimony alleging that ████████████████████ ████████████," claiming Bambu's interrogatory response was "never substantiated." Dkt. 311 at 9. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████  ████████████████████.

Stratasys's attack on the merits of Bambu's defenses fails for two procedural reasons. First, Stratasys cannot use a motion in limine as a backdoor to bypass Rule 56. Second, Stratasys already moved for summary judgment on Bambu's license defense. *See* Dkt. 181. And a MIL is not an avenue to provide a second bite at the apple. *See Infernal Tech.*, 2021 WL 405813 at *6.

███████████████████████████████████████████

Even on the merits, Stratasys's motion fails because of factual disputes regarding ████████████████████████████, which Bambu explained in its Opposition to Stratasys's motion for summary judgment. Dkt. 224 at 5–6. Stratasys ignores that it██████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

The evidence shows that ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████    ████████████████████████████████

████████████████████████████████████

The agreement was also structured so that ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

---

█ ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████

9

10

████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Stratasys's Rule 403 argument fares no better. It consists of a single sentence identifying no specific unfair prejudice and no balancing analysis. ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████ This motion should thus be denied.

## IV. MIL NO. 4: RELATING TO COMPARING PRIOR ART AND ACCUSED PRODUCTS

Stratasys's MIL No. 4 should be denied because it attempts to improperly expand the Court's Standing MIL No. 18. Under the guise of preventing an improper "practicing the prior art" defense, Stratasys seeks to bar any comparisons of the accused products to the prior art "for purposes of validity, invalidity, infringement, or non-infringement." Dkt. 311 at 10. This contradicts settled law. An accused infringer can properly argue that if a patent holder relies on an overbroad application of its claims to ensnare an accused product, those claims also cover the prior art. *01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742–43 (Fed. Cir. 2018).[10] This District recently denied a similar motion, permitting an expert to opine that the claim scope required by a plaintiff's infringement theories rendered the claims anticipated. *EireOg Innovations Ltd. v. Cisco Sys. Inc.*, No. 2:24-cv-00224-RWS-RSP (E.D. Tex. Apr. 6, 2026), Dkt. 439 at 4–5.

To be clear, Bambu will comply with Court MIL No. 18. Its non-infringement defense rests on a strict, element-by-element comparison, not a defense that "conflate[s] the infringement and invalidity inquiries." *01 Communique*, 889 F.3d at 742. But Stratasys should not be allowed to use the specter of a prohibited defense to foreclose legitimate invalidity arguments, or to exclude

---

[10] *See also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("A patent may not, like a nose of wax, be twisted one way to avoid anticipation and another to find infringement.").

evidence probative of Bambu's license defense, damages, and rebuttal of Stratasys's indirect-infringement theories. Court MIL No. 18 draws the correct boundary, unlike Stratasys's MIL.

Stratasys relies on paragraphs that do not advance a non-infringement or invalidity comparison at all. Stratasys points to Dr. Mueller's reference to the Kao paper (¶¶ 121, 129), his discussion of open-source slicers (¶ 63), and his observation that Classic Mode and Arachne Mode derive from PrusaSlicer and CuraEngine (¶ 62). *See* Dkt. 311-15. The first two examples, paragraphs 121 and 129, appear in Dr. Mueller's response to Dr. Osswald's infringement theories—specifically, his analysis of why the medial axis and skeletal structures in Bambu Studio are not "paths" within the meaning of the claims. Dr. Mueller quotes Kao to explain what a medial axis transform (MAT) *is*, not to argue that the accused products do not infringe because they practice Kao. *See id* at ¶ 129. Stratasys's own expert does the same thing: Dr. Osswald cites the Kuipers paper to explain the skeletonization process used by Bambu Studio's "Arachne" Mode and then maps that process to the claim limitations. *See* Ex. 4-1 (Osswald Op. Rpt.) ¶¶ 676–77.

As for the remaining challenged paragraphs (¶¶ 62–63), those appear in Dr. Mueller's **background discussion** of the accused products, not in any infringement or invalidity section. Dr. Mueller's discussion of open-source slicers serves several purposes unrelated to whether an accused product practices the asserted claim—namely: damages, intent for inducement, and Bambu's license, exhaustion, and estoppel defenses. First, the free availability of alternative slicers with comparable functionality constrains the hypothetical-negotiation royalty because a willing licensee would account for the existence of non-infringing substitutes. Second, because Stratasys pursues indirect-infringement theories, the availability of third-party slicers is relevant to both: (i) whether the accused printers have substantial non-infringing uses, which bears on contributory infringement under 35 U.S.C. § 271(c), and (ii) whether Bambu possessed the specific intent to

12

encourage infringement, which is an element of inducement under § 271(b). Evidence that end users can operate Bambu printers with slicers that do not practice the asserted claims goes directly to elements Stratasys must prove. The observation that Classic Mode derives from PrusaSlicer and Arachne Mode from CuraEngine likewise does not support a non-infringement argument. It is relevant to Bambu's license, exhaustion, and estoppel defenses and reinforces the damages analysis for the reasons described above.

Stratasys's own motion demonstrates why it should not be granted. Stratasys claims it seeks to prohibit comparisons made "for purposes of validity, invalidity, infringement, or non-infringement." Dkt. 311 at 10. Yet every paragraph Stratasys cites serves a purpose that falls outside this scope. Granting MIL No. 4 would thus arm Stratasys with a rule it has already demonstrated it will misapply. The Court should deny MIL No. 4 and police the boundary by its own Court MIL No. 18.

