# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| STRATASYS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> SHENZHEN TUOZHU TECHNOLOGY CO. LTD., SHANGHAI LUNKUO TECHNOLOGY CO. LTD., BAMBULAB LTD., *and* TUOZHU TECHNOLOGY LIMITED <br><br> *Defendants*. | § § § § § § § § § § § § § § § | CASE NO.  2:24-CV-00644-JRG <br> (LEAD CASE) <br><br> CASE NO.  2:24-CV-00645-JRG <br> (MEMBER CASE) |
| BAMBULAB USA, INC., SHENZHEN TUOZHU TECHNOLOGY CO. LTD., SHANGHAI LUNKUO TECHNOLOGY CO. LTD., BAMBULAB LIMITED, *and* TUOZHU TECHNOLOGY LIMITED, <br><br> *Plaintiffs*, <br><br> v. <br><br> STRATASYS, INC., <br><br> *Defendant*. | § § § § § § § § § § § § § § § | CASE NO.  2:24-CV-00465-JRG <br> (MEMBER CASE) |

## MEMORANDUM OPINION AND ORDER

The Court held a Pretrial Conference in the above-captioned case on May 7, 2026 through May 8, 2026 regarding pending pretrial motions, motions in *limine* ("MILs"), and disputed exhibits between Plaintiff ("Plaintiff" or "Stratasys") and Defendants ("Defendants" or "Bambu") in the above-captioned matter (together with Plaintiff, the "Parties") (Dkt. Nos. 104, 151, 154, 174-78, 180-93, 311, 312).  This Order memorializes the Court's rulings on the pretrial motions, MILs, and disputed exhibits as announced from the bench and read into the record, including additional

instructions that were given to the Parties. While this Order summarizes the Court's rulings as announced into the record during the Pretrial Conference, this Order in no way limits or constrains such rulings from the bench. Accordingly, it is hereby **ORDERED** as follows:

1. **Defendants' Post-Institution Motion To Stay Pending Completion of *Inter Partes* Review (Dkt. No. 104).**

   The motion was **DENIED**.

2. **Plaintiff's Motion for a Protective Order Prohibiting Defendants from Deposing Stratasys Limited CEO, Dr. Yaov Zeif (Dkt. No. 154).**

   The motion was **DENIED**. The Court permitted a remote deposition of Dr. Zeif, not to last more than four (4) hours.

   Following this ruling, counsel advised that Defendants had offered their own CEO for deposition. Plaintiff thus sought the Court's approval for such deposition—albeit for seven hours. The Court approved of that deposition. However, both CEO depositions (that of Dr. Zeif and of Defendants' CEO) must be the same amount of time. Counsel represented that they would confer on the precise timing with the understanding that the time of both depositions would be equal.

3. **Defendants' Motion for Summary Judgment of Invalidity of U.S. Patent No. 7,555,357 under 35 U.S.C. § 101 (Dkt. No. 174).**

   The motion was **DENIED**.

   The Court found that the claims are not directed to an abstract idea under *Alice* Step 1. The claims provide a solution to an issue overcoming a specific problem in this technological field, and much like the reasoning in *DDR Holdings* or in *Enfish*.

4. **Defendants' Motion for Summary Judgment of Invalidity of U.S. Patent Nos. 10,569,466 and 11,167,464 under 35 U.S.C. § 101 (Dkt. No. 175).**

   The motion was **DENIED**. The Parties agreed that claim 19 is representative of the '466 and claim 1 is representative of the '464 for the purposes of this motion.

2

The Court found that the claims are directed to an abstract idea under Step 1. However, the Court found that there are questions of fact that exist with regard to whether the claims recite well-known, routine, or conventional ideas. Plaintiff's technical expert, Dr. Gall, analyzed the inventiveness of the concepts and the inventiveness of the asserted claims in his report. The Court also found that Defendants had failed to sufficiently analyze the ordered combination of the claims and thus likely failed to meet their burden there.