## V.    MIL NO. 5: RELATING TO NON-PRIOR ART PARTY PATENTS

Despite framing MIL No. 5 as only excluding "**non-prior art** patents," Stratasys then asks this Court to categorically ban "any non-damages evidence or argument of a **party's patent**." Dkt. 311 at 13 (emphasis added). Stratasys concedes that "[b]oth parties' experts properly address" such patents "to establish the amount of damages" (*id.*, n.6), but these patents are also relevant to the state of the art and scope of the asserted patents. The motion should thus be denied.

The parties' non-asserted patents are relevant to validity because they establish the state of the art when the asserted patents were filed. For example, the founder and corporate representative of Stratasys—Mr. Scott Crump—received a patent that set the foundation for the entire 3D printing industry in 1989, making it highly relevant to the case and the technical background of the asserted patents. Bambu's experts relied on that and other Stratasys patents to explain what was known in the art and the underlying motivations to combine. *See, e.g.*, Ex. 5-1 ¶ 99; Ex. 5-2 ¶¶ 748–49, 753.

13

This is proper. *See, e.g., Randall Mfg. v. Rea*, 733 F.3d 1355, 1362-63 (Fed. Cir. 2013) ("[W]e have emphasized the importance of a factual foundation to support a party's claim about what one of ordinary skill in the relevant art would have known," and "[o]ne form of evidence to provide such foundation, perhaps the most reliable . . . is documentary evidence consisting of prior art in the area."); *Plant Genetic Sys. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1344 (Fed. Cir. 2003) ("the district court properly used later reports as evidence of the state of the art existing in 1987"); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 665 (Fed. Cir. 2000) ("The reason, suggestion, or motivation to combine may be found explicitly or implicitly . . . in the knowledge of those of ordinary skill in the art that certain references, or disclosures in those references, are of special interest or importance in the field . . . 'leading inventors to look to references.'").

Stratasys mistakenly states that Bambu relied on a later, "**unrelated** patent application" filed by Stratasys to show that the '713 patent lacks written description. Dkt. 311 at 13–14 (emphasis added). But this later application specifically references the '713 patent as prior art, which makes sense because both have titles including the word "PURGE TOWER." Ex. 5-3 at [0008]. Stratasys's corporate witness, who is also an inventor for the later application, explained the differences between the patents, including what Stratasys had not yet invented when it filed for the '713 patent. *See, e.g.*, Ex. 5-4 at 226:19–230:13; 231:23–232:23; 235:24–236:6. The later application and related testimony are thus relevant to whether the inventors of the '713 patent had "possession" of the claimed subject matter **as of the filing date**, as required by Section 112. *See, e.g., Bd. of Trs. Of the Leland Stanford Junior Univ. v. Chinese Univ. of H.K.*, 860 F.3d 1367, 1378 (Fed. Cir. 2017) (holding the written description "inquiry may include an analysis of whether the record contains testimony or evidence . . . showing that any post-filing date publications contain art-related facts . . . existing on the filing date"); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247,

14

1255 (Fed. Cir. 2004) ("the Chiron scientists, by definition, could not have possession of, and disclose, the subject matter of chimeric antibodies that did not even exist at the time.").

Stratasys's cited cases merely address the misuse of post-priority-date evidence to show later state of the art, rather than the appropriate use to show the state of the art as of the filing date. *See Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1566 (Fed. Cir. 1991) (the district court erred in relying on patentee's later patents to expand the scope covered by the patent at issue); *U.S. Steel Corp. v. Phillips Petroleum Co.*, 865 F.2d 1247, 1251–52 (Fed. Cir. 1989) (evidence of enablement "immaterial" because "it was directed solely to a later state of the art."). And despite its criticism, Stratasys's own expert relies on testimony from the inventor of the later application covering ▮

Lastly, Bambu will not argue non-infringement based on the accused products practicing other patents, including Bambu's own patents. Indeed, Stratasys has not identified anywhere in the record where Bambu made such arguments because none exists. Bambu should be allowed, however, to mention that they have their own patents, which this Court has permitted in the past. In *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, the granted MIL forbid arguing that practicing other patents was a defense to infringement, but the Court specified that the motion in limine "does **not** foreclose testimony regarding general information that [the defendant] has its own patents." No. 2:13-cv-213-JRG-RSP, 2015 WL 627430, at *2 (E.D. Tex. Jan. 31, 2015). Bambu should be permitted to present the same general information here.

15

Dated:  April 20, 2026

Respectfully submitted,

/s/ Michael A. Vincent
Gregory P. Love (TX 24013060)
greg@stecklerlaw.com
STECKLER WAYNE & LOVE
107 E Main Street
Henderson, TX 75652
Tel: (903) 212-4444

Carl E. Bruce (TX 24036278)
bruce@fr.com
Thomas H. Reger, II (TX 24032992)
reger@fr.com
Aaron P. Pirouznia (TX 24098958)
pirouznia@fr.com
Michael A. Vincent (TX 24105738)
vincent@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070

David M. Barkan (CA 160825)
barkan@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070

Brendan F. McLaughlin (DC 1671658)
bmclaughlin@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W.
Washington, DC 20024
Tel: (202) 783-5070

Attorneys for Defendants
SHENZHEN TUOZHU TECHNOLOGY CO.,
LTD., SHANGHAI LUNKUO
TECHNOLOGY CO., LTD., BAMBULAB
LIMITED, TUOZHU TECHNOLOGY
LIMITED, AND BAMBULAB USA, INC.

16

███████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served on April 20, 2026, to all counsel of record via electronic mail.

/s/ Michael A. Vincent
Michael A. Vincent

███████████████████████

██████████████████████████████

███████████████████

████████████████
███████

17