5. **Defendants' Motion for Summary Judgment of Invalidity of U.S. Patent No. 7,555,357 under 35 U.S.C. § 101 (Dkt. No. 176).**

The motion was **DENIED**.

The Court found that the claims are directed to the abstract idea of collecting, organizing, and displaying data. However, the Court found that there is an open question of fact as to whether the claims are, in fact, well-known, routine, or conventional, or whether they add a sufficiently inventive concept to survive *Alice* Step 2. Ms. Leonard testified that querying a target printer for configuration information is part of an inventive concept described by the '357 Patent's claims. She also testified that receiving a dictionary of configuration information from the target printer was something invented by her and her co-inventor.

6. **Defendants' Motion for Summary Judgment of Invalidity of Claim 7 of U.S. Patent No. 9,592,660 (Dkt. No. 177).**

The motion was **GRANTED**.

The Court found that the claim construction opinion on "thermally conductive plate" regarding claim 1 applied to claim 7. The Court found no basis on which to conclude that the remainder of claim 7 rescued it from indefiniteness. Accordingly, the Court found that claim 7 was indefinite for the same reasons claim 1 was found indefinite at claim construction.

7. **Defendants' Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 11,886,774 (Dkt. No. 178).**

The motion was **DENIED**.

On the issue of Bambu Studio's capability of creating a fabricating profile based on the one or more properties because it requires manual inputs, the Court **denied** the motion.

On the issue of Bambu Studio's capability of creating a fabricating profile based on the one or more properties because it relies on one or more presets, the Court **denied** the motion.

The Court found that Bambu's arguments underlying the motion should have been asserted at claim construction. To the extent the Defendants assert plain and ordinary meaning, there's a sufficient factual dispute between the experts' positions here on what the text of the patent requires so as to preclude summary judgment.

8. **Defendants' Motion for Summary Judgment of Non-Infringement of the '324 Patent as to the "Point of View" Limitation (Dkt. No. 180).**

The motion was **DENIED**.

On the issue of whether the accused products literally infringe, the Court **denied** the motion.

On the issue of whether the accused products infringe under the doctrine of equivalents, the Court **denied** the motion.

9. **Plaintiff's Motion for Summary Judgment on Defendants' License Defense (the Eleventh Affirmative Defense) (Dkt. No. 181).**

The Motion was **GRANTED IN PART**.

As to the '357 Patent, the Court **denied** the motion. The Court found there were factual disputes that preclude summary judgment, including at least: (1) whether Plaintiff has the requisite control over the subsidiaries WidowMaker and MakerBot after the relevant merger; and (2) whether Bambu materially modified the ReplicatorG or Slic3r code available in open source repositories.

However, Defendants did not dispute that the license defense did not apply to any asserted patent other than the '347 patent. The thus Court **granted** the motion with respect to all other asserted patents.

**10. Defendants' Motion for Summary Judgment of Non-Infringement of the '713 Patent by Single-Nozzle Printers (Dkt. No. 182).**

The motion was **DENIED**.

On the issue of whether Plaintiff failed to accuse multiple print heads or deposition lines, the Court **denied** the motion.

On the issue of whether Plaintiff failed to accuse standby mode, the Court also **denied** the motion.

Much of Defendants' arguments for both issues were disposed of at claim construction.

**11. Defendants' Motion for Summary Judgment of Non-Infringement of the '324 Patent as to the "Processer" Limitation (Dkt. No. 183).**

The motion was **GRANTED IN PART**.

On the issue of whether the accused products literally infringe, the Court **granted** the motion.

On the issue of whether the accused products infringe under the doctrine of equivalents, the Court **denied** the motion.

**12. Plaintiff's Motion for Partial Summary Judgment of No Invalidity under Grounds 1-4 against the '713 Patent (Dkt. No. 184).**

The motion was **GRANTED IN PART**.

On the issue of whether Defendants' stipulation and arguments at the PTAB barred the use of the Kisslicer Pro and Dual Extruder Printing Project on invalidity grounds 1 through 4, the Court **denied** the motion. However, the specific references actually put forward through the IPR process at the PTAB are not appropriate for use at trial. Accordingly, the Court excluded the Kisslicer

5

Quick Start Guide, the Dual Extruder, the PLA and RepRap article, and the RepRap video because those were all specifically put forward at the PTAB. To the extent that list is not exhaustive, this ruling applies to all discrete prior art references put forward at IPR. However, the Court's ruling does not preclude the use for invalidity of system art that might have otherwise included such references. The Court similarly precluded Dr. Mueller's testimony on this basis. Dr. Mueller may not rely on the precluded references in his testimony but may otherwise rely on and testify to the system art, consistent with the Court's ruling. Also, the Court finds nothing improper with the challenged STL files. The STL files are not presented as prior art. Defendants and their experts appear to properly use them as background art showing the understanding of the field, relevant to hypothetical negotiations.

On the issue of whether Defendants prove invalidity of the '713 Patent relying on the Kisslicer-based invalidity grounds 1 through 2 using the STL design files, the Court **granted** the motion with respect to anticipation but **denied** the motion with respect to obviousness. The Court did not find any genuine dispute that the software itself cannot anticipate the method claims. However, the Court found no basis to grant summary judgment under a § 103 theory of combined references.

**13. Plaintiff's Motion for Partial Summary Judgment of No Invalidity (Dkt. No. 185).**

The motion was **DENIED**.

On the issue of whether there is sufficient evidence for Defendants' obviousness combinations for the Dahlin, Menchik, and Devos references, the Court **denied** the motion.

On the issue of whether there is sufficient evidence for Defendants' invalidity challenges as to claims 1, 9, and 10 of the '698 Patent and claims 1 and 11 of the '381 Patent, the Court **denied** the motion.

The Court found material questions of fact on both questions, largely provided from the dueling experts in this case. Plaintiff has failed to provide a basis on which to justify summary judgment.

**14. Defendants' Motion To Strike Certain Opinions Offered by Dr. Ken Gall (Dkt. No. 186).**

The motion was **GRANTED IN PART**.

As to Dr. Gall's opinions regarding Bambu's state of mind, the Court **granted** the motion. The Court struck the first sentence (and the cited references following that sentence) of paragraph 2184 and struck the word "further" from the second sentence in that same paragraph.

As to Dr. Gall's opinions regarding contract interpretation, the Court **carried** the motion. The Parties' position were respectively to strike all or strike none of the paragraphs subject to this portion of the motion. The Court is persuaded that the dispute could be narrowed, or that the Parties could agree to what offending language could be modified or removed. The Court accordingly ordered the Parties to meet and confer in this regard. The Parties later represented they had fully resolved this issue.

As to Dr. Gall's opinions on Bambu Handy regarding the '744 patent, the Court **granted** the motion. Plaintiff's citations to only the software was not adequate notice to Defendants, especially where Plaintiff had expressly identified Bambu Handy in disclosing contentions for the other asserted patents.

As to Dr. Gall's opinions on the doctrine of equivalents, the Court **denied** the motion. If Defendants believed the alleged "boilerplate" doctrine of equivalents disclosure was improperly conclusory, Defendants should have raised such issues before *Daubert* motions practice.

On the issue of whether the accused products infringe under the doctrine of equivalents, the motion was **denied**.

**15. Plaintiff's Motion To Strike Portions of Dr. Hickner's Expert Reports (Dkt. No. 187).**

The motion was **DENIED**.

As Dr. Hickner's opinion on the meaning "includes" in claims 1 and 19 of the '466 patent, the Court **denied** the motion.  Such opinions fall within proper interpretation of the plain and ordinary meaning of that term.

As to Dr. Hickner's opinion allegedly injecting an order of steps to claims 1 and 19 of the '466 patent, the Court **denied** the motion.  Such opinions also appear to be properly interpreting the plain and ordinary meaning.

As to Dr. Hickner's opinions on non-infringing alternatives, the Court **denied** the motion. The Court sees no basis to exclude such opinions.

**16. Plaintiff's Motion To Strike Portions of Dr. Wolfe's Expert Reports (Dkt. No. 188).**

The motion was **DENIED**.

As to Dr. Wolfe's alleged improper claim construction of "web server," the Court **denied** the motion.  At *Markman*, The Court rejected the Defendants' proposal of "in response to," which would require services be provided to clients *only* in response to client requests.  However, Dr. Wolfe's interpretation does not conform to that restriction.

As to Dr. Wolfe's opinions on non-infringing alternatives, the Court **denied** the motion. Such opinions are not fundamentally unreliable and may be adequately tested by cross-examination.

**17. Plaintiff's Motion To Exclude Improper and Unreliable Opinions of Defendant's Damages Expert (Ms. Lauren Kindler) (Dkt. No. 189).**

The motion was **DENIED**.

As to Ms. Kindler's apportionment opinions relying on allegedly irrelevant MakerBot-based "relevance" scores, the Court **denied** the motion. There is sufficient relevance in the identified license agreement and the MakerBot documents to support Ms. Kindler's opinion.

As to Ms. Kindler's opinions based on non-infringing alternatives, the Court **denied** the motion. The Court disagrees with Plaintiff's suggestion that a survey is necessary to Ms. Kindler's opinions. The Court sees no other basis to strike such opinions.

As to Ms. Kindler's alleged failure to consider the 3D BidCo Addendum in her opinions, the Court **denied** the motion. Plaintiff's arguments on this portion of the motion go to weight rather than admissibility.

As to Ms. Kindler's false advertising opinions, the Court **denied** the motion as moot. The false advertising claims have been dropped in this case. To the extent any such opinions are not moot, they may be adequately addressed by cross-examination.

**18. Bambu's Motion To Strike the Expert Testimony of David Kennedy (Dkt. No. 190).**

The motion was **GRANTED IN PART**.

As to Mr. Kennedy's survey-based apportionment, the Court **granted** the motion. The Court found no error in Mr. Kennedy's use of Bambu's survey. However, the Court found issues with Mr. Kennedy's resulting opinion finding 51% of the features' value resulting from that survey and technical experts' opinions corresponding thereto. There is not enough to tie "materially enables" or "substantial portion" language to a quantitative value of 51%. The Court granted leave for Mr. Kennedy, and the technical experts on which Mr. Kennedy relied on, to supplement. The supplements should contain more precise and reliable guidance to support Mr. Kennedy's (currently-struck) 51% opinion.

9

As to Mr. Kennedy's opinion with respect to convoyed sales, the Court **granted** the motion. The Court struck paragraphs 175 to 188 of Mr. Kennedy's support. The Court found Mr. Kennedy failed to actually tie the asserted patents' functionality to the convoyed sales on which he opines.[1]

As to Mr. Kennedy's alleged failure to approximate or consider the extent of use of claimed methods, the Court **denied** the motion. The Court finds that cross-examination adequately remedies any of Defendants' concerns for such opinions.

As to Mr. Kennedy's opinion on future damages, the Court **granted** the motion. Such opinions effectively transform a lump sum calculation into reasonably royalty based on necessarily speculative, unproven, and unestablished future use.

### 19. Plaintiff's Motion To Strike the Opinions of Dr. Dina Mayzlin (Dkt. No. 191).

The motion was **DENIED**.

As to Dr. Mayzlin's allegedly irrelevant unhelpful opinions, the motion was **denied**. The Court found such opinions cleared the low bar of relevance and that "helpfulness" was a question for the jury.

As to Dr. Mayzlin's allegedly fundamentally unreliable opinions, the motion was **denied**. Cross-examination is an adequate remedy to test any issues highlighted in Plaintiff's motion.

### 20. Defendants' Motion To Strike Certain Opinions Offered by Dr. Tim Osswald (Dkt. No. 192).

The motion was **GRANTED IN PART**.

As to Dr. Osswald's opinions regarding Bambu's state of mind, the Court **granted** the motion. The Court struck the first sentence (including citations therefor) of paragraph 1884. The Court also struck the word "further" from the second sentence.

---

[1] The Parties have subsequently filed motions related to this ruling. (*E.g.*, Dkt. No. 381). The Court will address this briefing in a different Order.

As to Dr. Osswald's opinions regarding contract interpretation, the Court **carried** the motion. As with Dkt. No. 186, the Court ordered the Parties to meet and confer to narrow disputes. The Parties later represented they had fully resolved this issue.

As to Dr. Osswald's opinions on the allegedly undisclosed "clog detection" theory, the Court **denied** the motion. The Court did not find a lack of substantial notice or any material unfair prejudice to Defendants.

**21. Plaintiff's Motion To Strike Portions of Dr. Mueller's Expert Reports (Dkt. No. 193).**

The motion was **GRANTED IN PART**.

As to Dr. Mueller's opinions regarding invalidity grounds 1-4, the Court **granted** the motion in part as explained with respect to Dkt. No. 184.

As to Dr. Mueller's opinions regarding the "Applicant Admitted Prior Art" (AAPA) in invalidity grounds 2, 3, and 5, the Court **granted** the motion. Defendants should have laid out their proposed obviousness combinations in their contentions, including combinations with the AAPA material. The Court struck all references to AAPA in grounds 2, 3, and 5 as well as all instances citing the AAPA as a secondary reference—with one exception. The Court will permit references to the '713 Patent at 1:40-53 and all teachings in the AAPA that substantially repeat the disclosures therein. Such disclosures may be used as secondary references, but cannot be used as a primary reference.

As to Dr. Mueller's opinions on "stand-by mode," the motion was **granted**. The Court struck "and Bambu's proposed construction is 'a mode in which the print head or deposition line is not heating any material for deposition.'" from paragraph 307 of Dr. Mueller's rebuttal report. The Court finds that language runs counter to the construction that the Court adopted at *Markman*.

11

As to Dr. Mueller's opinions on "build path" and "performing a purge operation," the Court **denied** the Motion. The Court sees no basis to strike such opinions.

As to Dr. Mueller's opinions on the prosecution history of claims 16 and 17 of the '713 patent, the Court **granted** the motion in part. Such opinions appear to put forth a disclaimer argument that was never raised at *Markman*. Accordingly, the Court struck paragraphs 381 and 382 of Dr. Mueller's rebuttal report.

As to Dr. Mueller's opinions on non-infringing alternatives, the Court **denied** the motion.

On the issue of whether the accused products infringe under the doctrine of equivalents, the motion was **denied**.

**22. Parties' Opposed Motions *in Limine* (Dkt. Nos. 311, 312).**

a. *Plaintiff's Motion* in Limine *1: Precluding the parties from introducing evidence, testimony, or argument bolstering or disparaging the use of, contribution to, or benefits of open/closed source software and open/closed systems as it relates to patent infringement or noninfringement..*

This MIL was **GRANTED IN PART**. The Court excluded only overt bolstering or denigrating of open and closed source code. The Court otherwise **denied** this MIL.

b. *Plaintiff's Motion* in Limine *2: Preclude any evidence, argument, or testimony regarding allegedly unmarked practicing products for which Bambu failed to carry their initial burden of production under Arctic Cat during discovery.*

This MIL was **WITHDRAWN**.

c. *Plaintiff's Motion* in Limine *3: Preclude the parties from presenting any evidence, argument, or testimony alleging that MakerBot is licensed to any Asserted Patent.*

This MIL was **WITHDRAWN**.

d. *Plaintiff's Motion* in Limine *4: preclude any party from introducing evidence, testimony, or argument—for purposes of validity, invalidity, infringement, or non-infringement—comparing any accused product or method to the alleged features, configuration, functionality, operation, or the like of any prior-art reference, system, or method, including any suggestion that a party does not infringe because it purportedly "practices the prior art."*

12

This MIL was **DENIED**.  The Court's standing MILs and guidance regarding using practicing the prior art as a defense to infringement sufficiently protects against any such improper argument.

    e.  *Plaintiff's Motion* in Limine *5: Preclude the parties from presenting any evidence, argument, or testimony concerning any party's non-prior art patents, patent publications, or patent applications for any purpose other than to establish the amount of damages.*

This MIL was **WITHDRAWN** pursuant to the Parties' agreement.   Stratasys agreed to withdraw this MIL in view of Bambu's stipulation that it will not introduce or provide testimony regarding U.S. Patent Publication No. 2024/0083117 to Greg et al.

    f.  *Defendant's Motion* in Limine *1: Preclude Stratasys from offering evidence of alleged false statements not disclosed in its Amended Complaint, expert reports and interrogatory responses.*

This MIL was **DENIED AS MOOT**.  (*See* Dkt. No. 349).

    g.  *Defendant's Motion* in Limine *2: Preclude Stratasys's evidence, argument, or examples of alleged lost sales beyond those disclosed in interrogatory responses and Rule 30(b)(6) testimony.*

This MIL was **WITHDRAWN** pursuant to the Parties' agreement.  Defendants agreed to withdraw this MIL in view of Stratasys's stipulation that it will not argue or introduce evidence of lost sales not disclosed in Plaintiffs' interrogatory responses or 30(b)(6) testimony.  As part of this agreement, Plaintiff has withdrawn Plaintiff's Exhibit No. 21 (Bates No. 15 SSYSBL000470766).

    h.  *Defendant's Motion* in Limine *3: Preclude argument, testimony, and evidence relating to Bambu's association to any government or government action.*

This MIL was **WITHDRAWN** pursuant to the Parties' agreement.  Defendants agreed to withdraw this MIL in view of Stratasys's stipulation that Stratasys (1) will not present information regarding the subsidy Bambu received from the Chinese Government at trial; (2) will not present information regarding any alleged Bambu connection to U.S. Government restriction lists, whether

13

at the company level, via individual employees, or via the previous employment of any Bambu personnel; and (3) will not contend at trial that Bambu's cyber security issues are tied to the Chinese Government or the fact that Bambu is a Chinese company.

i.  *Defendant's Motion* in Limine *4: Exclude evidence and preclude argument in connection with Bambu's 2022 coaxial extrusion patent search.*

This MIL was **DENIED**.  Defendants' sought relief is improper as a motion *in limine*.  The Court decides the 403 issue with respect to the parties' exhibit disputes.

j.  *Defendant's Motion* in Limine *5: Preclude argument, testimony, and evidence of Bambu's source code that was not specifically identified in discovery.*

This MIL was **WITHDRAWN** with Defendants' understanding that the Court's Standing Motion *in Limine* No. 23 precludes all experts from testifying outside the scope of their expert reports.

### 23. Parties' Exhibit and Witness Disputes

At the Pretrial Conference, the Parties represented they had substantially narrowed their exhibit disputes and that remaining disputes should be addressed only after further depositions were taken.  The Court ordered the Parties to file a joint notice of remaining disputes following such depositions.

The Parties filed their Joint Status Report regarding trial exhibits on May 18, 2026.  In the Joint Status Report the Parties identify several remaining disputes with respect to the Parties' exhibit lists.  Upon considering the disputes as represented in the Joint Status Report, the Court finds such disputes may be resolved on the papers.

Instead, the Court **ORDERS** Plaintiff to file briefing in support of Plaintiff's objections to Defendant's exhibits and witness list.  Such briefing shall be filed on the docket within **two (2) weeks** of this Order and may not exceed ten (10) pages.  The Court further **ORDERS** Defendant

to file its response to Plaintiff's objections (if any), within **seven (7) days** of Plaintiff filing its briefing.  Defendant's response may not exceed ten (10) pages.

## So Ordered this

**Jul 1, 2026**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE